# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS,** | ) ) ) | FILED: MARCH 21, 2008 08CV1680        EDA JUDGE BUCKLO |
| **Plaintiff,** | ) ) | MAGISTRATE JUDGE ASHMAN |
| **v.** | ) ) | **Case No.: _____** |
| **COMCAST OF ILLINOIS III, INC., COMCAST CORPORATION, COMCAST CABLE HOLDINGS LLC, and COMCAST OF CHICAGO, INC.** | ) ) ) ) ) | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Illinois Bell Telephone, d/b/a/ AT&T Illinois ("AT&T Illinois"), by and through its attorneys, files this Complaint against Defendants Comcast of Illinois III, Inc., Comcast Corporation, Comcast Cable Holdings LLC, and Comcast of Chicago, Inc. (collectively "Comcast").  In support of its causes of action, AT&T Illinois states:

### INTRODUCTION

1.      This action is brought under the false advertising provisions of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., and the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.* Through this Complaint, AT&T Illinois seeks to enjoin Comcast's false, deceptive, and disparaging advertising campaign against AT&T Illinois and seeks monetary and other relief.

2.      Comcast is currently running an advertising campaign in the Chicago area attacking AT&T Illinois and its television service offerings.  Comcast is using verbal and pictorial statements to falsely claim that AT&T will install "Giant utility boxes" on the properties of all customers subscribing to AT&T television service offerings.  Comcast further claims that

these boxes will "block" those consumers' homes. These claims, along with various other representations made by Comcast, are patently false, harmful to AT&T and the public, and should be enjoined by this Court.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of § 1367(a).

4.      Venue is proper in this judicial district pursuant to 28 U.S C. § 1391(b) because Comcast does business in this district and has engaged and is engaging in statutory violations and activities that are causing substantial injury to AT&T Illinois in this district.

## THE PARTIES

5.      Plaintiff, AT&T Illinois, is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Chicago, Illinois. AT&T Illinois provides communications, data, and television services within Illinois.

6.      On information and belief, Comcast of Illinois III, Inc., is an Illinois corporation with its principal place of business located at 1585 Waukegan Road, Waukegan, Illinois 60085 and a Registered Agent Office located at 208 South LaSalle Street, Chicago, Illinois 60604.

7.      On information and belief, Comcast Corporation is a Pennsylvania corporation with a principal place of business located at 1500 Market Street, Philadelphia, Pennsylvania 19102 and with a Registered Agent Office located at 100 Pine Street, Suite 325, Harrisburg, Pennsylvania 17107.

8.      On information and belief, Comcast Cable Holdings LLC is a Delaware limited liability company with a principal place of business located at 1500 Market Street, Philadelphia,

Pennsylvania 19102, with a Registered Agent Office located at 208 South LaSalle Street, Chicago, Illinois 60604, and with branch offices throughout Illinois, including in this District.

9.      On information and belief, Comcast of Chicago, Inc., is an Illinois corporation with its principal place of business located Market Street, Philadelphia, Pennsylvania 19102 and with a Registered Agent Office located at 208 South LaSalle Street, Chicago, Illinois 60604.

10.     Collectively, the Comcast entities advertise and provide cable television, voice, and Internet services throughout Illinois and in at least 38 other states and the District of Columbia.

**FACTUAL ALLEGATIONS REGARDING
COMCAST'S VIOLATIONS OF LAW**

**The Competitive Market For Television Services in Illinois**

11.     Comcast is in direct competition with AT&T Illinois for subscription television service in the Chicago area.

12.     AT&T has offered a subscription television service option in Illinois through its marketing relationship with Echostar Satellite Corp. (n/k/a DISH Network Services) since on or about March 4, 2004.  The service, branded as AT&T | DISH service is a co-branded service provided by EchoStar Satellite L.L.C. DISH Network.

13.     In January 2008, AT&T launched another subscription television service to compete against Comcast in the Chicago market—AT&T U-verse™ TV ("U-verse TV").  U-verse TV is AT&T's unique Internet Protocol ("IP")-based video product that directly competes with Comcast's subscription television service offerings.  The U-verse TV product is also sometimes sold with accompanying Internet access (this combination of television and Internet access is referred to hereinafter generally as "U-verse").  U-verse TV allows the transmission of

100% digital television, including high-definition quality television, over consumers' existing telephone-access lines.

