## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ILLINOIS BELL TELEPHONE, d/b/a** | ) | |
| **AT&T ILLINOIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 08 CV 1680** |
| | ) | |
| **COMCAST OF ILLINOIS III, INC.,** | ) | **Honorable Elaine E. Bucklo** |
| **COMCAST CORPORATION,** | ) | |
| **COMCAST CABLE HOLDINGS LLC, and** | ) | **Magistrate Judge Martin C. Ashman** |
| **COMCAST OF CHICAGO, INC.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |

### AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, Illinois Bell Telephone, d/b/a/ AT&T Illinois ("AT&T Illinois"), by and through its attorneys, files this Amended Complaint against Defendants Comcast of Illinois III, Inc., Comcast Corporation, Comcast Cable Holdings LLC, and Comcast of Chicago, Inc. (collectively "Comcast"). Prior to filing this Amended Complaint, AT&T Illinois had not served the original Complaint in this matter on Comcast, and Comcast had not yet answered or filed any responsive pleading. Therefore, this Amended Complaint is filed as of right under Federal Rule of Civil Procedure 15(a)(1). In support of its causes of action, AT&T Illinois states:

### INTRODUCTION

1. This action is brought under the false advertising provisions of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., and the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.* Through this Complaint, AT&T Illinois seeks to enjoin Comcast's

false, deceptive, and disparaging advertising campaign against AT&T Illinois and seeks monetary and other relief.

2.    Comcast is currently running an advertising campaign in the Chicago area attacking AT&T Illinois and its television service offerings.  Comcast is using verbal and pictorial statements to falsely claim that, if a customer purchases AT&T Illinois' television service offerings, AT&T Illinois will install "Giant utility boxes" or video-ready access devices ("VRAD") on the customer's property.  There is absolutely no correlation between a customer's selection of AT&T's television service offerings and the placement of utility boxes or VRADs.  Comcast also makes inaccurate and false side-by-side comparisons between AT&T and Comcast's television services including that AT&T Illinois customers can only "view **one** HD channel at a time" (emphasis in original) whereas Comcast consumers can "view unlimited HD channels at a time;" and, unlike Comcast, AT&T Illinois offers "no local programming."  These claims, along with various other representations made by Comcast, are patently false, harmful to AT&T and the public, and should be enjoined by this Court.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and the supplemental jurisdiction of § 1367(a).

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Comcast does business in this district and has engaged and is engaging in statutory violations and activities that are causing substantial injury to AT&T Illinois in this district.

## THE PARTIES

5.    Plaintiff, AT&T Illinois, is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Chicago, Illinois. AT&T Illinois provides communications, Internet access, and television services within Illinois.

6.    On information and belief, Comcast of Illinois III, Inc., is an Illinois corporation with its principal place of business located at 1585 Waukegan Road, Waukegan, Illinois 60085 and a Registered Agent Office located at 208 South LaSalle Street, Chicago, Illinois 60604.

7.    On information and belief, Comcast Corporation is a Pennsylvania corporation with a principal place of business located at 1500 Market Street, Philadelphia, Pennsylvania 19102 and with a Registered Agent Office located at 100 Pine Street, Suite 325, Harrisburg, Pennsylvania 17107.

8.    On information and belief, Comcast Cable Holdings LLC is a Delaware limited liability company with a principal place of business located at 1500 Market Street, Philadelphia, Pennsylvania 19102, with a Registered Agent Office located at 208 South LaSalle Street, Chicago, Illinois 60604, and with branch offices throughout Illinois, including in this District.

9.    On information and belief, Comcast of Chicago, Inc., is an Illinois corporation with its principal place of business located at 1500 Market Street, Philadelphia, Pennsylvania 19102 and with a Registered Agent Office located at 208 South LaSalle Street, Chicago, Illinois 60604.

10. Collectively, the Comcast entities advertise and provide cable television, voice, and Internet services throughout Illinois and in at least 38 other states and the District of Columbia.

## FACTUAL ALLEGATIONS REGARDING
## COMCAST'S VIOLATIONS OF LAW

### The Competitive Market For Television Services in Illinois

11. Comcast is in direct competition with AT&T Illinois for subscription television service in the Chicago area.

12. AT&T has offered a satellite subscription television service option in Illinois through its marketing relationship with Echostar Satellite Corp. (n/k/a DISH Network Service) ("Dish Network") since on or about March 4, 2004.  The service, branded as AT&T | DISH Network service, is a co-branded service satellite television service provided by Dish Network that directly competes with Comcast's subscription television service offerings.

