IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST OF ILLINOIS III, INC.; COMCAST CORP.; COMCAST CABLE HOLDINGS LLC; and COMCAST OF CHICAGO, INC.,<br><br>Defendants.<br><br>COMCAST OF ILLINOIS III, INC.; COMCAST CORP.; COMCAST CABLE HOLDINGS LLC; and COMCAST OF CHICAGO, INC.,<br><br>Counterclaimants,<br><br>v.<br><br>ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS,<br><br>Counterdefendant,<br><br>and AT&T, INC.,<br><br>Third-party Defendant. | Case No: 08 CV 1680<br><br>Honorable Elaine E. Bucklo<br><br>Magistrate Judge Martin C. Ashman |

**ILLINOIS BELL TELEPHONE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COMCAST'S COUNTERCLAIM FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND LACK OF FEDERAL <u>SUBJECT MATTER JURISDICTION</u>**

Plaintiff and Counterdefendant Illinois Bell Telephone Company, d/b/a AT&T Illinois

("Illinois Bell") submits this memorandum in support of the dismissal of the Counterclaims and

1

9171415

Third-party Complaint of Comcast Illinois III, Inc., Comcast Corp., Comcast Holdings LLC, and Comcast of Chicago, Inc. (collectively, "Comcast") for the failure to state a claim upon which relief can be granted and a lack of federal jurisdiction.

Illinois Bell initiated the instant action to contest false advertisements by Comcast. (Doc. 1.) Comcast's Counterclaims and Third-party Complaint presents two distinct sets of claims in response: Counts I, II, III, and IV relate to alleged disruptions of Comcast service, (Doc. 27 at ¶¶ 24-29,) while Count V relates to the purported truthfulness of Comcast advertising, (*id.* at ¶¶ 21-23). This motion is not directed against Count V, which responds to Illinois Bell's Lanham Act claims.[1] Rather, the focus of this motion is the inappropriateness of this federal forum for adjudicating Comcast's counterclaims with respect to the wholly unrelated allegations of service disruption.

Count I accuses Illinois Bell of violating the Cable Communications Policy Act. (*Id.* at ¶¶ 30-38.) The Cable Communications Policy Act, however, does not create a federal cause of action for alleged interference attributable to signal leak. Without Count I, this Court lacks jurisdiction over Comcast's pendant common law state claims—Trespass to Chattels (Count II), Negligence (Count III), and Common Law Unfair Competition (Count IV)—which do not arise from a common nucleus of operative facts with either Illinois Bell's false advertising claims against Comcast or Comcast's request for a declaratory judgment that it has not engaged in false advertising (Count V).

---

[1] In keeping with this Court's April 21, 2008 Order expediting briefing solely on the issues related to subject matter jurisdiction, Illinois Bell is not asserting at this time any other defenses it may have to Comcast's Counterclaims and Third-party Complaint. Illinois Bell reserves the right to move to dismiss Count V on nonjurisdictional grounds. Illinois Bell also does not waive any defenses that could be asserted by AT&T, Inc., the third-party defendant that has not appeared to date in this litigation, including that this Court lacks personal jurisdiction over AT&T, Inc.

## BACKGROUND

Comcast alleges that occasionally when a customer requests the installation of U-Verse TV service in their home, the signal from Illinois Bell leaks into Comcast's infrastructure and creates interference that may in turn generate a service disruption. Specifically:

> On information and belief, during the process of installing the U-Verse TV service in certain homes, AT&T co-opts the coaxial cable system through which the electronic information associated with Comcast's telephone, Internet, and television services flows to and from Comcast. In doing so, on information and belief, AT&T introduces AT&T's own electronic information into the coaxial wiring system which then exits the dwelling where the installation is taking place back into Comcast's proprietary infrastructure. . . . The introduction of the foreign information into Comcast's infrastructure causes Comcast's telephone, Internet, and televisions to slow or, in many cases, to completely shut down to hundreds of other homes in the area where the U-Verse TV installation is taking place.

