**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

------------------------------------------------------------

ILLINOIS BELL TELEPHONE, d/b/a AT&T    :
ILLINOIS,
                                       :
             Plaintiff,
                                       :    **Case No. 08 CV 1680**
        v.
                                       :    **Honorable Elaine E. Bucklo**
COMCAST OF ILLINOIS III, INC.;
COMCAST CORPORATION; COMCAST           :    **Magistrate Judge Martin C. Ashman**
CABLE HOLDINGS LLC; and COMCAST
OF CHICAGO, INC.,                      :

             Defendants.               :

COMCAST OF ILLINOIS III, INC.;         :
COMCAST CORPORATION; COMCAST
CABLE HOLDINGS LLC; and COMCAST        :
OF CHICAGO, INC.,
                                       :
             Counterclaimants,
                                       :
        v.
                                       :
ILLINOIS BELL TELEPHONE, d/b/a AT&T
ILLINOIS,                              :

             Counterdefendant,         :

and AT&T Inc.,                         :

             Third-party Defendant.    :

------------------------------------------------------------

**COMCAST'S  OPPOSITION TO AT&T'S MOTION**
**TO COMPEL RESPONSE TO DOCUMENT REQUEST NO. 2**

Plaintiff Illinois Bell Telephone, d/b/a AT&T Illinois ("AT&T") is not seeking discovery

in good faith.  First, it told this Court that it would need no discovery in support of its Motion for

Preliminary Injunction (the "PI Motion").  Now it seeks to compel discovery of its competitor

Comcast's *future* advertising strategy, commercially sensitive information of the highest order.

At that same hearing, however, AT&T heard this Court acknowledge that such information need not be produced.

Moreover, AT&T persists with its motion to compel despite having been told by Comcast that the documents not produced concerning VRAD-related advertisements are about an ad that Comcast rejected for future use or about marketing materials that Comcast has no current plans to use, or privileged comments by Comcast's counsel to the other advertisements. Because AT&T's motion to compel seeks irrelevant, commercially sensitive, privileged information and serves no legitimate purpose other than to harass Comcast, the Court should not only deny AT&T's unprecedented request to review its competitor's developing marketing strategy, the Court should also grant Comcast its fees and costs incurred in opposing AT&T's motion to compel.

## BACKGROUND

In the weeks preceding the filing of this action and AT&T's motion for preliminary injunction, Comcast and AT&T discussed concerns that each had with the other's conduct regarding the roll-out of AT&T's U-Verse television service in Illinois. AT&T complained about certain Comcast advertisements focusing on the "VRAD Boxes" associated with AT&T's U-Verse service. Comcast raised concerns that in installing its U-Verse service, AT&T was triggering wide-spread outages and disruptions of Comcast's television, telephone and internet services, which Comcast customers, unaware such interruptions were AT&T's fault, blamed on Comcast. In response to AT&T's advertising concerns, and despite disagreements over the merits of such concerns, Comcast quickly pulled the disputed advertisements. In an April 10, 2008 letter to AT&T, Comcast summarized its efforts: "[E]ach of the advertisements you reference in your complaint has ceased running in the form complained of. Indeed two of them

have not been running for over two weeks, and a third ran for only 3 days and has not aired for a week.  The only other advertisement that you have questioned was pulled late Wednesday evening after you called me (although there may have been inadvertent spillage yesterday, as we have discussed). . . . We have cooperated with you in good faith, and are willing to continue cooperating, to address the reasonable concerns of both parties."  A true and correct copy of Comcast's April 10, 2008 letter to AT&T is attached as Exhibit I to the Declaration of Douglas Master ("Master Decl.), dated April 10, 2008 (Docket # 33).

