# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS BELL TELEPHONE d/b/a AT&T ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CV 1680 |
| v. | ) ) | Honorable Elaine E. Bucklo |
| COMCAST OF ILLINOIS III, INC., COMCAST CORPORATION, COMCAST CABLE HOLDINGS LLC, and COMCAST OF CHICAGO, INC. | ) ) ) ) ) ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) ) | |
| COMCAST OF ILLINOIS III, INC; COMCAST CORPORATION; COMCAST CABLE HOLDINGS LLC; and COMCAST OF CHICAGO, INC., | ) ) ) ) ) | |
| Counterclaimants, | ) ) | |
| v. | ) ) ) | |
| ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS, | ) ) ) | |
| Counterdefendant, | ) ) | |
| and AT&T, INC., | ) ) ) | |
| Third-party Defendant. | ) | |

## COMCAST'S ANSWER TO AMENDED COMPLAINT

Defendants Comcast of Illinois III, Inc., Comcast Corporation, Comcast Cable Holdings LLC, and Comcast of Chicago, Inc. (collectively, "Comcast") hereby answer the complaint of Illinois Bell Telephone, d/b/a AT&T Illinois ("AT&T Illinois") as follows:

1.     This action is brought under the false advertising provisions of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.,* and the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.* Through this Complaint, AT&T Illinois seeks to enjoin Comcast's false, deceptive, and disparaging advertising campaign against AT&T Illinois and seeks monetary and other relief.

**ANSWER**:  Comcast admits that AT&T Illinois brings this action under the false advertising provisions of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.,* and the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.*  Comcast is without knowledge or information sufficient to form a belief as to AT&T's allegations with respect to the relief it seeks, and therefore denies those allegations.  Comcast denies that its advertising campaign is false, deceptive, and disparaging.

2.     Comcast is currently running an advertising campaign in the Chicago area attacking AT&T Illinois and its television service offerings. Comcast is using verbal and pictorial statements to falsely claim that, if a customer purchases AT&T Illinois' television service offerings, AT&T Illinois will install "Giant utility boxes" or video- ready access devices ("VRAD") on the customer's property. There is absolutely no correlation between a customer's selection of AT&T's television service offerings and the placement of utility boxes or VRADs. Comcast also makes inaccurate and false side-by-side comparisons between AT&T and Comcast's television services including that AT&T Illinois customers can only "view **one** HD channel at a time" (emphasis in original) whereas Comcast consumers can "view unlimited HD channels at a time;" and, unlike Comcast, AT&T Illinois offers "no local programming."

These claims, along with various other representations made by Comcast, are patently false, harmful to AT&T and the public, and should be enjoined by this Court.

**ANSWER**:  Comcast admits that it truthfully and accurately communicates to the public through various forms of advertisements the differences between Comcast's cable services and AT&T Illinois' cable services.  Comcast denies the remaining allegations of paragraph 2.

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and the supplemental jurisdiction of § 1367(a).

**ANSWER**:  Comcast admits that this Court has jurisdiction under 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

4.     Venue is proper in this judicial district pursuant to 28 U.S C. § 1391(b) because Comcast does business in this district and has engaged and is engaging in statutory violations and activities that are causing substantial injury to AT&T Illinois in this district.

**ANSWER**: Comcast admits that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)  because it does business in this district.  Comcast denies the remaining allegations of paragraph 4.

5.     Plaintiff, AT&T Illinois, is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Chicago, Illinois. AT&T Illinois provides communications, Internet access, and television services within Illinois.

**ANSWER**:  Comcast admits that AT&T Illinois is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Chicago, Illinois.

3

Comcast is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 5, and therefore denies these allegations.

6.      On information and belief, Comcast of Illinois III, Inc., is an Illinois corporation with its principal place of business located at 1585 Waukegan Road, Waukegan, Illinois 60085 and a Registered Agent Office located at 208 South LaSalle Street, Chicago, Illinois 60604.

**ANSWER**:  Comcast denies the allegations of paragraph 6, and states instead that Comcast of Illinois III, Inc. is an Illinois corporation with a principal place of business at 1500 McConnor Parkway, Schaumburg, Illinois 60173.

7.      On information and belief, Comcast Corporation is a Pennsylvania corporation with a principal place of business located at 1500 Market Street, Philadelphia, Pennsylvania 19102 and with a Registered Agent Office located at 100 Pine Street, Suite 325, Harrisburg, Pennsylvania 17107.

