**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

```
ILLINOIS BELL TELEPHONE, d/b/a    )
AT&T ILLINOIS,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    No. 08 C 1680
                                  )
COMCAST OF ILLINOIS III, INC;     )
COMCAST CABLE HOLDINGS LLC, and   )
COMCAST OF CHICAGO, INC.,         )
                                  )
          Defendants.             )
------------------------------    )
COMCAST OF ILLINOIS III, INC;     )
COMCAST CABLE HOLDINGS LLC, and   )
COMCAST OF CHICAGO, INC.,         )
                                  )
          Counterclaimants,       )
     v.                           )
                                  )
ILLINOIS BELL TELEPHONE, d/b/a    )
AT&T ILLINOIS,                    )
                                  )
          Counterdefendant,       )
and                               )
                                  )
AT&T, INC.,                       )
                                  )
          Third-party Defendant.  )
```

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before me is a motion by Illinois Bell Telephone, d/b/a/ AT&T Illinois ("Bell"),[1] to dismiss counts I-IV of the counterclaims of Comcast of Illinois III, Inc., Comcast Corporation, Comcast Cable

_____

    [1]    Although both parties typically refer to plaintiff/counterdefendant Illinois Bell as "AT&T" in their briefs, I refer to that party as "Bell" to avoid confusion with third-party defendant AT&T, Inc.

Holdings LLC, and Comcast of Chicago, Inc., (collectively, "Comcast"). For the reasons discussed below, the motion is denied.

I.

Comcast is the dominant provider of subscription television services to Illinois residents. Bell began competing with Comcast for Illinois television customers in 2004 with subscription satellite television services known as DISH Network. In January of this year, Bell introduced subscription IP-based wireline television services known as U-verse TV that also compete with services Comcast offers to Illinois customers.

This action commenced with Bell's complaint and motion for a preliminary injunction seeking to stop Comcast from disseminating allegedly false advertisements attacking Bell's television services. In short, Bell complains that Comcast's advertisements falsely suggest that customers who choose Bell's services will have their homes "blocked" by giant utility boxes, and that those boxes--or Bell's services generally--also "block" the subscriber's access to high definition (HD) television. Bell seeks injunctive and monetary relief under the Lanham Act, 15 U.S.C. § 1125(a) and Illinois statutory law.

At the preliminary injunction hearing, Comcast represented that the ads Bell complained about had either been "pulled" or had run their course and would not reappear in the same form. Comcast

defended the claims in the ads as truthful, however, and would not commit to refraining from making similar claims in future ads.

As the parties briefed and prepared to present evidence on these issues, Comcast filed a counterclaim and sought a preliminary injunction of its own to stop Bell from interfering with Comcast's provision of cable television services to its customers. Comcast alleges that during the process of installing its U-verse services, Bell has repeatedly disrupted Comcast's services, and that Bell has failed to take appropriate actions to curtail the problem. Comcast alleges a violation of the Cable Communications Policy Act, 47 U.S.C. § 533 (the "Cable Act"), and common law based on Bell's disruption of Comcast's services. In addition to damages and injunctive relief, Comcast seeks a declaratory judgment that certain claims in its advertisements directed to Bell's services are truthful.

In response, Bell filed a motion under Fed. R. Civ. P. 12(b)(6) and 12(b)(1) to dismiss all of Comcast's counterclaims other than its claim for a declaratory judgment.[2] Bell argues that Comcast fails to state a claim under the Cable Act, and that I lack jurisdiction to adjudicate Comcast's remaining claims. It is this motion that I now consider.

---

[2]Bell's right to challenge the declaratory judgment count is reserved.

II.

A motion to dismiss tests the sufficiency of a complaint or counterclaim but does not rule on its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss, I must accept all well-pleaded allegations in the challenged pleading as true and draw all reasonable inferences in the non-movant's favor*. McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). The pleading must, nevertheless, allege sufficient facts to suggest plausibly that the claimant is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

III.

Whether or not Comcast states a claim under the Cable Act is potentially dispositive of the jurisdictional dispute,[3] so I begin my analysis there. The Cable Act provides that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1).

The crux of the issue here is whether Bell's alleged interference with Comcast's services falls within the meaning of

---

[3]There is no apparent dispute over whether, if the Cable Act applies, I may appropriately exercise supplemental jurisdiction over Comcast's state law claims. Bell objects to supplemental jurisdiction only based on my original jurisdiction over the parties' Lanham Act claim and counterclaim.

the term "intercept," which is not defined in the statute.  Whether a person "intercept[s]" cable communications for the purposes of § 553 by introducing foreign information into a cable provider's network, resulting in an interruption to the flow of information over that network, is one of first impression in the Seventh Circuit.