14.     AT&T Illinois anticipates that, as the U-verse network continues to be installed and made available to Illinois consumers, U-verse will become popular with consumers and will allow AT&T Illinois to expand and retain customers for not only television services, but also for Internet access and voice communication services.  AT&T Illinois has invested significant resources in the infrastructure necessary to deliver U-verse in Illinois.  U-verse is a new product that will be expanded in the Chicago area.

**The AT&T Network and U-verse Video Ready Access Devices (VRADs)**

15.     AT&T Illinois' U-verse TV service depends on a network of fiber-optic cables. Some cables originate from an AT&T central office and terminate at VRADs that connect AT&T's fiber network and video capabilities to wiring in the neighborhoods.  Effectively, VRADS serve as local hubs that provide for the delivery of U-verse services from the AT&T fiber network to the homes of individual consumers.  Depending on its size, a single VRAD can serve up to 750 homes.

16.     VRADs are located within about 300 feet of, and are connected to, existing AT&T Illinois cross-connection cabinets.  Cross-connection cabinets house the connection between the traditional, copper communications facilities that travel to each consumer's home and the larger AT&T network.  These cross-connection cabinets are located within public rights-of-way, or, in rarer cases, private easements.  They have been located throughout Illinois' neighborhoods for many decades and allow for the provision of traditional telephone service and digital subscriber line ("DSL") data service.

17.    AT&T Illinois works closely with local government authorities, pursuant to a state law process, to apply for and receive permission to locate U-verse VRADs within communities.  VRAD locations are subject to extensive review, consultation with, and approval by local government authorities.

18.    The majority of VRADs are placed in the public rights-of-way.  VRADs are also occasionally placed on private property, but always with the consent of the owner.  In some cases, Comcast's own facility boxes, as well as other utility facilities, are located in these same locations.

19.    As indicated by the foregoing, each VRAD functions as the local hub for the delivery of U-verse service to up to 750 homes, not as a facility that must be placed on the property of each U-verse subscriber.  Purchasing AT&T television service offerings does not result in a VRAD being placed in a customer's yard.  VRADs are installed in neighborhoods before sales of U-verse TV are made to homes in those neighborhoods.

20.    VRADs are *not* installed such that they block homes.

**Comcast's False Ads**

21.    Comcast is currently disseminating at least three advertisements in which it falsely and disparagingly attacks AT&T Illinois and its television service offerings.

22.    A newspaper advertisement that has appeared within the last week in a Joliet newspaper and a Chicago-area newspaper shows what appears to be an AT&T-VRAD positioned in front of a home.  The photograph depicts the cabinet in a manner so as to accentuate its size and proximity to the home, and bears the headline claim: "**AT&T not only blocks your house, it blocks your HD options."**  Below that, the ad claims that "What you get with AT&T" includes "Giant utility boxes."  A true and correct copy of the advertisement that ran in *The Herald News* on March 13, 2008 is attached hereto as Exhibit A.  A true and correct copy of the

advertisement that ran in *The Daily Southtown Star* on March 20, 2008 upon information and belief is attached hereto as Exhibit B.

23.    AT&T asked Comcast to provide the location of the purported home and VRAD so that AT&T could independently verify the location of the purported VRAD and determine if the photograph in the advertisement was altered in any way.  Comcast refused to provide AT&T with this information.  It is clear, however, that the advertisement in question has been altered in some respect as the VRAD depicted includes the nomenclature "HDBLOKR" on its façade. This nomenclature is false, as AT&T has no VRAD that bears the letters "HDBLOKR."

24.    A video ad for Comcast entitled "No Curb Appeal," currently appearing on YouTube (http://www.youtube.com/watch?v=GnSIyDiTVyU), depicts an unhappy homeowner peering through his front curtains.  He says, "We got AT&T, and look what we got.  I thought technology was supposed to get smaller, not bigger.  Look at it, taunting us."  The man starts crying.  The scene then cuts to the front yard, where a character dressed in a large AT&T VRAD costume is dancing in the front yard, roasting marshmallows over an open fire.  The voiceover then states: "Once you see AT&T, you'll want it to go away.  A network with less HD, slower internet, and a big box.  What else did you expect from the big old phone company?"  The scene closes with a dog urinating on the character in the VRAD costume.  (A copy of this video is included on the compact disk that is attached hereto as Exhibit C.)

25.    A third advertisement entitled "Line-Up," also appearing on YouTube (http://www.youtube.com/watch?v=5fCS_Do1tK8), depicts a criminal line-up.  A young woman is being asked to review the line-up, and she scans the crowd before exclaiming "That's him . . . There's no mistaking it.  That is the big, ugly thing that's been limiting my HD."  The camera pans to a costumed person dressed in an AT&T VRAD costume, standing in the line-up.