13. In January 2008, AT&T launched another subscription television service to compete against Comcast in certain areas of the Chicago area—AT&T U-verse™ TV ("U-verse TV").  U-verse TV is AT&T's unique Internet Protocol ("IP")-based video product.  The U-verse TV product is also sometimes sold with accompanying Internet access (this combination of television and Internet access is referred to hereinafter generally as "U-verse").  U-verse TV allows the transmission of 100% digital television, including high-definition quality television, over consumers' existing telephone-access lines.

14. AT&T Illinois anticipates that, as the U-verse network continues to be installed and made available to Illinois consumers, U-verse will become popular with

4

consumers and will allow AT&T Illinois to expand and retain customers for not only television services, but also for Internet access and voice communication services. AT&T Illinois has invested significant resources in the infrastructure necessary to deliver U-verse in Illinois.  U-verse is a new product that will be expanded in the Chicago area.

**The AT&T Network and U-verse VRADs**

15. AT&T Illinois' U-verse TV service depends on a network of fiber-optic cables.  Some cables originate from an AT&T central office and terminate at VRADs that connect AT&T Illinois' fiber network and video capabilities to AT&T Illinois' wiring in the neighborhoods.  Effectively, VRADS allow for the delivery of U-verse services from the AT&T fiber network to the homes of individual consumers.  Depending on its size, a single VRAD can serve up to 750 homes.

16. VRADs are located within about 300 feet of, and are connected to, existing AT&T Illinois cross-connection cabinets.  Cross-connection cabinets house the connection between the traditional, copper communications facilities that travel to each consumer's home and the larger AT&T network.  These cross-connection cabinets are located within public rights-of-way or in easements.  They have been located throughout Illinois' neighborhoods for many decades and allow for the provision of traditional telephone service.

17. VRADs are also placed in the public rights-of-way or easements.  AT&T will not place a VRAD on a homeowner's private property unless necessary and a homeowner has agreed to this location.  In many cases, Comcast's own facility boxes, as well as other utility facilities, are located in these same locations.

18. AT&T Illinois submits permit applications to local governments for each proposed VRAD located in public rights-of-way. As part of the permit review process, AT&T Illinois offers to visit each such proposed location with local government officials to determine if the proposed location is suitable.

19. Each VRAD can serve from 150-750 individual homes, which can be located up to several thousand feet away from the VRAD.  Purchasing AT&T television service offerings does not result in a VRAD or any size utility box being placed in a customer's yard or in a neighborhood.  VRADs are installed in neighborhoods before sales of U-verse TV are made to homes in those neighborhoods.  VRADs are not used to provide the DISH Network Service.

20. VRADs are ***not*** installed such that they block homes.

**Comcast's False Ads**

21. Comcast has disseminated at least four advertisements in which it falsely and disparagingly attacks AT&T Illinois and its television service offerings.

22. A newspaper advertisement that recently appeared in at least two Chicago-area newspapers shows what appears to be an AT&T-VRAD positioned in front of a home.  The photograph depicts the cabinet in a manner so as to accentuate its size and proximity to the home, and bears the headline claim: "**AT&T not only blocks your house, it blocks your HD options**" (emphasis in original).  Below that, the ad claims that "What you get with AT&T" includes "Giant utility boxes."  A true and correct copy of the advertisement that ran in *The Herald News* on March 13, 2008 is attached hereto as Exhibit A.  A true and correct copy of the advertisement that ran in *The Daily Southtown Star* on March 20, 2008, upon information and belief, is attached hereto as Exhibit B.

23. AT&T asked Comcast to provide the location of the purported home and VRAD so that AT&T could independently verify the location of the purported VRAD and determine if the photograph in the advertisement was altered in any way. Comcast refused to provide AT&T with this information. It is clear, however, that the advertisement in question has been altered in some respect as the VRAD depicted includes the nomenclature "HDBLOKR" on its façade. This nomenclature is false, as AT&T has no VRAD that bears the letters "HDBLOKR."