(Doc. 27 at ¶¶ 24, 25.) On the basis of this alleged signal leak from Illinois Bell to Comcast, Comcast hopes to join a civil action for violation of the Cable Communications Policy Act (Count I) and common law claims for trespass to chattels (Count II), negligence (Count III), and unfair competition (Count IV) as counterclaims to the otherwise unrelated pending false advertising litigation. (*Id.* at ¶¶ 33, 41, 51, 60.)

## ARGUMENT

### A.   Comcast Does Not State a Federal Cause of Action under Section 553 of the Cable Communications Policy Act

Although Comcast's Counterclaims and Third-party Complaint does not specify which provisions of the Cable Communications Policy Act Illinois Bell allegedly ran afoul of, the Corrected Memorandum in Support of Comcast's Motion for Temporary Restraining Order and Preliminary Injunction highlights 47 U.S.C. § 553(a)(1) as the basis for Count I. (Doc. 36 at 7.) This provision of the Cable Communications Policy Act reads in relevant part:

> No person shall *intercept or receive or assist in intercepting or receiving* any communications service offered over a cable system, unless specifically

3

>authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1) (emphasis added). By its plain language § 553 is clearly inapplicable to the allegations at issue. Section 553 prohibits the interception or reception of a communication service offered over a cable system, not, as alleged here, the "introduction of the foreign information into Comcast's infrastructure" by Illinois Bell. *See* Brenner, Price & Meyerson, CABLE TELEVISION AND OTHER NONBROADCAST VIDEO § 5:85 (the rationale of § 553 was to address the numerous ways in which theft of cable service occurs). *See also* 47 U.S.C. § 553(a)(2) ("For the purpose of this section, the term 'assist in intercepting or receiving' shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1)."); *Suppressed v. Suppressed*, 109 F. Supp. 2d 902, 903 (N.D. Ill. 2000) (noting that the legislative history of § 553 indicates that it was intended to prevent the use, manufacture, and distribution of unauthorized descrambling devices). Signal leakage from Illinois Bell into Comcast's infrastructure is not an "intercept[ion]" or "rece[ption]" of Comcast's communication services by Illinois Bell.

Courts' conventional reading of § 553 limits criminal and civil liability to persons involved in the theft of cable services. *See*, *e.g.*, *Charter Communications Entertainment I, LLC v. Burdulis*, 367 F. Supp. 2d 16, 18-19 (D. Mass. 2005) (imposing liability on a cable customer who used a pirate converter box to receive premium programming he did not pay for); *Comcast of Illinois X, LLC v. Platinum Electronics, Inc.*, 336 F. Supp. 2d 957, 961-62 (D. Neb. 2004) (imposing liability on company abetting theft of cable services through the sale of pirate converter box); *Kansas City Cable Partners v. Espy*, 250 F. Supp. 2d 1296, 1302 (D. Kan. 2003) (imposing liability on cable customer for theft of cable services); *Kingvision Pay-Per-View, Ltd.*