In contrast, despite having caused approximately forty incidents of service disruption to Comcast's cable system in just the past few months, AT&T has refused to implement procedures to prevent these disruptions, or otherwise allow Comcast to quickly identify and correct them. (*See* Decl. of Robert B. Curtis ("Curtis Decl."), dated April 19, 2008, ¶¶ 18-20, Ex. A; *see also* Masters Decl.)[1]

On April 14, 2008, AT&T filed its Amended Complaint and a motion for preliminary injunction seeking to enjoin Comcast from making advertising claims that Comcast had already said it was willing to stop making (if it ever made them in the first place).  Table 1 below juxtaposes the claims that AT&T seeks to enjoin in its April 14 motion for preliminary injunction, and the concessions that Comcast offered three days earlier in its April 10, 2008 letter to Comcast.  For each claim put at issue by AT&T, Comcast had already offered to address it.

---

[1] The Curtis Decl. and Masters Decl. were filed in connection with Comcast's motion for preliminary injunction, and are respectively Docket Nos. 32 and 33.

**Table 1:**

| Claims AT&T Seeks to Enjoin in its April 14, 2008 Preliminary Injunction Motion | Comcast's Concessions in its April 10, 2008 Letter to AT&T |
|---|---|
| 1. "a consumer's purchase of [AT&T's] subscription service will result in the placement of a utility box or other similar facility on or near the consumer's property;" | "Based on AT&T's representations of fact, Comcast is prepared to agree not to advertise a direct linkage between the purchase of AT&T U-Verse services by a customer and the placement of a VRAD on that particular customer's property, and will agree not to claim such a direct causal link in its advertisements so long as such is true." |
| 2. "the purchase of [AT&T's] television service offerings result in a consumer being adversely affected by [AT&T] subsequently installing a utility box or similar structure;" | "Comcast also will agree not to claim a direct causal link between the purchase of AT&T U-Verse services by a customer and an adverse impact to that customer from the placement of a VRAD on that customer's property." |
| 3. "that [AT&T] 'block' consumers' homes through any means, including the placement of utility boxes on or near to the consumer's property;" | See 1 & 2 above. As AT&T observed at the April 17 Hearing, "Really [Claims] 1 through 4 are really variations on the same exact theme that buying AT&T . . . will result in . . . you having a box . . . at or near your home." (4/17/2008 Hearing at 19:23-20:1.)[2] |
| 4. "there is any casual connection between a consumer's purchase of AT&T television service offerings and the placement of a utility box or similar structure at a home or neighborhood; or" | See 1, 2 & 3 above. |
| "(5) [AT&T's] television service offerings do not offer local programming[.]" | "To the extent the cadence in the most recent advertisement suggested that AT&T did not offer local programming, it will be corrected. My understanding is that AT&T does not offer local programming ON Demand or in HD, and to the extent that is true Comcast objects to any attempt to limit Comcast's ability to claim as much. |

---

[2] In addition to raising concerns about claims that the VRAD boxes physically "blocked" customer's homes, AT&T also demanded that Comcast not make claims that AT&T "blocks" or "limits" HD content directed into customer's home. (*See* Smith Decl. ¶ 4.) Because AT&T's U-Verse service and its offering of DISH satellite television services limit HD content differently, Comcast agreed that where appropriate it would make an appropriate distinction in the advertisements or in a disclaimer. Because AT&T's U-Verse service does limit HD content, for example by allowing customers to watch only one live HD channel in the home at a time, Comcast refused to concede its right to advertise on that point. Because AT&T is attempting to use this litigation to extract concessions that it has no right to, it persists in its motion despite the absence of ongoing dispute over the five clauses above.

Accordingly, at the initial hearing on AT&T's PI Motion on April 17, 2008 (the "April 17 Hearing"), Comcast argued that AT&T's PI Motion, dealing with advertisements that Comcast had voluntarily ceased running, was moot particularly in light of the assurances Comcast had already given AT&T. (4/17/2008 Hearing Tr. at 10:21-24 ("So the problem we have here is that the ads aren't running. It's going to take about two weeks before they are going to see any new television ads because, as we've told them, we are going back, we are modifying the ads."; *see also id.* at 22:22-23:2.)) By the April 17 Hearing, Comcast had already determined not to run any of the advertisement referenced in AT&T's Amended Complaint. (Decl. of Jeffrey E. Smith ("Smith Decl.") ¶ 2.) Accordingly, Comcast promised the Court: "I'm representing that we are not running these ads, and we will not run them in this form." (*Id.* at 31:25-32:2.) Comcast also explained that its revision of the withdrawn ads was an ongoing process: "They are going to be modified or there's going to be different ads." (*Id.* at 32:2-3.)