**ANSWER**: Comcast denies the allegations of paragraph 7, and states instead that Comcast Corporation is a Pennsylvania corporation with a principal place of business at One Comcast Center, Philadelphia, Pennsylvania 19103 with a Registered Office located at 208 South LaSalle Street, Chicago, Illinois 60604.

8.      On information and belief, Comcast Cable Holdings LLC is a Delaware limited liability company with a principal place of business located at 1500 Market Street, Philadelphia, Pennsylvania 19102, with a Registered Agent Office located at 208 South LaSalle Street, Chicago, Illinois 60604, and with branch offices throughout Illinois, including in this District.

4

**ANSWER**:  Comcast denies the allegations of paragraph 8, and states instead that Comcast Cable Holdings LLC is a Delaware limited liability company with a principal place of business located at One Comcast Center, Philadelphia, Pennsylvania 19103, with a Registered Office located at 208 South LaSalle Street, Chicago, Illinois 60604, and with branch offices throughout Illinois, including in this District..

9.     On information and belief, Comcast of Chicago, Inc., is an Illinois corporation with its principal place of business located at 1500 Market Street, Philadelphia, Pennsylvania 19102 and with a Registered Agent Office located at 208 South LaSalle Street, Chicago, Illinois 60604.

**ANSWER**:  Comcast denies the allegations of paragraph 9, and states instead that Comcast of Chicago, Inc. is an Illinois corporation with a principal place of business located at 1500 McConnor Parkway, Schaumburg, Illinois 60173

10.     Collectively, the Comcast entities advertise and provide cable television, voice, and Internet services throughout Illinois and in at least 38 other states and the District of Columbia.

**ANSWER:**  Comcast denies the allegations of paragraph 10 with respect to Comcast of Illinois III, Inc., Comcast Cable Holdings LLC, and Comcast of Chicago, Inc.  Comcast admits the allegations of paragraph 10 with respect to subsidiaries of Comcast Corporation.

11.     Comcast is in direct competition with AT&T Illinois for subscription television service in the Chicago area.

**ANSWER**:  Comcast admits that it competes with AT&T Illinois for subscription

television service in the Chicago area.  Comcast denies the remaining allegations of paragraph

11.

12.    AT&T has offered a satellite subscription television service option in Illinois

through its marketing relationship with Echostar Satellite Corp. (n/k/a DISH Network Service)

("Dish Network") since on or about March 4, 2004. The service, branded as AT&T | DISH

Network service, is a co-branded service satellite television service provided by Dish Network

that directly competes with Comcast's subscription television service offerings.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 12, and therefore denies those allegations.

13.    In January 2008, AT&T launched another subscription television service to

compete against Comcast in certain areas of the Chicago area—AT&T U-verse[TM] TV ("U-verse

TV"). U-verse TV is AT&T's unique Internet Protocol ("IP")-based video product. The U-verse

TV product is also sometimes sold with accompanying Internet access (this combination of

television and Internet access is referred to hereinafter generally as "U-verse"). U-verse TV

allows the transmission of 100% digital television, including high-definition quality television,

over consumers' existing telephone-access lines.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as

to the truth of the allegations of paragraph 13, and therefore denies those allegations.

14.    AT&T Illinois anticipates that, as the U-verse network continues to be installed and made available to Illinois consumers, U-verse will become popular with consumers and will allow AT&T Illinois to expand and retain customers for not only television services, but also for Internet access and voice communication services.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14, and therefore denies those allegations.

15.    AT&T Illinois' U-verse TV service depends on a network of fiber-optic cables. Some cables originate from an AT&T central office and terminate at VRADs that connect AT&T Illinois' fiber network and video capabilities to AT&T Illinois' wiring in the neighborhoods. Effectively, VRADS allow for the delivery of U-verse services from the AT&T fiber network to the homes of individual consumers. Depending on its size, a single VRAD can serve up to 750 homes.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15, and therefore denies these allegations.

16.    VRADs are located within about 300 feet of, and are connected to, existing AT&T Illinois cross-connection cabinets. Cross-connection cabinets house the connection between the traditional, copper communications facilities that travel to each consumer's home and the larger AT&T network. These cross-connection cabinets are located within public rights-of-way or in easements. They have been located throughout Illinois' neighborhoods for many decades and allow for the provision of traditional telephone service.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16, and therefore denies these allegations.

17.     VRADs are also placed in the public rights-of-way or easements. AT&T will not place a VRAD on a homeowner's private property unless necessary and a homeowner has agreed to this location. In many cases, Comcast's own facility boxes, as well as other utility facilities, are located in these same locations.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17, and therefore denies these allegations, except admits that VRADs are sometimes placed in the public rights-of-way or easements and that Comcast's equipment is sometimes placed in public rights-of-way or easements.