Bell does not undertake a significant textual analysis but rather contends that "signal leakage" cannot be the basis for a claim under § 533 because the statute was intended to cover only the theft of cable services.  Bell points to numerous cases in which the plaintiffs sought relief under § 533 for cable theft and argues that the legislative history supports a narrow reading of the statute that would encompass only such cases.  Bell contends that the Seventh Circuit's holding in *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996) supports this narrow construction.

By contrast, Comcast focuses on the text of the statute itself.  Comcast concedes that litigation under the statute has focused on cable theft but rejects Bell's argument that the proliferation of such cases and the statute's legislative history are evidence that Congress intended § 533 to apply only in those limited circumstances.  Citing ample authority, Comcast argues that because the text of the statute is clear,[4]  I must construe terms

---

[4]Bell appears to agree that the text is clear but disagrees as to its meaning.  Statutory construction is a question of law, *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 446 (1987), and

not defined in the statute based solely on their plain meaning, rather than look to legislative reports as evidence of congressional intent. *See, e.g., Microsoft Corp. v. AT&T Corp.*, 127 S.Ct. 1746, 1755 (2007); *F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994); *Carmichael v. The Payment Center, Inc.*, 336 F.3d 636, 639 (7th Cir. 2003). Comcast then offers a plethora of dictionary definitions for the word "intercept" that support its position that Bell's conduct amounts to "intercept[ion]" as contemplated by § 533. For example, Comcast cites the American Heritage College Dictionary, which defines "intercept" as: "to stop, deflect, or interrupt the progress or intended course of."

Comcast's argument is persuasive. If, indeed, information travelling over Comcast's network is stopped, deflected, or interrupted in its course as a result of Bell's conduct as alleged in Comcast's counterclaim, that conduct appears to fall within the literal scope of § 533.

Bell does not assert any competing definition of "intercept." Its cursory textual analysis focuses on Comcast's allegation regarding the "introduction of foreign information into Comcast's infrastructure," and concludes, without explanation, that such conduct is plainly outside the scope of the statute. Although the

---

disagreement between the parties about a statute's meaning does not render it ambiguous. *See John v. U.S.*, 247 F.3d 1032, 1041 (9th Cir. 2001)(*citing Bank of America NT & SA v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 461 (1999)(Thomas, J., concurring)).

basis for this analysis is not explicit, Bell presumably relies on a commonsense understanding of the word "introduce" as distinct from "intercept." Bell's argument does not account, however, for the subsequent language in Comcast's allegation: "[Bell] has....prevented Comcast's communications services from reaching their intended targets--Comcast's customers" (emphasis added). This portion of Comcast's counterclaim closely parallels Comcast's asserted definition of "intercept." Thus, even if I accept Bell's presumed definitions, I still must conclude that the conduct Comcast alleges falls within the scope of the statute as construed based on the ordinary meaning of its terms.

Bell urges me to consider portions of a congressional report that suggest the purpose in enacting § 533 was to curb the problem of cable theft. As noted above, however, I may only look to legislative history to construe a statute's meaning if I find that the statute's text is ambiguous. Bell has not argued, nor am I persuaded, that the text of the Cable Act is ambiguous. Accordingly, Bell's reliance on § 533's legislative history is unavailing.

Nor is Bell's reliance on *Norris* persuasive. The court's focus in that case was on distinguishing "radio communications" from "cable communications" for the purpose of determining whether a statute regulating radio traffic or the Cable Act applied to the sale of television decoders. Nothing in *Norris* precludes a finding

that the literal language of § 533 encompasses more than cable theft.

Finally, I note that § 533 includes a separate provision for willful violations, which suggests that unintentional violations are also covered by the statute. Because a narrow construction of § 533 that would limit its scope to cable theft (an intentional violation) would render the provisions regarding willful violations superfluous, that interpretation would be at odds with principles of statutory construction. *TRW Inc., v. Andrews*, 534 U.S. 19, 31 (2001).

Because I find that Comcast has properly stated a claim under 47 U.S.C. 533, I need not address the parties' additional arguments.

IV.

For the foregoing reasons, Bell's motion to dismiss is denied.


**ENTER ORDER:**

_____
      Elaine E. Bucklo
United States District Judge

DATED:  May 7, 2008

8