Judging from the height demarcations on the back wall, the VRAD appears to be nearly seven feet tall and almost a foot taller than the height of the next tallest actor.  The voiceover then says: "AT&T.  Offering so little HD, it's practically criminal."  The detective then says, "Don't worry, ma'am.  As big and slow as it is, AT&T will never get away with it."  The voiceover closes by stating, "Stick with Comcast, the proven advanced technology."  (A copy of this video is included on the compact disk that is attached hereto as Exhibit C.)

26.     These ads are literally false and misleading in many respects.

27.     The newspaper ads (Exhibits A and B) are literally false because they represent to consumers that AT&T "Giant utility boxes" will "block" the homes of consumers who purchase AT&T's television service offerings.  The photograph accompanying the ads reinforces the written claim that the "utility boxes" will "block" the homes of AT&T television service subscribers.

28.     In reality, the "Giant utility box[]" depicted in the newspaper is a VRAD.  A single VRAD can serve up to 750 homes and be located up to several thousand feet away from the homes that it serves.  VRADs are located in public rights-of-way or, in rarer cases, private easements and within about 300 feet (and often closer) of existing AT&T facilities.  There is no truth to the pictorial or written claim that VRADs are installed in such a manner as to "block" the homes of the persons who subscribe to AT&T's television service offerings.  There is also no truth to the pictorial or written claim that every customer of AT&T's television service offerings will have a "Giant utility box" or any utility box in their yard as a result of selecting an AT&T subscription television service.

29.     Comcast knows that the advertisement is false and misleading as Comcast's facility boxes, which are dispersed throughout neighborhoods in order to provide Comcast's

cable television, Internet, and voice service, are also placed in public rights-of-way or private easements.

30.    The newspaper ad also makes the patently false claim that AT&T "blocks" consumers' HD television options.    AT&T Illinois does not block access to HD television options.    It affirmatively provides such access.    AT&T's U-verse TV service provides more HD channels than does Comcast in the Chicago market.    AT&T also offers DISH Network to its customers, through which they can also receive more HD channels than are provided by Comcast.

31.    The video ads are likewise false and misleading.    The "No Curb Appeal" ad depicts a VRAD in the front yard of a home of an AT&T customer, "taunting" the obviously distraught homeowner and conveying the literal claim that subscribing to AT&T's television service offerings requires the placement of a large utility box on the customer's property.    The advertisement also falsely claims that AT&T's television service offerings provide "less HD" channels.

32.    The "Line-Up" ad makes similarly false and disparaging factual assertions that AT&T's VRAD cabinet "limits" HD for consumers, and that it offers "so little HD, it's practically criminal."

33.    Comcast's advertising is plainly intended by Comcast to harm AT&T Illinois by disrupting its launch of AT&T U-verse.    Both video ads available on YouTube reveal the title given to the ad campaign by Comcast's advertising agency, Brogan & Partners, was **"ANTI-AT&T LAUNCH."**

**The Harm Caused to AT&T and the Public**

34.     The dissemination of Comcast's false claims harms AT&T Illinois and misleads consumers.  Consumers are falsely led to believe by Comcast's claims that (a) the purchase of AT&T television service offerings will result in the installation of a huge and ugly utility box on their front yard, (b) that the utility box will block their homes, (c) that AT&T blocks HD, and (d) that AT&T offers fewer HD channels than Comcast. These types of derogatory, false claims threaten irreparable harm to AT&T's reputation and the reputation of its products.

35.     AT&T Illinois has invested substantial resources in the development of its network and its television service offerings.  If consumers are falsely led to believe that these services are technologically inferior, and will require the installation of a hulking utility box on the property of every customer that purchases AT&T television services, it is likely that consumers will not choose them.  Indeed, the ads encourage consumers to affirmatively reject the AT&T service offerings.

36.     Comcast's false and disparaging claims threaten AT&T Illinois' ability to enter the television market with its own service offerings.  Unless enjoined, Comcast's false claims will irreparably harm AT&T Illinois' good will and reputation as a provider of voice, television, and Internet services.  AT&T Illinois is likely to succeed on its claims. that Comcast has falsely advertised in violation of law.