24. A television/video advertisement ad for Comcast entitled "No Curb Appeal," which has appeared in interstate commerce, including on the Internet, depicts an unhappy homeowner peering through his front curtains. He says, "We got AT&T, and look what we got. I thought technology was supposed to get smaller, not bigger. Look at it, taunting us." The man starts crying. The scene then cuts to the front yard, where a character dressed in a large AT&T VRAD costume is dancing in the front yard, roasting marshmallows over an open fire. The voiceover then states: "Once you see AT&T, you'll want it to go away. A network with less HD, slower internet, and a big box. What else did you expect from the big old phone company?" The scene closes with a dog urinating on the character in the VRAD costume. (A copy of this video is included on the compact disk that is attached hereto as Exhibit C.)

25. A third television/video advertisement entitled "Line-Up," which also appeared in interstate commerce, including on television and the Internet, depicts a criminal line-up. A young woman is being asked to review the line-up, and she scans the crowd before exclaiming "That's him . . . There's no mistaking it. That is the big, ugly thing that's been limiting my HD." The camera pans to a costumed person dressed in an

AT&T VRAD costume, standing in the line-up.  Judging from the height demarcations on the back wall, the VRAD appears to be nearly seven feet tall and almost a foot taller than the height of the next tallest actor.  The voiceover then says: "AT&T.  Offering so little HD, it's practically criminal."  The detective then says, "Don't worry, ma'am.  As big and slow as it is, AT&T will never get away with it."  The voiceover closes by stating, "Stick with Comcast, the proven advanced technology."  (A copy of this video is included on the compact disk that is attached hereto as Exhibit C.)

26. The fourth video advertisement for Comcast (called "Split-Screen") also appeared in interstate commerce, including on television.  The ad depicts a split-screen comparison of the features and benefits between AT&T and Comcast's high-definition television services.  On information and belief, this commercial has aired on at least MSNBC in the Chicago area.  (A true and correct copy of a storyboard of this ad is attached hereto as Exhibit D, and a video of the ad is included as Exhibit C).

27. The commercial begins by showing two homes.  The home on the left is labeled "AT&T" and the home on the right is labeled "Comcast."  A voiceover says "Two homes.  One connected with narrowband copper wire."  A picture of a phone wire appears on the AT&T home, with text simultaneously appearing above the home that reads, "**Narrowband** copper wire" (emphasis in original).   The voice over continues ". . . the other with powerful broadband cable."  A picture of a coaxial cable appears on the Comcast home with text simultaneously appearing above the home that reads, "**Powerful** broadband cable."   (emphasis in original).  The voiceover then states, "one limits a home to view only one HD channel at a time" as text over the AT&T home reads "View **one** HD channel at a time," and then continues to say that "the other can watch . . .

unlimited HD channels" as text above the Comcast home appears that reads "View **unlimited** HD channels at a time" (emphasis in original).  The voiceover goes on to state that "one home has limited On Demand content . . . with no local programming" as text appears above the AT&T home that reads "**No** local programming"  (emphasis in original).  The voice over then states, "The other has tons of On Demand choices . . . most of which are free and include local programming" as text above the Comcast house reads "**Tons** of On Demand choices most are FREE Includes local programming." (emphasis in original).  The voiceover then adds, "Oh yeah the other big difference, one home may get . . .  some free landscaping in their yard," as a large VRAD utility box simultaneously appears in front of the AT&T house with a loud thud.

28. The Comcast ads described in paragraphs 21-26 above are literally false and misleading in many respects.

29. The newspaper ads (Exhibits A and B) are literally false because they represent to consumers that AT&T "Giant utility boxes" will "block" the homes of consumers who purchase AT&T Illinois' television service offerings.  The photograph accompanying the ads reinforces the written claim that the "utility boxes" will "block" the homes of AT&T Illinois' television service subscribers.

30. In reality, the "Giant utility box[]" depicted in the newspaper advertisement is a VRAD.  A single VRAD can serve up to 750 homes and be located up to several thousand feet away from the homes that it serves.  VRADs are located in public rights-of-way or easements and within about 300 feet (and often closer) of existing AT&T Illinois' facilities.  There is no truth to the pictorial or written claim that VRADs are installed in such a manner as to "block" or visually obstruct the homes of the persons

who subscribe to AT&T Illinois' television service offerings.  There is also no truth to the

pictorial or written claim that a customer of AT&T Illinois' television service offerings

will have a "Giant utility box" or any utility box in their yard or their neighborhood as a

result of selecting AT&T Illinois' subscription television service.