4

*v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 958 (E.D. Wis. 2001) (imposing liability on a bar that intercepted a closed circuit pay-per-view boxing match signal bound for a residence and rerouted it to a commercial setting without authorization); *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997) (imposing liability after cable customer installed a pirate converter box and downgraded his service); *Storer Communications, Inc. v. Mogel*, 625 F. Supp. 1194, 1200 (S.D. Fla. 1985) (concluding as a matter of first impression that § 553 creates liability for abetting theft of cable services by the sale of a descrambler box). *See also Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 961 (N.D. Ill. 2000) (noting that the purpose of § 553 was to discourage the theft of cable services). Comcast is no doubt aware that this is the proper interpretation of § 553 based on their own successes prosecuting cable theft under the statute just in this last year. *See*, *e.g.*, *Comcast of Illinois X v. Multi-Vision Electronics, Inc.*, 491 F.3d 938 (8th Cir. 2007) (affirming $2 million judgment for Comcast against manufacturer of pirate converter boxes); *Comcast of Illinois X, LLC. v. Toguchi*, No. 05 C 5363, 2008 WL 360682, *5 (N.D. Ill. Feb. 11, 2008) (awarding Comcast enhanced damages where defendant financially gained from use of a descrambler to steal cable); *Comcast of Southern New England, Inc. v. Kacavas*, No. 07 CV 10780 NG, 2007 WL 4556685 (D. Mass. Dec. 18, 2007) (same); *Comcast Cable Communications LLC v. Soto*, No. 06-5348, 2007 WL 2066357, *2-3 (D.N.J. July 16, 2007) (uncontested allegations that customer "purchas[ed] 'pirate' cable decoding equipment in order to descramble Comcast's 'premium' and 'pay-per-view' programming without payment" sufficient to prove violation of § 553); *Comcast Cable Communications v. Bowers*, No. 06-1664 (RBK), 2007 WL 1557510, *2 (D.N.J. May 25, 2007).

9171415

*CSC Holdings, Inc. v. Westchester Terrace at Crisfield Condominium*, 235 F. Supp. 2d 243 (S.D.N.Y. 2002), the sole instance of a more expansive reading, is admittedly contrary to the legislative history of § 553. *Id.* at 263 (ignoring the legislative history in leaving open the possibility, without deciding, that "intercept" includes any interruption of a cable signal). The Seventh Circuit, however, relied on this history to clarify the scope of § 553 and a related anti-piracy provision at 47 U.S.C. § 605 in *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996).

Section 605(a) does not prohibit interception *per se*, but rather focuses on the pairing of interception or reception and publication or disclosure. The *Norris* court noted that as originally enacted the secrecy provisions of § 605(a) covered both radio and wire communications; a 1968 amendment removed the reference to wire communications from the second, third, and fourth clauses.[2] 88 F.3d at 464-65. "Unfortunately, the regulatory scheme created by the 1968

---

[2] Section 605(a) currently reads in relevant part:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

Omnibus Crime Control Act left a gap" that became problematic with the rise of cable, a wire communication. *Id.* at 465-66.

> As a result, Congress passed 47 U.S.C. § 553(a), which prohibits the unauthorized "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system," as part of the Cable Communications Policy Act of 1984, Pub L. No. 98549, § 2, 98 Stat. 2779, 2796. *Congress enacted § 553 in an effort to remedy "a problem which was increasingly plaguing the cable industry—theft of cable services," including "the manufacture and sale of equipment intended to permit reception of cable services without paying for it...."* H.R. Rep. No. 934, 98th Cong., 2d Sess. 83, *reprinted in* 1984 U.S.C.C.A.N. 4720. In addition, the Cable Communications Policy Act enacted stiff penalties for violations of § 605(a), *see* 47 U.S.C. § 605(e)(1)-(3), and even stiffer penalties for those who manufacture or distribute equipment to be used for intercepting satellite cable programming or for any other violation of § 605(a), *see* 47 U.S.C. § 605(e)(4). Cable Communications Policy Act, § 5, 98 Stat. at 2802-03.

*Norris*, 88 F.3d at 466 (emphasis added). *See also TKR Cable Co. v. Cable City*, 267 F.3d 196, 205-06 (3d Cir. 2001) ("Congress created § 553 to address an enforcement gap created by the 1968 modification of § 605, which rendered § 605 applicable only to satellite transmissions insofar as they are actual airborne transmissions. As this gap had been of minimal significance until the cable industry expansion, Congress could afford to overlook it during much of the interval leading up to the 1984 Act. By 1984, however, Congress decided that the need to deter decoder box piracy of satellite-initiated cable television transmissions had become sufficiently pressing to merit legislation.").