Instead of proceeding with a moot dispute, Comcast proposed that having committed to addressing AT&T's concerns, AT&T should wait to view any future advertisements by Comcast and then evaluate whether any dispute had in fact ripened. AT&T nevertheless insisted on proceeding with its motion for preliminary injunction that addressed discontinued ads. Again, within the last week, Comcast has reiterated its willingness to enterer into a number of stipulations that would appear to address nearly all of AT&T's concerns at issue in this action.

Comcast never proposed addressing any *potential "future"* advertisements at any hearing on AT&T's PI Motion. Indeed, the Court expressly considered the very possibility that Comcast would not disclose any planned future advertisements when it commented in the April 17 Hearing that Comcast would risk the possibility of a broader injunction if it chose not to disclose its future advertisements. (4/17/2008 Hearing Tr. at 39:16-18.) Of course, Comcast then

believed that it would be ready to proceed with new advertisements by early May.  But,

illustrating the impossibility of litigating "future" advertisements, Comcast since adjusted its

marketing strategy (in part in deference to the Court's initial reactions at the April 17 Hearing)

and, as a result, has not prepared to air any new VRAD-related advertisements.  (*See* Smith Decl.

¶ 3.)  To be clear, Comcast is not choosing to withhold advertisements that are set to run.

Rather, having changed its marketing strategy, Comcast simply has no advertisements to

produce.

Having insisted on proceeding with its motion to enjoin claims that no one was making,

AT&T told the Court that "We [AT&T] don't need discovery.  In fact, we think you could rule

on the papers."  (4/17/2008 Hearing Tr. at 13:1-2.)  Yet, on April 18, 2008, contrary to its

representations to the Court that discovery was unnecessary to its PI Motion, and without leave

of Court (or even discussion with Comcast's counsel), AT&T issued a document request

demanding a response four days later.  In Request Number 2, AT&T demanded "All

Advertisements concerning or relating to VRADs, including but not limited to, planned or future

Advertisements pertaining to VRADs."  AT&T did not define "planned or future

Advertisements."  Comcast objected on a number of grounds, including that any advertisements

that Comcast had not disseminated were irrelevant to the issues before the Court.[3]  In any event

the only VRAD-related advertisements Comcast had depicting VRADs in the manner described

in the Amended Complaint were either the advertisements Comcast had already aired,

---

[3] Illustrating the extent to which AT&T seeks to use litigation over specific claims in discontinued advertising to discover Comcast's competitive strategies, AT&T has also demanded access to Comcast's highly sensitive "marketing and business strategies" pertaining to its use of VRADs in the Challenged Advertisements.  Document Request No. 4.  Again, contrasting AT&T's apparent desire to engage in a full blown discovery battle with its earlier representations to the Court that it did not even need discovery, it seems that AT&T's pursuit of discovery here has more than one purpose.

advertisements that Comcast had already shelved, or comments by Comcast's legal counsel to the existing ads, which had not even been submitted to Comcast's marketing group for consideration. (Smith Decl. ¶ 5-6.) AT&T has refused Comcast's repeated invitations to withdraw its motion or at least identify what documents it thinks Comcast should produce. Comcast now files this opposition and seeks its fees and costs for doing so.

## ARGUMENT

### I.  AT&T's Motion to Compel Should Be Denied Because It Seeks an Irrelevant Category of Documents That Comcast Does Not, in Any Event, Possess.