18.     AT&T Illinois submits permit applications to local governments for each proposed VRAD located in public rights-of-way. As part of the permit review process, AT&T Illinois offers to visit each such proposed location with local government officials to determine if the proposed location is suitable.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18, and therefore denies these allegations.

19.     Each VRAD can serve from 150-750 individual homes, which can be located up to several thousand feet away from the VRAD. Purchasing AT&T television service offerings does not result in a VRAD or any size utility box being placed in a customer's yard or in a

neighborhood. VRADs are installed in neighborhoods before sales of U-verse TV are made to homes in those neighborhoods. VRADs are not used to provide the DISH Network Service.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19, and therefore denies these allegations.

20.     VRADs are ***not*** installed such that they block homes.

**ANSWER**: Comcast denies the allegations of paragraph 20.

21.     Comcast has disseminated at least four advertisements in which it falsely and disparagingly attacks AT&T Illinois and its television service offerings.

**ANSWER**:  Comcast denies the allegations of paragraph 21.

22.     A newspaper advertisement that recently appeared in at least two Chicago- area newspapers shows what appears to be an AT&T-VRAD positioned in front of a home. The photograph depicts the cabinet in a manner so as to accentuate its size and proximity to the home, and bears the headline claim: "**AT&T not only blocks your house, it blocks your HD options**" (emphasis in original). Below that, the ad claims that "What you get with AT&T" includes "Giant utility boxes." A true and correct copy of the advertisement that ran in *The Herald News* on March 13, 2008 is attached hereto as Exhibit A. A true and correct copy of the advertisement that ran in *The Daily Southtown Star* on March 20, 2008, upon information and belief, is attached hereto as Exhibit B.

**ANSWER**:  Comcast denies the allegations of paragraphs 22, except admits that a copy of an advertisement that is no longer in circulation is attached to the Amended Complaint as Exhibit B.  Comcast respectfully refers the Court to the contents of that advertisement.

23.    AT&T asked Comcast to provide the location of the purported home and VRAD so that AT&T could independently verify the location of the purported VRAD and determine if the photograph in the advertisement was altered in any way. Comcast refused to provide AT&T with this information. It is clear, however, that the advertisement in question has been altered in some respect as the VRAD depicted includes the nomenclature "HDBLOKR" on its façade. This nomenclature is false, as AT&T has no VRAD that bears the letters "HDBLOKR."

**ANSWER**: Comcast is without knowledge or information sufficient to form a belief as to whether AT&T has any VRADs that bear the letters "HDBLOCKER", and therefore denies those allegations.  Comcast denies the remaining allegations of paragraphs 23, except Comcast admits that certain non-material changes were made to the VRAD depicted in the subject advertisement.

24.    A television/video advertisement ad for Comcast entitled "No Curb Appeal," which has appeared in interstate commerce, including on the Internet, depicts an unhappy homeowner peering through his front curtains. He says, "We got AT&T, and look what we got. I thought technology was supposed to get smaller, not bigger. Look at it, taunting us." The man starts crying. The scene then cuts to the front yard, where a character dressed in a large AT&T VRAD costume is dancing in the front yard, roasting marshmallows over an open fire. The voiceover then states: "Once you see AT&T, you'll want it to go away. A network with less

10

HD, slower internet, and a big box. What else did you expect from the big old phone company?" The scene closes with a dog urinating on the character in the VRAD costume. (A copy of this video is included on the compact disk that is attached hereto as Exhibit C.)

**ANSWER**:  Comcast denies the allegations of paragraph 24, except admits that a copy of a videotape containing an advertisement that is no longer being aired is attached to the Amended Complaint as Exhibit C.  Comcast respectfully refers the Court to the contents of that advertisement.


25.    A third television/video advertisement entitled "Line-Up," which also appeared in interstate commerce, including on television and the Internet, depicts a criminal line-up. A young woman is being asked to review the line-up, and she scans the crowd before exclaiming "That's him . . . There's no mistaking it. That is the big, ugly thing that's been limiting my HD." The camera pans to a costumed person dressed in an AT&T VRAD costume, standing in the line-up. Judging from the height demarcations on the back wall, the VRAD appears to be nearly seven feet tall and almost a foot taller than the height of the next tallest actor. The voiceover then says: "AT&T. Offering so little HD, it's practically criminal." The detective then says, "Don't worry, ma'am. As big and slow as it is, AT&T will never get away with it."  The voiceover closes by stating, "Stick with Comcast, the proven advanced technology." (A copy of this video is included on the compact disk that is attached hereto as Exhibit C.)