37.     Comcast's ads also harm the public.  Many potential customers of AT&T Illinois' television service offerings would likely welcome an alternative to Comcast's dominance in the subscription television market.  Many potential customers are not likely to have a deep understanding of the underlying technology and infrastructure required for AT&T Illinois to deliver its U-verse TV service, or of the true facts of consumer choice among television

providers.  Comcast's ads feed consumers incorrect information in an effort to get them to reject

AT&T Illinois' subscription television offerings before they undertake a fair investigation of

their options.  Comcast thus harms competition through its false advertising.

### FIRST CAUSE OF ACTION
### (Lanham Act Violation, 15 U.S.C. § 1125)

38.    AT&T Illinois repeats and realleges each and every allegation contained in

paragraphs 1 through 37 as if fully set forth herein.

39.    Comcast sells its Internet, voice, and cable television services in interstate

commerce and is engaging in an advertising campaign in connection with the marketing of these

products.

40.    A central false message of this advertising campaign is that AT&T Illinois

requires placement of a "Giant utility box[]" on each subscriber's property in order to deliver

television services.  Another central false message of this advertising campaign is that AT&T

"Giant utility box[es]" block homes.

41.    Comcast also falsely claims that AT&T Illinois blocks HD channels and provides

fewer HD channels.

42.    These claims made by Comcast about AT&T Illinois are false and misleading and

misrepresent the nature, characteristics and qualities of AT&T Illinois' products.

43.    Upon information and belief, the claims are likely to deceive or confuse a

substantial segment of the buying public.  Moreover, the claims have influenced or are likely to

influence the buying public's purchasing decisions.

44.    This deceptive conduct by Comcast is and has been deliberate and has injured and

continues to injure AT&T Illinois and consumers.

45.　　Comcast knows or should know that the claims it is making about AT&T Illinois are false and misleading.

46.　　Comcast's advertising violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Comcast's misconduct in this regard is willful and egregious.

47.　　AT&T Illinois has been and continues to be damaged by Comcast's false advertising attacking AT&T Illinois, including by direct diversion of sales from AT&T Illinois to Comcast and the lessening of goodwill which AT&T Illinois' products enjoy among the buying public.  AT&T has no adequate remedy at law to redress these injuries.

**SECOND CAUSE OF ACTION**
**(Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq*.)**

48.　　AT&T Illinois repeats and realleges each and every allegation contained in paragraphs 1 through 47 as if fully set forth herein.

49.　　Comcast's false and misleading claims in its advertising were and are being disseminated in Illinois.

50.　　Comcast's false and misleading representations of fact have disparaged AT&T Illinois's goods, services and business.

51.　　Comcast made these false and misleading representations of fact in the course of its business.

52.　　Comcast's false and misleading claims constitute unfair trade practices in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq*.

53.　　AT&T Illinois has been and will continue to be damaged by Comcast's false and misleading representations in an amount to be determined at trial.

54.　　On information and belief, Comcast's conduct is willful, deliberate, intentional and in bad faith.

55.    By reason of the foregoing acts, Comcast has caused, and unless enjoined will continue to cause, irreparable harm to AT&T Illinois.  AT&T Illinois has no adequate remedy at law to redress these injuries.

### THIRD CAUSE OF ACTION
### (Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*)

56.    AT&T repeats and realleges each and every allegation contained in paragraphs 1 through 55 as if fully set forth herein.

57.    Comcast has engaged in unfair and deceptive conduct, including the dissemination of false and misleading advertising, and continues to do so.  Among other things, this advertising misrepresented material characteristics of AT&T Illinois' television service offerings, and falsely and disparagingly attacked AT&T Illinois and its products.

58.    Comcast has disseminated false and misleading claims in its advertising in trade and commerce in Illinois, and continues to do so.

59.    Comcast knew or should have known that its claims were and are false and misleading.  Moreover, Comcast made and continues to make these claims despite awareness of their falsity.  Comcast thus acts with reckless indifference to the rights of others and/or in intentional and wanton violation of those rights.

60.    Comcast intended for consumers to rely on its false advertisements.  Among other things, Comcast intended to induce consumers to purchase Comcast's services and/or to refrain from purchasing services offered by AT&T Illinois.

61.    Comcast's conduct implicates consumer protection concerns by, among other things, improperly and unlawfully inhibiting competition in the market for services marketed by Comcast and AT&T Illinois.

62.     As set forth above, Comcast's false advertisements have caused and are causing substantial injury and damage to AT&T Illinois.

63.     AT&T Illinois's damages and injuries have been, and are likely to be, proximately caused by Comcast's false advertising and deceptive conduct.

64.     Comcast's false and misleading claims constitute unlawful consumer fraud and deceptive business practices and unlawful false advertising.