31. Comcast knows that the advertisement is false and misleading as

Comcast's facility boxes, which are dispersed throughout neighborhoods in order to

provide Comcast's cable television, Internet, and voice service, are also placed in public

rights-of-way or private easements.

32. The newspaper ad also makes the patently false claim that AT&T  Illinois

"blocks" consumers' HD television options.  AT&T Illinois does not block access to HD

television options --it affirmatively provides such access.  AT&T Illinois' U-verse TV

service provides more HD channels than does Comcast in the Chicago market.  AT&T

Illinois also offers DISH Network Service to its customers, through which they can also

receive more HD channels than are provided by Comcast.

33. Comcast's Split-Screen television commercial (Exhibits C and D) is

literally false in many respects:

(a)    It falsely represents to consumers that, if they purchase an

AT&T Illinois' television service offering, AT&T Illinois will install or will likely install

a VRAD or any utility box on their front lawn.    VRADs are installed in neighborhoods

before sales of U-verse TV are even made to homes in those neighborhoods.  VRADs are

placed in the public rights-of-way or easements.  AT&T will not place a VRAD on a

homeowner's private property unless necessary and a homeowner has agreed to this

location.

(b)     It falsely claims that that AT&T Illinois offers customers only "**one** HD channel at a time" whereas, Comcast customers can view "**unlimited** HD channels at a time."  On the contrary, AT&T Illinois' DISH Network offering provides customers with the ability to view multiple live streams of HD television, and AT&T Illinois' U-verse TV service provides consumers with one "live" HD stream and the ability to simultaneously view pre-recorded HD content.

(c)     It falsely claims that, unlike Comcast, AT&T Illinois offers "no local programming."  On the contrary, AT&T Illinois offers U-verse customers access to local affiliate broadcasts, including those of CBS (WBBM-2 and WBBM-HD-2), NBC (WMAQ-5 and WMAQ-HD-5), ABC (WLS-7 and WLS-HD-7), Fox (WFLD-32 and WFLD-HD-32), Independents (WCIU-26, WCIU-HD-26 and WJYS-62), ION (WCPX-38), UNI (WGBO-66), WGN Superstation and WGN HD; and the CW (WGN9 and WGN-HD-9).  AT&T Illinois offers a similar local programming through its Dish Network services; and

(d)     It falsely characterizes AT&T Illinois' service as "narrowband," when in fact the service provides broadband Internet access service.

34.  The "No Curb Appeal" ad falsely depicts a VRAD in the front yard of a home of an AT&T Illinois customer, "taunting" the obviously distraught homeowner and conveying the literal claim that subscribing to AT&T Illinois' television service offerings requires the placement of a utility box on the customer's property.  The advertisement also falsely claims that AT&T Illinois' television service offerings provide "less HD" channels.

35. The "Line-Up" ad makes false and disparaging factual assertions that AT&T Illinois' VRAD cabinet "limits" HD for consumers, and that it offers "so little HD, it's practically criminal."  The Line-Up ad also falsely links the VRAD to a consumer's choice to subscribe to television services offered by AT&T Illinois.

36. Comcast's advertising is plainly intended by Comcast to harm AT&T Illinois by disrupting its launch of U-verse.  Both video ads reveal the title given to the ad campaign by Comcast's advertising agency, Brogan & Partners, was **"ANTI-AT&T LAUNCH."**

**The Harm Caused to AT&T Illinois and the Public**

37. The dissemination of Comcast's false claims harms AT&T Illinois and misleads consumers.  Consumers are falsely led to believe by Comcast's claims that (a) the purchase of AT&T Illinois' television service offerings will result in the installation of a utility box on their front yard, (b) the utility box will "block" their homes (c) that AT&T Illinois limits, blocks or restricts HD; (d) AT&T Illinois offers fewer HD channels than Comcast; (e) AT&T Illinois only allows its customers to view HD on one television at a time, (f) Comcast customers can view unlimited HD channels at a time; (g) AT&T Illinois' services are provided over "narrowband" facilities; and (h)  AT&T Illinois does not offer local programming.  These types of derogatory, false claims threaten irreparable harm to AT&T Illinois' reputation and the reputation of its products.