In interpreting the scope of § 553, the Seventh Circuit in *Norris* (unlike the outlier decision in *CSC Holdings*) chose not to ignore the congressional intent behind the undefined terms "intercept" and "receive." According to the House Report:[3]

> Section 634 of the bill sets forth a liability provision *specifically applicable to theft of services* offered over a cable system, while also providing specific

---

[3] The provision now codified at 47 U.S.C. § 553 was § 634 in its original enactment and the legislative history often refers to it as such.

7

9171415

> criminal and civil remedies for violation of the section. Paragraph 634(a)(1) prohibits any person from intercepting or receiving, or from assisting in the interception or reception of, any service offered over a cable system, unless the cable operator specifically authorizes the reception or it is otherwise specifically authorized by law.
>
> The committee intends the phrase 'service offered over a cable system' to *limit the applicability of this section to theft of a service* from the point at which it is actually being distributed over a cable system. Thus, situations arising with respect to the reception of services which are transmitted over-the-air (or through another technology), but which are also distributed over a cable system, continue to be subject to resolution under Section 605 to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system.

H.R. Rep. No. 934, 98th Cong., 2d Sess. 83, *reprinted in* 1984 U.S.C.C.A.N. 4720 (emphasis added).

This clarifies two interrelated issues about the scope of § 553. First, Congress intended § 553 to create a federal cause of action for theft of cable services, not signal leakage from lawful competition. Comcast cannot state a cause of action under § 553 on allegations unrelated to the theft of cable services. Second, § 553 simply affords cable operators the same piracy protections they lost when § 605 was amended to exclude wire communications. As such, a reading of "intercept" or "receive" that strays from the intercept-or-receive-and-divulge framework of § 605 strains credulity.

In fact, Comcast cannot believe that "intercept" and "receive" as used in § 553 encompasses, or is intended to encompass, "introduction of the foreign information into Comcast infrastructure" by Illinois Bell. Comcast's aforementioned frequent use of § 553 for its intended purpose belies any confusion they might claim about its proper application. *See Comcast Cable Communications v. Adubato*, 367 F. Supp. 2d 684, 685 (D.N.J. 2005) ("Comcast is engaging in an aggressive campaign to discourage these practices, identifying manufacturers and distributors

8

of pirate devices, and bringing legal actions against them, and identifying and instituting suit against individuals who purchase pirate devices.").

Comcast does not allege that Illinois Bell is stealing or abetting the theft of its cable services. As such, Comcast has not stated a federal cause of action against Illinois Bell under § 553. Accordingly, this Court must dismiss Count I of Comcast's Counterclaim and Third-party Complaint.

### B.   There Is No Supplemental Jurisdiction for Comcast's State Law Claims Based on Allegations of Signal Leakage.

While federal courts are generally limited to hearing federal claims where the parties are nondiverse, 28 U.S.C. § 1367(a) grants district courts supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." State claims, however, are not part of the same case or controversy with a federal claim unless they "derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir.1995). *See also Oak Park Trust & Savings Bank v. C.G. Therkildsen*, 209 F.3d 648, 651 (7th Cir. 2000) (dismissing counterclaims arising out of different events than the claim for a lack of supplemental jurisdiction).

This Court has not hesitated to dismiss pendant state claims arising out of a set of operative facts with a closer connection to the remaining federal claims than the instant case, but which this Court has nonetheless determined to be insufficient. For instance, in *White v. Addante*, 498 F. Supp. 2d 1109 (N.D. Ill. 2007), a husband and wife alleged that the wife was falsely arrested for obstructing a peace officer and before she was transported to jail, the police officer made a threatening gesture towards the husband. *Id.* at 110. The *White* court, however, ruled that the wife's Fourth Amendment unconstitutional arrest claim did not establish

supplemental jurisdiction over the husband's state law assault claim. *Id.* at 1112 (noting that claims by one plaintiff can establish supplemental jurisdiction over claims by another plaintiff if they are part of the same case or controversy). These claims did "not share a common nucleus of operative facts" because dismissing the husband's assault claim against the police officer would have "no effect on the outcome of [the wife's] federal claim of unconstitutional arrest." *Id.* (wife's claim depended on a lack of probable cause). *See also Berg v. BCS Financial Corp.*, 372 F. Supp. 2d 1080, 1095 (N.D. Ill. 2005) (ERISA claim did not provide supplemental jurisdiction for breach of contract claim even where both arose from the same employment relationship).