#### A.  Comcast Has No "Future" Advertisements to Produce.

As a threshold matter, AT&T fails to explain exactly what it is seeking the Court to order Comcast to produce. In its document requests, AT&T purports to seek production of "planned or future Advertisements pertaining to VRADs." The universe of VRAD-related advertisements produced by Comcast consists of (1) the advertisements that have already aired; (2) advertisements that Comcast has created but decided not to use and has no plans to use; and (3) comments by Comcast's counsel to some of the already-aired advertisements that have not even yet been submitted to Comcast's marketing group for consideration. (*See* Smith Decl. ¶¶ 5-6.) The first and second categories consisting of already aired or already shelved advertisements cannot in any sense be considered "future" or "planned" advertisements, leaving only the third category – comments by counsel to the existing advertisements. But, this category of documents is classic work product made for the purpose of rendering legal advice and is therefore protected from disclosure. *See In re American Nat. Bank and Trust Co. of Chicago v. AXA Client Solutions, LLC*, No. 00 C 6786, 2002 WL 1058776, *2 (N.D. Ill. March 22, 2002) (upholding privilege claim on attorney comments containing legal advice regarding draft letters).

Even if they were not subject to attorney client privilege, Comcast's legal counsel's proposed modifications to the existing advertisements would be nonresponsive as they are neither "future" nor "planned" advertisements because Comcast has made no plans to implement or use the proposed modifications. Comcast has, for the time being, made no decisions about when or how it will resume any VRAD-related advertisements, except that Comcast has committed (and told AT&T) that it will not run such advertisements in advance of the May 13, 2008 hearing. In committing to run no VRAD-related advertisements before the hearing on May 13th, Comcast again demonstrated its ongoing good faith, granting AT&T exactly the concession it asked for at the April 17 Hearing. At that hearing, counsel for AT&T said: "If they [Comcast] would simply agree to stand down from VRADs for the three weeks or so, that would make life a lot easier for everybody." (4/17/2008 Hearing Tr. at 36:7-9.) In derogation to those words, AT&T's motion to compel evidences that AT&T's intent here is less focused on pursuit of legitimate discovery, and more focused on attempting to infiltrate Comcast's marketing strategy and deter Comcast from considering any legitimate VRAD-related advertising in the future.

**B.    Even if There Were Documents To Produce, "Future" Advertisements Have No Bearing on AT&T's Right to Relief.**

AT&T is not entitled to any relief on the basis of actions Comcast is merely considering. Advertisements that Comcast may be in the process of developing are irrelevant to the claims or defenses of the parties here, putting AT&T's document request outside the scope of permissible discovery under Federal Rule of Civil Procedure 26. Courts routinely deny motions to compel where, as here, the movant seeks highly sensitive materials while unable to demonstrate a real need for such documents. *See EchoStar Communications Corp. v. News Corp. Ltd*, 180 F.R.D. 391, (D. Colo. 1998) (denying motion to compel that sought production of confidential information from competitors that was marginally relevant, if at all); *Wagner v. Viacost.com*,

8

No. 06-81113-CIV, 2007 WL 1879914, *2 (S.D. Fla. June 29, 2007) (rejecting movants appeal

to the generally broad scope of discovery to deny motion to compel seeking confidential

information that was irrelevant to case at issue).

AT&T argues that because the relief it seeks includes enjoining Comcast from making

certain claims in future advertisements, it is entitled to discovery of Comcast's future plans.  But

that (undeveloped) line of reasoning puts the proverbial cart in front of the horse.  If AT&T is

entitled to any relief under any of the statutes it interposes here, AT&T must establish such right

based on Comcast's existing conduct – not conduct that Comcast may or may not take in the

future.  Even if there were some hypothetical advertisement that Comcast was presently

considering, such an advertisement would be evidence of nothing at issue here.  Because

Comcast could as likely decide against running an ad, the mere fact that Comcast considers a

potential advertisement would provide no meaningful insight into even the likelihood that

Comcast would ultimately decide to air it, much less the claims made therein.  To allow AT&T

to make advertisements that Comcast has never run (nor even decided whether to run) a basis for

granting AT&T any relief would amount to an unprecedented form of prior restraint that in effect

cedes control of Comcast's marketing to its competitor.