**ANSWER**:  Comcast denies the allegations contained in paragraph 25, except admits that a copy of a videotape containing an advertisement that is no longer being aired is attached to the Amended Complaint as Exhibit C.  Comcast respectfully refers the Court to the contents of that advertisement.

26. The fourth video advertisement for Comcast (called "Split-Screen") also appeared in interstate commerce, including on television. The ad depicts a split-screen comparison of the features and benefits between AT&T and Comcast's high-definition television services. On information and belief, this commercial has aired on at least MSNBC in the Chicago area. (A true and correct copy of a storyboard of this ad is attached hereto as Exhibit D, and a video of the ad is included as Exhibit C).

**ANSWER**:  Comcast denies the allegations of paragraph 26, except admits that a copy of a videotape containing an advertisement that is no longer being aired is attached to the Amended Complaint as Exhibit C and a copy of a storyboard of the ad is attached as Exhibit D.  Comcast respectfully refers the Court to the contents of that advertisement.

27. The commercial begins by showing two homes. The home on the left is labeled "AT&T" and the home on the right is labeled "Comcast." A voiceover says "Two homes. One connected with narrowband copper wire." A picture of a phone wire appears on the AT&T home, with text simultaneously appearing above the home that reads, "**Narrowband** copper wire" (emphasis in original). The voice over continues ". . . the other with powerful broadband cable." A picture of a coaxial cable appears on the Comcast home with text simultaneously appearing above the home that reads, "**Powerful** broadband cable." (emphasis in original). The voiceover then states, "one limits a home to view only one HD channel at a time" as text over the AT&T home reads "View **one** HD channel at a time," and then continues to say that "the other can watch . . . unlimited HD channels" as text above the Comcast home appears that reads "View **unlimited** HD channels at a time" (emphasis in original). The voiceover goes on to

state that "one home has limited On Demand content . . . with no local programming" as text appears above the AT&T home that reads "**No** local programming" (emphasis in original). The voice over then states, "The other has tons of On Demand choices . . . most of which are free and include local programming" as text above the Comcast house reads "**Tons** of On Demand choices most are FREE Includes local programming." (emphasis in original). The voiceover then adds, "Oh yeah the other big difference, one home may get . . some free landscaping in their yard," as a large VRAD utility box simultaneously appears in front of the AT&T house with a loud thud.

     **<u>ANSWER</u>**:  Comcast denies the allegations of paragraph 27, and respectfully refers the Court to the contents of the subject advertisement.


     28.     The Comcast ads described in paragraphs 21-26 above are literally false and misleading in many respects.

     **<u>ANSWER</u>**:  Comcast denies that any of the subject ads are literally false or misleading.


     29.     The newspaper ads (Exhibits A and B) are literally false because they represent to consumers that AT&T "Giant utility boxes" will "block" the homes of consumers who purchase AT&T Illinois' television service offerings. The photograph accompanying the ads reinforces the written claim that the "utility boxes" will "block" the homes of AT&T Illinois' television service subscribers.

     **<u>ANSWER</u>**:  Comcast denies the allegations of paragraph 29.

30.     In reality, the "Giant utility box[]" depicted in the newspaper advertisement is a VRAD. A single VRAD can serve up to 750 homes and be located up to several thousand feet away from the homes that it serves. VRADs are located in public rights-of-way or easements and within about 300 feet (and often closer) of existing AT&T Illinois' facilities. There is no truth to the pictorial or written claim that VRADs are installed in such a manner as to "block" or visually obstruct the homes of the persons who subscribe to AT&T Illinois' television service offerings. There is also no truth to the pictorial or written claim that a customer of AT&T Illinois' television service offerings will have a "Giant utility box" or any utility box in their yard or their neighborhood as a result of selecting AT&T Illinois' subscription television service.

**ANSWER**:  Comcast admits that the "Giant utility box[]" depicted in the newspaper advertisement is a VRAD.  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences of paragraph 30, and therefore denies those allegations.  Comcast denies the allegations contained in the fourth and fifth sentences of paragraph 30.

31.     Comcast knows that the advertisement is false and misleading as Comcast's facility boxes, which are dispersed throughout neighborhoods in order to provide Comcast's cable television, Internet, and voice service, are also placed in public rights-of-way or private easements.

**ANSWER**: Comcast denies the allegations of paragraph 31.

32.     The newspaper ad also makes the patently false claim that AT&T Illinois "blocks" consumers' HD television options. AT&T Illinois does not block access to HD television options

--it affirmatively provides such access. AT&T Illinois' U-verse TV service provides more HD channels than does Comcast in the Chicago market. AT&T Illinois also offers DISH Network Service to its customers, through which they can also receive more HD channels than are provided by Comcast.