65.     Comcast's conduct with regard to its advertising constitutes a violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

### PRAYER FOR RELIEF

WHEREFORE, AT&T respectfully requests that the Court enter judgment as follows:

A.     An Order adjudging that Comcast violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and 815 ILCS 505/1 *et seq.* and 815 ILCS 510/2 *et seq.* of Illinois law;

B.     An Order preliminarily and permanently enjoining Comcast from disseminating or causing the dissemination of the advertisements attached hereto as Plaintiff's Exhibits A, B and C;

C.     An Order enjoining Comcast from disseminating or causing the dissemination of claims in any packaging, advertising, or other promotional materials that: (1) AT&T Illinois' television service offerings require the placement of large facility boxes or similar structures on the properties of customers who order AT&T Illinois television service offerings,  (2) AT&T Illinois "blocks" consumers' homes through any means, including the placement of facility boxes on the subscriber's property; (3) AT&T Illinois "limits," "blocks," or words of similar import, HD channels; and (4) AT&T Illinois offers fewer HD television channels than Comcast in those Illinois markets where AT&T offers television service.

D.      An Order permanently enjoining Comcast from making any of the advertising claims challenged as false or misleading in this Complaint in any commercials, advertisements, or other promotional materials;

E.      An Order directing an accounting by Comcast of their gains, profits, savings, and advantages realized by reason of its false advertising, awarding AT&T Illinois damages as allowed by law, and trebling AT&T Illinois' recovery pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and 815 ILCS 505/10a;

F.      An Order granting AT&T Illinois its costs and disbursements in this action, including its reasonable attorneys' fees; and

G.      An Order granting AT&T Illinois such other and further relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DATED:  March 21, 2008                    Respectfully submitted,

                                          ILLINOIS   BELL   TELEPHONE,   D/B/A
                                          AT&T ILLINOIS


                                          By:  /s/ Brian L. Crowe_____
                                                One of Its Attorneys

Brian L. Crowe (ARDC #0549584)
bcrowe@shefskylaw.com
John F. Kennedy (ARDC #6196185)
jkennedy@shefskylaw.com
Lynn A. Ellenberger (ARDC #6244188)
lellenberger@shefskylaw.com
SHEFSKY & FROELICH LTD.
111 E. Wacker Drive, Suite 2800
Chicago, IL  60601
Telephone:  (312) 527-4000
Facsimile    (312) 527-4011

and

Christopher A. Cole
ccole@manatt.com
Manatt Phelps Phillips, LLP
700 12th Street, N.W., Suite 1100
Washington, D.C.  20005
Telephone:  (202) 585-6524
Facsimile:  (202) 637-1535

1078820_2

15

The Herald News   Thursday, March 13, 20



# AT&T not only blocks your house, it blocks your HD options.

With Comcast, you get more HD options than with any other provider. And with On Demand from Comcast Digital Cable, you can choose from over 200 hours of free and pay-per-view movies and shows in HD whenever you want. Something AT&T can't offer. Best of all, you can watch different HD channels on multiple TV's, so no one in the family is blocked from their favorite HD programs.

What you get with AT&T:
• Giant utility boxes.
• Less HD options.
• No HD On Demand.
• Multiple TV's only receive one HD channel at a time.

08CV1680        EDA
JUDGE BUCKLO
MAGISTRATE JUDGE ASHMAN

## (Comcast.

**The proven advanced technology.**

HD equipment required to receive HD programming. HD programming varies based on digital package. Visit hdplanner.comcast.net for Comcast HD programming in your area. Call 1.866.594.1234 for restrictions and complete details. ©2008 Comcast. All rights reserved.

08CV1680          EDA

JUDGE BUCKLO

MAGISTRATE JUDGE ASHMAN



AT&T not only blocks your house, it blocks your HD options.

With Comcast, you get more HD options than with any other provider. And with On Demand from Comcast Digital Cable, you can choose from over 200 hours of free and pay-per-view movies and shows in HD whenever you want. Something AT&T can't offer. Best of all, you can watch different HD channels on multiple TV's, so no one in the family is blocked from their favorite HD programs.

What you get with AT&T:
• Giant utility boxes.
• Less HD options.
• No HD On Demand.
• Multiple TV's only receive one HD channel at a time.

Comcast.

# EXHIBIT C

# TO COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

# COMPACT DISK TO BE FILED "OVER THE COUNTER"

# SEE NOTICE OF PAPER FILING