38. AT&T Illinois has invested substantial resources in the development of its network and its television service offerings.  If consumers are falsely led to believe that these services are technologically inferior, and will require the installation of a hulking utility box on the property of every customer that purchases AT&T Illinois' television

service offerings, it is likely that consumers will not choose them.  Indeed, the ads
encourage consumers to either switch to Comcast or affirmatively reject the AT&T
Illinois' service offerings under false pretenses.

39. Comcast's false and disparaging claims threaten AT&T Illinois' ability to
enter the television market with its own service offerings.  Unless enjoined, Comcast's
false claims will irreparably harm AT&T Illinois' good will and reputation as a provider
of voice, television, and Internet services.  AT&T Illinois is likely to succeed on its
claims that Comcast has falsely advertised in violation of law.

40. Comcast's ads also harm the public.  Many potential customers of AT&T
Illinois' television service offerings would likely welcome an alternative to Comcast's
dominance in the subscription television market.  Many potential customers are not likely
to have a deep understanding of the underlying technology and infrastructure required for
AT&T Illinois to deliver its U-verse TV service, or of the true facts of consumer choice
among television providers.  Comcast's ads feed consumers incorrect information in an
effort to get them to reject AT&T Illinois' subscription television offerings before they
undertake a fair investigation of their options.  Comcast thus harms competition through
its false advertising.

**AT&T Illinois' Efforts to Resolve the Dispute**

41. AT&T Illinois complained to Comcast about the claims made in the
newspaper ads and the "Curb Appeal" and "Line Up" video/television ads.

42. When resulting discussions between AT&T Illinois and Comcast failed to
produce a resolution, AT&T Illinois filed its initial complaint on March 21, 2008.  It did
not serve the Complaint on Comcast in an effort to resolve the matter without further

litigation.

43. The filing of the Complaint triggered further discussions between the parties, which continued from March 21, and throughout the following week of March 24.  These discussions led AT&T Illinois to then-believe that Comcast would voluntarily withdraw all of the challenged claims.

44. On April 8, however, AT&T Illinois learned that the "Split-Screen" commercial had been aired on television.  The Split-Screen ad contained even more egregious versions of the challenged claims, including some additional and entirely new false claims.  As a consequence, AT&T Illinois wrote a demand letter that same day. Comcast's failure to respond satisfactorily to that demand forced AT&T Illinois to prepare and serve the instant Amended Complaint.

**FIRST CAUSE OF ACTION**
**(Lanham Act Violation, 15 U.S.C. § 1125)**

45. AT&T Illinois repeats and re-alleges each and every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46. Comcast sells its Internet, voice, and cable television services in interstate commerce and is engaging in an advertising campaign in connection with the marketing of these products.

47. A central false message of this advertising campaign is that ordering television service from AT&T Illinois will result in AT&T Illinois placing a utility box or VRAD on each subscriber's property or in their neighborhood.   In some executions in Comcast's campaign, part of this central false message is the claim that AT&T Illinois' "Giant utility box[es]" block homes.

48. Comcast also makes other false claims including that: AT&T Illinois blocks HD; that AT&T Illinois offers fewer HD channels than Comcast; that AT&T Illinois only allows its customers to view HD content on one television at a time, while claiming that Comcast customers can view "unlimited" HD channels at a time. Comcast also falsely claims that AT&T Illinois does not offer local programming. AT&T Illinois requires placement of a "Giant utility box[]" on each subscriber's property in order to deliver television services.

49. These claims and others set forth above, made by Comcast about AT&T Illinois are false and misleading and misrepresent the nature, characteristics and qualities of AT&T Illinois' products.

50. Upon information and belief, the claims are likely to deceive or confuse a substantial segment of the buying public. Moreover, the claims have influenced or are likely to influence the buying public's purchasing decisions.

51. This deceptive conduct by Comcast is and has been deliberate and has injured and continues to injure AT&T Illinois and consumers.

52. Comcast knows or should know that the claims it is making about AT&T Illinois are false and misleading.

53. Comcast's advertising violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Comcast's misconduct in this regard is willful and egregious.