Similarly, in *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954 (N.D. Ill. 2007), a real estate agent alleged that his competitors conspired to drive him out of business for charging lower commissions, employing a variety of anticompetitive tactics including filing false ethics complaints against him. *Id.* at 957-58. The agent brought a Sherman Act claim and by separate counts sought injunctions and declarations against the pending ethics hearings. *Id.* at 958. Yet, this Court concluded that the factual nexus between the nonfederal claims pertaining to the ethics hearings and the alleged anticompetitive behavior could not support supplemental jurisdiction. *Id.* at 967 ("However, his claims against RAAR and IAR concerning the ethics complaint do not concern whether the ethics complaint was false, but rather whether RAAR and IAR improperly handled the complaint.").

Here, Counts II, III, and IV of Comcast's Counterclaim and Third-party Complaint do not share a common nucleus of operative facts with Illinois Bell's false advertising claim or even Comcast's counterclaim for a declaratory judgment (Count V). Rather, like Count I, Comcast's common law claims for trespass to chattels, negligence, and unfair competition arise from the

allegations that Illinois Bell's signal has leaked into Comcast's infrastructure, disrupting service. (Doc. 27 at ¶¶ 33, 41, 51, 60.)

There is no crossover whatsoever between Comcast's allegations related to its supposed truthful advertising, (Doc. 27 at ¶¶ 21-23,) and its allegations related to service disruption, (*id.* at ¶¶ 24-29.) For instance, whether Illinois Bell "has, on repeated occasions, introduced foreign information into Comcast's cable infrastructure without Comcast's authorization"—the central allegation repeated throughout Comcast's common law counterclaims—will not affect whether Comcast's advertisements about the size and location of VRAD boxes are truthful or false under the Lanham Act. An examination of the declaration Comcast seeks with respect to Illinois Bell's Lanham Act claim reveals not a single mention of service disruptions to Comcast or the facts surrounding the alleged signal leaks. (*Id.* at ¶ 69.) With the failure to state a federal cause of action under § 553 in Count I, there is no other federal claim in this litigation with which Comcast's common law trespass to chattel, negligence, and unfair competition counts can claim a factual nexus.

* * *

For the foregoing reasons, Illinois Bell requests that this Court dismiss Count I of Comcast's Counterclaim and Third-party Complaint for the failure to state a federal claim and dismiss Counts II, III, and IV for a lack of subject matter jurisdiction.


Dated: April 24, 2008               Respectfully Submitted

                                    ILLINOIS BELL TELEPHONE COMPANY


                                     /s/ Ranjit J. Hakim
                                    _____

                                    Michael J. Gill
                                    Ranjit Hakim

11

9171415

                                      MAYER BROWN LLP
                                      71 South Wacker Drive
                                      Chicago, IL 60606
                                      (312) 782-0600
                                      (312) 701-7711 – Facsimile
                                      mgill@mayerbrown.com
                                      rhakim@mayerbrown.com

9171415

## **CERTIFICATE OF SERVICE**

      I, Ranjit Hakim, an attorney, hereby certify that on April 24, 2008, a copy of the foregoing ILLINOIS BELL TELEPHONE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COMCAST'S COUNTERCLAIM FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND LACK OF FEDERAL SUBJECT MATTER JURISDICTION was served via email and the Court's CM/ECF system upon all counsel listed below.

                                            /s/ Ranjit J. Hakim
                                            Ranjit Hakim

Thomas P. Jirgal
Douglas N. Masters
Julie P. Samuels
Loeb & Loeb LLP
321 N. Clark Street
Suite 2300
Chicago, IL 60610

9171415