If AT&T establishes its right to relief and obtains an injunction, Comcast will then use its

full efforts to comply with the resulting injunction.  Even then, AT&T would not be entitled to

preview Comcast's marketing plans.  Rather, AT&T would only be entitled to seek enforcement

if Comcast violated the Court's order by running an advertisement making any of the barred

claims.  Indeed, AT&T's seeming paranoia about Comcast's future good faith compliance with

any order is particularly ironic here where Comcast has at every turn sought to accommodate

AT&T's concerns in good faith, including removing the disputed advertisements, promising to

modify them to account for AT&T's concerns, and delaying any further VRAD advertisements until at least the hearing on May 13th. AT&T, in stark contrast, has stone-walled Comcast's every effort to resolve its concerns about the AT&T induced service outages, calling its own good faith into question.

**C.     Neither Comcast Nor the Court Acknowledged the Relevance of Future Advertisements to AT&T's Present Claims.**

Having offered no real analysis establishing the relevance of so-called "future" advertisements, AT&T instead asserts that the parties and the Court have already conceded the point during the April 17 Hearing. The April 17 Hearing transcript, however, reflects little more that the parties struggling to come to grips with the consequences of AT&T's insistence on continuing to seek injunction of conduct that Comcast had already agreed to cease. At the April 17 Hearing, Comcast repeated its concerns – now apparently realized given AT&T's exasperated demands for non-existent "future" advertisements – that a hearing on the old advertisements would be futile given that the parties' real concern would be whatever advertisements Comcast created to address AT&T's concerns. (4/17/2008 Hearing Tr. at 13:23-25 ("So, Your Honor, I think there's a real issue as to what we are going to be able to accomplish by running [sic] ads that aren't running and won't run again."); 26:19-22 ("I mean, if you want us to brief the issues on these ads that we have that we are not running and won't run, that's fine. I'm not sure that's going to get us to where we need to go.").)

At no point did Comcast suggest the solution would be for Comcast to invite AT&T to Comcast's marketing meetings so it can preview Comcast's next competitive marketing campaign. To the contrary, Comcast argued that AT&T should wait for Comcast to air any revised commercials and then evaluate whether there remained any ripe disputes. The Court

implicitly acknowledged that Comcast need not to share its future advertisements. (4/17/2008

Hearing Tr. at 39:16-18.)

**II.     Comcast Should Be Awarded Its Fees and Costs for Responding to AT&T's Motion to Compel.**

Having conceded it needed no discovery in support of its PI Motion, AT&T nevertheless

issued document requests without leave of court that sought highly sensitive competitive

information.  Even though the Court has already recognized that such information need not be

produced, AT&T moved to compel the purportedly unnecessary discovery.  In so doing, AT&T

revealed that it seeks little more than to harass Comcast and create an inappropriate competitive

advantage by inventing the possibility that Comcast would be required to turn over its future

marketing strategies to an aggressive competitor.  AT&T's bad faith here is compounded by its

insistence on pressing this manufactured discovery demand despite being told that there were no

responsive documents to be produced whatever the parties' disagreement over the relevance of

such information.  As such, AT&T's motion was not only unjustified, but an abuse of the

discovery process and it should therefore be denied.  Under Federal Rule of Civil Procedure

37(a)(5)(b), Comcast is entitled to its reasonable expenses, including attorneys' fees, in opposing

the motion.  *See Rickels v. SouthBend*, 33 F.3d 785, 786-87 (7th Cir. 1994) (affirming award of

fees under Rule 37 against party who sought irrelevant information causing subject of discovery

to have to seek protective order);  *United States v. Lake County Bd. of Commissioners*, No. 2:04

CV 415, 2006 WL 978882, *3-4 (N.D. Ind. April 7, 2006) (imposing sanction of fees and costs

against movant on denied motion to compel for "baseless attempts to seek irrelevant

information").

## **CONCLUSION**

For all of the foregoing reasons, Comcast respectfully asks the Court to deny AT&T's

motion to compel response to Document Request No. 2, and award Comcast its reasonable

expenses and attorneys' fees in opposing AT&T's motion.