**ANSWER**:  Comcast denies that the subject advertisement is makes any false claims. Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 32, and therefore denies those allegations.  Comcast denies the allegations contained in the third and fourth sentences of paragraph 32.

33.    Comcast's Split-Screen television commercial (Exhibits C and D) is literally false in many respects:

(a)    It falsely represents to consumers that, if they purchase an AT&T Illinois' television service offering, AT&T Illinois will install or will likely install a VRAD or any utility box on their front lawn. VRADs are installed in neighborhoods before sales of U-verse TV are even made to homes in those neighborhoods. VRADs are placed in the public rights-of-way or easements. AT&T will not place a VRAD on a homeowner's private property unless necessary and a homeowner has agreed to this location.

(b)    It falsely claims that that AT&T Illinois offers customers only "**one** HD channel at a time" whereas, Comcast customers can view "**unlimited** HD channels at a time." On the contrary, AT&T Illinois' DISH Network offering provides customers with the ability to view multiple live streams of HD television, and AT&T Illinois' U-verse TV service provides

consumers with one "live" HD stream and the ability to simultaneously view pre-recorded HD content.

        (c)    It falsely claims that, unlike Comcast, AT&T Illinois offers "no local programming." On the contrary, AT&T Illinois offers U-verse customers access to local affiliate broadcasts, including those of CBS (WBBM-2 and WBBM-HD2), NBC (WMAQ-5 and WMAQ-HD-5), ABC (WLS-7 and WLS-HD-7), Fox (WFLD32 and WFLD-HD-32), Independents (WCIU-26, WCIU-HD-26 and WJYS-62), ION (WCPX-38), UNI (WGBO-66), WGN Superstation and WGN HD; and the CW (WGN9 and WGN-HD-9). AT&T Illinois offers a similar local programming through its Dish Network services; and

        (d)    It falsely characterizes AT&T Illinois' service as "narrowband," when in fact the service provides broadband Internet access service.

    **ANSWER**:  Comcast denies that the "Split-Screen" commercial makes any literally false claims.

    (a)    Comcast denies that the "Split-Screen" commercial makes any false claims. Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second, third and fourth sentences of paragraph 33(a), and therefore denies those allegations.

    (b)    Comcast denies that the "Split-Screen" commercial makes any false claims. Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 33(b), and therefore denies those allegations.

    (c)    Comcast denies that the "Split-Screen" commercial makes any false claims. Comcast is without knowledge or information sufficient to form a belief as to the truth of the

allegations contained in the second sentence of paragraph 33(c), and therefore denies those allegations.

34.     The "No Curb Appeal" ad falsely depicts a VRAD in the front yard of a home of an AT&T Illinois customer, "taunting" the obviously distraught homeowner and conveying the literal claim that subscribing to AT&T Illinois' television service offerings requires the placement of a utility box on the customer's property. The advertisement also falsely claims that AT&T Illinois' television service offerings provide "less HD" channels.

**ANSWER**:  Comcast denies the allegations of paragraph 34.


35.     The "Line-Up" ad makes false and disparaging factual assertions that AT&T Illinois' VRAD cabinet "limits" HD for consumers, and that it offers "so little HD, it's practically criminal." The Line-Up ad also falsely links the VRAD to a consumer's choice to subscribe to television services offered by AT&T Illinois.

**ANSWER**:  Comcast denies the allegations of paragraph 35.


36.     Comcast's advertising is plainly intended by Comcast to harm AT&T Illinois by disrupting its launch of U-verse. Both video ads reveal the title given to the ad campaign by Comcast's advertising agency, Brogan & Partners, was "ANTI-AT&T LAUNCH."

**ANSWER**:  Comcast denies that it has caused, or has intended to cause, any unlawful harm to AT&T Illinois related to its launch of U-verse.  Comcast admits the allegations contained in the second sentence of paragraph 36.

37.    The dissemination of Comcast's false claims harms AT&T Illinois and misleads consumers. Consumers are falsely led to believe by Comcast's claims that (a) the purchase of AT&T Illinois' television service offerings will result in the installation of a utility box on their front yard, (b) the utility box will "block" their homes (c) that AT&T Illinois limits, blocks or restricts HD; (d) AT&T Illinois offers fewer HD channels than Comcast; (e) AT&T Illinois only allows its customers to view HD on one television at a time, (f) Comcast customers can view unlimited HD channels at a time; (g) AT&T Illinois' services are provided over "narrowband" facilities; and (h) AT&T Illinois does not offer local programming. These types of derogatory, false claims threaten irreparable harm to AT&T Illinois' reputation and the reputation of its products.