54. AT&T Illinois has been and continues to be damaged by Comcast's false advertising attacking AT&T Illinois, including by direct diversion of sales from AT&T Illinois to Comcast and the lessening of goodwill which AT&T Illinois' products enjoy among the buying public. AT&T has no adequate remedy at law to redress these injuries.

**SECOND CAUSE OF ACTION**
**(Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq*.)**

55. AT&T Illinois repeats and re-alleges each and every allegation contained in paragraphs 1 through 54 as if fully set forth herein.

56. Comcast's false and misleading claims in its advertising were and are being disseminated in Illinois.

57. Comcast's false and misleading representations of fact have disparaged AT&T Illinois's goods, services and business.

58. Comcast made these false and misleading representations of fact in the course of its business.

59. Comcast's false and misleading claims constitute unfair trade practices in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq*.

60. AT&T Illinois has been and will continue to be damaged by Comcast's false and misleading representations in an amount to be determined at trial.

61. On information and belief, Comcast's conduct is willful, deliberate, intentional and in bad faith.

62. By reason of the foregoing acts, Comcast has caused, and unless enjoined will continue to cause, irreparable harm to AT&T Illinois.  AT&T Illinois has no adequate remedy at law to redress these injuries.

**THIRD CAUSE OF ACTION**
**(Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS 505/1 *et seq*.)**

63. AT&T repeats and re-alleges each and every allegation contained in paragraphs 1 through 62 as if fully set forth herein.

64. Comcast has engaged in unfair and deceptive conduct, including the dissemination of false and misleading advertising, and continues to do so. Among other things, this advertising misrepresented material characteristics of AT&T Illinois' television service offerings, and falsely and disparagingly attacked AT&T Illinois and its products.

65. Comcast has disseminated false and misleading claims in its advertising in trade and commerce in Illinois, and continues to do so.

66. Comcast knew or should have known that its claims were and are false and misleading. Moreover, Comcast made and continues to make these claims despite awareness of their falsity. Comcast thus acts with reckless indifference to the rights of others and/or in intentional and wanton violation of those rights.

67. Comcast intended for consumers to rely on its false advertisements. Among other things, Comcast intended to induce consumers to purchase Comcast's services and/or to refrain from purchasing services offered by AT&T Illinois.

68. Comcast's conduct implicates consumer protection concerns by, among other things, improperly and unlawfully inhibiting competition in the market for services marketed by Comcast and AT&T Illinois.

69. As set forth above, Comcast's false advertisements have caused and are causing substantial injury and damage to AT&T Illinois.

70. AT&T Illinois's damages and injuries have been, and are likely to be, proximately caused by Comcast's false advertising and deceptive conduct.

71. Comcast's false and misleading claims constitute unlawful consumer fraud and deceptive business practices and unlawful false advertising.

72. Comcast's conduct with regard to its advertising constitutes a violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

**PRAYER FOR RELIEF**

WHEREFORE, AT&T respectfully requests that the Court enter judgment as follows:

A.  An Order adjudging that Comcast violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and 815 ILCS 505/1 *et seq.* and 815 ILCS 510/2 *et seq.* of Illinois law;

B.  An Order preliminarily and permanently enjoining Comcast from disseminating or causing the dissemination of the advertisements attached hereto as Plaintiff's Exhibits A, B, C, and D;

C.     An Order enjoining Comcast from disseminating or causing the dissemination of claims in any packaging, advertising, or other promotional materials that say, show or imply that: (1) the purchase of television services from AT&T Illinois results in the placement, or an increased chance of placement, of a utility box or VRAD, on or near to the customer's property; (2) the purchase of TV services from AT&T Illinois results in a customer having any adverse impact, or an increased chance of an adverse impact, because of the placement of a utility box or VRAD,; (3) AT&T Illinois and/or its VRADs "block[s]" or "limit[s]" (or any other words of similar import) HD content or any false statements about the functioning of a VRAD; (4) AT&T Illinois offers fewer HD television channels than Comcast; (5) AT&T Illinois only allows its customers to view HD channels or content on television at a time; (6) AT&T Illinois provides television service only over "narrowband" facilities; and (7) and AT&T Illinois

does not offer local programming.  D.  An Order permanently enjoining Comcast from making any of the advertising claims challenged as false or misleading in this Complaint in any commercials, advertisements, or other promotional materials;