Dated: April 27, 2008


LOEB & LOEB LLP
By:    s/ Douglas N. Masters
    Douglas N. Masters
    Thomas P. Jirgal
    Julie P. Samuels
    321 N. Clark Street, Suite 230 0
    Chicago, Illinois  60610
    (312) 464-3100

*Attorneys for Defendants and Counterclaimants*
*Comcast of Illinois III, Inc., Comcast*
*Corporation, Comcast Cable Holdings LLC,*
*and Comcast of Chicago, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April, 2008, a copy of the foregoing Comcast Opposition to AT&T's Motion to Compel Response to Document Request No. 2 was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Brian L. Crowe, Esq.
James D. Wilson, Esq.
John F. Kennedy, Esq.
Lynn A. Ellenberger, Esq.
Shefsky & Froelich Ltd.
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601

A copy was sent via First Class Mail and electronic email to:

Christopher A. Cole
Manatt Phelps & Phillips LLP
700 12th Street, NW
Suite 1100
Washington, DC 20005

LOEB & LOEB LLP

By:    __s/ Julie Samuels_____
Douglas N. Masters
Thomas P. Jirgal
Julie P. Samuels
321 North Clark Street, Suite 2300
Chicago, Illinois 60610
Telephone: (312) 464-3100
Fax: (312) 464-3111

Attorneys for Comcast of Illinois III, Inc., Comcast Corporation, Comcast Holdings LLC, and Comcast of Chicago, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| COMCAST OF ILLINOIS III, INC; COMCAST CORPORATION; COMCAST CABLE HOLDINGS LLC; and COMCAST OF CHICAGO, INC., | ) ) ) ) ) | Case No.: 08 CV 1680 Honorable Elaine E. Bucklo |
| Defendants. | ) ) ) | Magistrate Judge Martin C. Ashman |
| COMCAST OF ILLINOIS III, INC; COMCAST CORPORATION; COMCAST CABLE HOLDINGS LLC; and COMCAST OF CHICAGO, INC., | ) ) ) ) ) | |
| Counterclaimants, | ) ) | |
| v. | ) ) | |
| ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS, | ) ) ) | |
| Counterdefendant, | ) ) | |
| and AT&T, INC., | ) ) | |
| Third-party Defendant. | ) ) | |

## DECLARATION OF JEFFREY E. SMITH

I, Jeffrey E. Smith, declare as follows:

1.    I am Vice President and Deputy General Counsel of Comcast Cable

Communications Management LLC.  I am responsible for legal services and approval of the

advertising at issue in this action.

2.      Prior to the hearing on April 17, 2008, Comcast determined not to run any of the advertisements referenced in AT&T's amended complaint in this matter (the "Amended Complaint") prior to the hearing set for May 13, 2008.

3.      Subsequent to the hearing on April 17, 2008, Comcast determined not to run any advertisements similarly depicting VRAD's prior to the hearing set for May 13, 2008.

4.      AT&T has insisted that Comcast also agree (i) not to run any advertising in which Comcast stated that AT&T's U-Verse service permitted only one HD channel to be viewed in a home at any given time, claiming that an HD program could be taped or stored on a DVR in such a way to permit other TV's viewership of HD programming, and (ii) upon restrictions on other legitimate advertising claims.

5.      The only advertisements having been aired or distributed to the public that depict, or make claims related to, VRAD's in the manner that is the subject of the Amended Complaint are those complained of by AT&T in this action.  An additional such television advertisement was created, but prior to any public airing, Comcast determined not to use that advertisement.

6.      As a result of discussions with counsel for AT&T, I have conferred with my outside counsel concerning the form in which the complained of advertisement might be modified and then disseminated to the public.  These discussions and related correspondence and notes have been exchanged only among counsel, and not with any marketing or other business personnel of Comcast.

I declare under penalty of perjury that the above is true and correct.
Executed on the 28th day of April 2008, in Philadelphia, PA.

_____
Jeffrey E. Smith