**ANSWER**:  Comcast denies the allegations of paragraph 37.


38.    AT&T Illinois has invested substantial resources in the development of its network and its television service offerings. If consumers are falsely led to believe that these services are technologically inferior, and will require the installation of a hulking utility box on the property of every customer that purchases AT&T Illinois' television service offerings, it is likely that consumers will not choose them. Indeed, the ads encourage consumers to either switch to Comcast or affirmatively reject the AT&T Illinois' service offerings under false pretenses.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of paragraph 38, and therefore denies those allegations.  Comcast denies the allegations contained in the third sentence of paragraph 38.

39.    Comcast's false and disparaging claims threaten AT&T Illinois' ability to enter the television market with its own service offerings. Unless enjoined, Comcast's false claims will irreparably harm AT&T Illinois' good will and reputation as a provider of voice, television, and Internet services. AT&T Illinois is likely to succeed on its claims that Comcast has falsely advertised in violation of law.

**ANSWER**:  Comcast denies the allegations contained in paragraph 39.

40.    Comcast's ads also harm the public. Many potential customers of AT&T Illinois' television service offerings would likely welcome an alternative to Comcast's dominance in the subscription television market. Many potential customers are not likely to have a deep understanding of the underlying technology and infrastructure required for AT&T Illinois to deliver its U-verse TV service, or of the true facts of consumer choice among television providers. Comcast's ads feed consumers incorrect information in an effort to get them to reject AT&T Illinois' subscription television offerings before they undertake a fair investigation of their options. Comcast thus harms competition through its false advertising.

**ANSWER**:  Comcast denies the allegations contained in paragraph 40, except Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the third sentence of paragraph 40, and therefore denies those allegations.

41.    AT&T Illinois complained to Comcast about the claims made in the newspaper ads and the "Curb Appeal" and "Line Up" video/television ads.

**ANSWER**:  Comcast admits that AT&T Illinois complained to Comcast about certain aspects of the newspaper ads, and the "Curb Appeal" and "Line Up" video/television ads.

42.     When resulting discussions between AT&T Illinois and Comcast failed to produce a resolution, AT&T Illinois filed its initial complaint on March 21, 2008. It did not serve the Complaint on Comcast in an effort to resolve the matter without further litigation.

**ANSWER**:  Comcast denies the allegations contained in the first sentence of paragraph 42, except admits that AT&T Illinois filed its initial complaint on March 21, 2008.  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42, and therefore denies those allegations.


43.     The filing of the Complaint triggered further discussions between the parties, which continued from March 21, and throughout the following week of March 24. These discussions led AT&T Illinois to then-believe that Comcast would voluntarily withdraw all of the challenged claims.

**ANSWER**:  Comcast denies the allegations contained in the first sentence of paragraph 43, except admits that the parties held discussions subsequent to the filing of AT&T's initial Complaint.  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 43, and therefore denies those allegations.


44.     On April 8, however, AT&T Illinois learned that the "Split-Screen" commercial had been aired on television. The Split-Screen ad contained even more egregious versions of the challenged claims, including some additional and entirely new false claims. As a consequence,

20

AT&T Illinois wrote a demand letter that same day. Comcast's failure to respond satisfactorily to that demand forced AT&T Illinois to prepare and serve the instant Amended Complaint.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of paragraph 44, and therefore denies those allegations.  Comcast denies the remaining allegations contained in paragraph 44.

## FIRST CAUSE OF ACTION

### (Lanham Act Violation, 15 U.S.C. § 1125)

45.     AT&T Illinois repeats and re-alleges each and every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

**ANSWER**:  Comcast repeats and each and every answer to AT&T Illinois's allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46.     Comcast sells its Internet, voice, and cable television services in interstate commerce and is engaging in an advertising campaign in connection with the marketing of these products.

**ANSWER**:  Comcast admits that various subsidiaries of Comcast Corporation sell Internet, voice, and cable television services in interstate commerce and are engaged in an advertising campaign in connection with the marketing of these products.

47.    A central false message of this advertising campaign is that ordering television service from AT&T Illinois will result in AT&T Illinois placing a utility box or VRAD on each subscriber's property or in their neighborhood. In some executions in Comcast's campaign, part of this central false message is the claim that AT&T Illinois' "Giant utility box[es]" block homes.

**ANSWER**:  Comcast denies that the subject advertisements contain any false claims, and therefore denies the allegations contained in paragraph 47.