E.  An Order directing an accounting by Comcast of their gains, profits, savings, and advantages realized by reason of its false advertising, awarding AT&T Illinois damages as allowed by law, and trebling AT&T Illinois' recovery pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and 815 ILCS 505/10a;

F.  An Order granting AT&T Illinois its costs and disbursements in this action, including its reasonable attorneys' fees; and

G.  An Order granting AT&T Illinois such other and further relief as this Court may deem just and proper.


**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DATED:  April 10, 2008                    Respectfully submitted,

ILLINOIS BELL TELEPHONE, D/B/A AT&T ILLINOIS


By:  /s/ Brian L. Crowe
          One of Its Attorneys

Brian L. Crowe (ARDC #0549584)
bcrowe@shefskylaw.com
John F. Kennedy (ARDC #6196185)
jkennedy@shefskylaw.com
Lynn A. Ellenberger (ARDC #6244188)
lellenberger@shefskylaw.com
SHEFSKY & FROELICH LTD.
111 E. Wacker Drive, Suite 2800
Chicago, IL  60601
Telephone:  (312) 527-4000
Facsimile    (312) 527-4011

and

Christopher A. Cole
ccole@manatt.com
Manatt Phelps Phillips, LLP
700 12th Street, N.W., Suite 1100
Washington, D.C.  20005
Telephone:  (202) 585-6524
Facsimile:  (202) 637-1535

1080849_1

The Herald News   Thursday, March 13, 20



# AT&T not only blocks your house, it blocks your HD options.

With Comcast, you get more HD options than with any other provider. And with On Demand from Comcast Digital Cable, you can choose from over 200 hours of free and pay-per-view movies and shows in HD whenever you want. Something AT&T can't offer. Best of all, you can watch different HD channels on multiple TV's, so no one in the family is blocked from their favorite HD programs.

What you get with AT&T:
- Giant utility boxes.
- Less HD options.
- No HD On Demand.
- Multiple TV's only receive one HD channel at a time.

**Comcast.**

**The proven advanced technology.**

HD equipment required to receive HD programming. HD programming varies based on digital package. Visit hdareas.comcast.net for Comcast HD programming in your area. Call 1.866.594.1234 for restrictions and complete details. ©2008 Comcast. All rights reserved.

**EXHIBIT A**



**AT&T not only blocks your house,
it blocks your HD options.**

With Comcast, you get more HD options than with any other provider. And with On Demand from Comcast Digital Cable, you can choose from over 200 hours of free and pay-per-view movies and shows in HD whenever you want. Something AT&T can't offer. Best of all, you can watch different HD channels on multiple TV's, so no one in the family is blocked from their favorite HD programs.

What you get with AT&T:
• Giant utility boxes.
• Less HD options.
• No HD On Demand.
• Multiple TV's only receive one HD channel at a time.

(comcast.

**EXHIBIT B**

# EXHIBIT C

# TO AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

# COMPACT DISK TO BE FILED "OVER THE COUNTER"

# SEE NOTICE OF PAPER FILING

**Competitrack**

**Advertiser: Comcast Cable**
**Product: Digital Cable Service**
**Title: Up To Date**
**Ad Code: COMCA-17842**

**First Date: 04/04/08**
**Source: Chicago**
**Length: 30**
**New/Recut: New**





**(Music)**
**VOICE OVER:** Two homes.

One connected with narrowband copper wire...

the other with powerful broadband cable.







One limits a home to view only 1 HD channel at a time.

The other can watch...

unlimited HD channels.







One home has limited On Demand content...

with no local programming.

The other has tons of On Demand choices...







most of which are free and include local programming.
Text: Restrictions apply. Not available in all areas. Basic service subscription required. Programming claims based on the number of On Demand shows...

Oh yeah the other big difference, one home may get...

Text cont.: available on Comcast Digital Cable as compared to AT&T as of 2/25/08. For more information call 1-866-4-BEST-TV.

some free landscaping in their yard.
**(Fade out)**

**- Tapes and MPEGs can be ordered by contacting us at 718.482.4211 -**
*This material may be used for internal review, analysis or research only. No part of this document may be reproduced, published, or publicly displayed in any form.*

**EXHIBIT D**