48.    Comcast also makes other false claims including that: AT&T Illinois blocks HD; that AT&T Illinois offers fewer HD channels than Comcast; that AT&T Illinois only allows its customers to view HD content on one television at a time, while claiming that Comcast customers can view "unlimited" HD channels at a time. Comcast also falsely claims that AT&T Illinois does not offer local programming. AT&T Illinois requires placement of a "Giant utility box[]" on each subscriber's property in order to deliver television services.

**ANSWER**:  Comcast denies that the subject advertisements contain any false claims, and therefore denies the allegations contained in paragraph 48.

49.    These claims and others set forth above, made by Comcast about AT&T Illinois are false and misleading and misrepresent the nature, characteristics and qualities of AT&T Illinois' products.

**ANSWER**:  Comcast denies the allegations contained in paragraph 49.

50.    Upon information and belief, the claims are likely to deceive or confuse a substantial segment of the buying public. Moreover, the claims have influenced or are likely to influence the buying public's purchasing decisions.

**ANSWER**:  Comcast denies the allegations contained in the first sentence of paragraph 50.  Comcast is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph 50, and therefore denies those allegations.

51.    This deceptive conduct by Comcast is and has been deliberate and has injured and continues to injure AT&T Illinois and consumers.

**ANSWER**:  Comcast denies the allegations contained in paragraph 51.

52.    Comcast knows or should know that the claims it is making about AT&T Illinois are false and misleading.

**ANSWER**:  Comcast denies the allegations contained in paragraph 52.

53.    Comcast's advertising violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Comcast's misconduct in this regard is willful and egregious.

**ANSWER**:  Comcast denies the allegations contained in paragraph 53.

54.    AT&T Illinois has been and continues to be damaged by Comcast's false advertising attacking AT&T Illinois, including by direct diversion of sales from AT&T Illinois to

Comcast and the lessening of goodwill which AT&T Illinois' products enjoy among the buying

public. AT&T has no adequate remedy at law to redress these injuries.

**ANSWER**:  Comcast is without knowledge or information sufficient to form a belief as

to the truth of the allegations contained in paragraph 54, and therefore denies these allegations.

Comcast denies that any of the subject advertisements contain any false claims.


## SECOND CAUSE OF ACTION

### (Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 et seq.)

55.    AT&T Illinois repeats and re-alleges each and every allegation contained in

paragraphs 1 through 54 as if fully set forth herein.

**ANSWER**:  Comcast repeats each and every answer to AT&T Illinois's allegations

contained in paragraphs 1 through 54 as if fully set forth herein.


56.    Comcast's false and misleading claims in its advertising were and are being

disseminated in Illinois.

**ANSWER**:  Comcast denies that any of the subject advertisements contain any false or

misleading claims.  Comcast admits that the subject advertisements were previously

disseminated in Illinois, and denies that the subject advertisements are presently being

disseminated in Illinois.


57.    Comcast's false and misleading representations of fact have disparaged AT&T

Illinois's goods, services and business.

**ANSWER**:  Comcast denies that any of the subject advertisements contain false or misleading claims, and therefore denies the allegations contained in paragraph 57.


58.     Comcast made these false and misleading representations of fact in the course of its business.

**ANSWER**:  Comcast denies that any of the subject advertisements contain false or misleading claims, and therefore denies the allegations contained in paragraph 58.


59.     Comcast's false and misleading claims constitute unfair trade practices in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 et seq.

**ANSWER**:  Comcast denies the allegations contained in paragraph 59.


60.     AT&T Illinois has been and will continue to be damaged by Comcast's false and misleading representations in an amount to be determined at trial.

**ANSWER**:  Comcast denies the allegations contained in paragraph 60.


61.     On information and belief, Comcast's conduct is willful, deliberate, intentional and in bad faith.

**ANSWER**:  Comcast denies the allegations contained in paragraph 61.

62.    By reason of the foregoing acts, Comcast has caused, and unless enjoined will continue to cause, irreparable harm to AT&T Illinois. AT&T Illinois has no adequate remedy at law to redress these injuries.

**ANSWER**:  Comcast denies the allegations contained in paragraph 62.

## THIRD CAUSE OF ACTION

### (Illinois Consumer Fraud and Deceptive Business Practices Act,

### 815 ILCS 505/1 *et seq.)*

63.    AT&T repeats and re-alleges each and every allegation contained in paragraphs 1 through 62 as if fully set forth herein.

**ANSWER**:  Comcast repeats each and every asnwer to AT&T Illinois's allegations contained in paragraphs 1 through 62 as if fully set forth herein.

64.    Comcast has engaged in unfair and deceptive conduct, including the dissemination of false and misleading advertising, and continues to do so. Among other things, this advertising misrepresented material characteristics of AT&T Illinois' television service offerings, and falsely and disparagingly attacked AT&T Illinois and its products.

**ANSWER**:  Comcast denies the allegations contained in paragraph 64.

65.    Comcast has disseminated false and misleading claims in its advertising in trade and commerce in Illinois, and continues to do so.

**ANSWER**:  Comcast denies the allegations contained in paragraph 65, and states that it is no longer disseminating any of the subject advertisements.

66.      Comcast knew or should have known that its claims were and are false and misleading. Moreover, Comcast made and continues to make these claims despite awareness of their falsity. Comcast thus acts with reckless indifference to the rights of others and/or in intentional and wanton violation of those rights.

**ANSWER**:  Comcast denies the allegations contained in paragraph 66, and states that it is no longer disseminating any of the subject advertisements.

67.      Comcast intended for consumers to rely on its false advertisements. Among other things, Comcast intended to induce consumers to purchase Comcast's services and/or to refrain from purchasing services offered by AT&T Illinois.

**ANSWER**:  Comcast denies that any of the subject advertisements contain any false claims, and therefore denies the allegations contained in the first sentence of paragraph 67. Comcast denies the allegations contained in the second sentence of paragraph 67.

68.      Comcast's conduct implicates consumer protection concerns by, among other things, improperly and unlawfully inhibiting competition in the market for services marketed by Comcast and AT&T Illinois.

**ANSWER**:  Comcast denies the allegations contained in paragraph 68.

69.     As set forth above, Comcast's false advertisements have caused and are causing substantial injury and damage to AT&T Illinois.

**ANSWER**:  Comcast denies the allegations contained in paragraph 69.

70.     AT&T Illinois's damages and injuries have been, and are likely to be, proximately caused by Comcast's false advertising and deceptive conduct.

**ANSWER**:  Comcast denies the allegations contained in paragraph 70.

71.     Comcast's false and misleading claims constitute unlawful consumer fraud and deceptive business practices and unlawful false advertising.

**ANSWER**:  Comcast denies the allegations contained in paragraph 71.

72.     Comcast's conduct with regard to its advertising constitutes a violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

**ANSWER**:  Comcast denies the allegations contained in paragraph 72.

## AFFIRMATIVE DEFENSES

### Unclean Hands

AT&T Illinois has acted in bad faith and in callous disregard for Comcast's proprietary rights in deploying the U-verse service that is the subject of Comcast's advertisements.  AT&T Illinois's installation activities have cause repeated and prolonged disruptions to the telephone and Internet services Comcast provides to its customers, inflicting harm to Comcast's consumer goodwill.  AT&T Illinois has been aware of the possibility of these disruptions for over a year, and Comcast has informed AT&T of at least 40 such service disruptions since February 2008.

AT&T Illinois has nevertheless refused to cooperate with Comcast to avoid the service disruptions caused by their U-verse installation activities.

Date:   May 5, 2008                          Respectfully submitted,
                                             LOEB & LOEB LLP


                            By:      __s/ Douglas N. Masters_____
                                     Douglas N. Masters
                                     Thomas P. Jirgal
                                     Julie P. Samuels
                                     321 North Clark Street, Suite 2300
                                     Chicago, Illinois 60610
                                     Telephone:  (312) 464-3100
                                     Fax:  (312) 464-3111

                            Attorneys for Comcast of Illinois III, Inc., Comcast
                            Corporation, Comcast Holdings LLC, and Comcast
                            Chicago, Inc.

## Certificate of Service

I hereby certify that on this 5th day of May, 2008, a copy of the foregoing Comcast's Answer to Amended Complaint was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Brian L. Crowe, Esq.                    Michael J. Gill, Esq.
James D. Wilson, Esq.                  Ranjit J. Hakim, Esq.
John F. Kennedy, Esq.                  Mayer Brown LLP
Lynn A. Ellenberger, Esq.            71 S. Wacker Drive
Shefsky & Froelich Ltd.               Chicago, IL  60606
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601


LOEB & LOEB LLP


By:      __s/ Julie Samuels_____
          Douglas N. Masters
          Thomas P. Jirgal
          Julie P. Samuels
          321 North Clark Street, Suite 2300
          Chicago, Illinois 60610
          Telephone:  (312) 464-3100
          Fax:  (312) 464-3111

Attorneys for Comcast of Illinois III, Inc., Comcast Corporation, Comcast Holdings LLC, and Comcast of Chicago, Inc.