**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ILLINOIS BELL TELEPHONE d/b/a AT&T OF ILLINOIS,<br><br>    Plaintiff,<br><br>    v.<br><br>COMCAST OF ILLINOIS III, INC., COMCAST CORPORATION, COMCAST CABLE HOLDINGS, LLC, and COMCAST OF CHICAGO, INC.,<br><br>    Defendants. | Civil Action No. 08-CV-1680<br><br>Honorable Elaine E. Bucklo<br><br>Magistrate Judge Martin C. Ashman<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
<u>COUNT V OF COMCAST'S COUNTERCLAIMS</u>**

   Plaintiff Illinois Bell Telephone, d/b/a AT&T Illinois ("AT&T Illinois"), moves to Dismiss Counterclaim Five ("Declaratory Judgment") of Defendants Comcast of Illinois III, Inc., Comcast Corporation, Comcast Cable Holdings, LLC, and Comcast of Chicago, Inc. (collectively, "Comcast"). AT&T Illinois submits this memorandum in support of its Motion to Dismiss Count V of Comcast's Counterclaims.[1]

**I. PRELIMINARY STATEMENT**

   This case involves Comcast's false advertising campaign in the Chicago area. This campaign seeks to dissuade Illinois consumers from purchasing AT&T Illinois' subscription television service offerings by falsely claiming that the purchase of AT&T Illinois' service will result in the subsequent placement of "giant" and "ugly" utility boxes at or near to the

---

[1] On April 24, 2008, pursuant to the Court's special scheduling order, AT&T Illinois moved to dismiss Comcast's Counterclaims I-IV. Because those issues related to a pending Motion for Preliminary Injunction filed by Comcast, the normal time for filing a motion to dismiss had been shortened by agreement of the parties, as confirmed by Court order. That special order segregating some counterclaims for special early consideration by the Court did not address the remaining count V, as to which a Motion to Dismiss is herein filed timely under Rule 12(b).

customer's property or neighborhood. In its Complaint and subsequent Motion for Preliminary Injunction, AT&T Illinois asked the Court to enjoin five specific false advertising claims that Comcast had disseminated in commerce. These claims were contained in a variety of advertisements, including a print advertisement that Comcast fabricated and which featured a fictitious photograph of a U-verse utility box (known as a video-ready access device or "VRAD") visually and physically "blocking" a home. Comcast's campaign also featured these claims in at least two television advertisements. The challenged advertisements also falsely claimed that purchasing AT&T Illinois' television service offerings results in the subsequent placement of a VRAD on or near to the subscriber's property or neighborhood. AT&T Illinois' Complaint alleged that these and other related claims were false, and should be enjoined.

In Count V of its Counterclaims, Comcast seeks a sweeping declaration from the Court regarding the truthfulness of a laundry list of proposed Comcast advertising claims, none of which are alleged to have ever been made, nor alleged to be likely to be made. Comcast therefore asks the Court to provide a far-reaching advisory ruling on what it can and cannot say truthfully in future advertising executions, essentially demanding that the Court function as Comcast's advertising attorney. Comcast makes this improper request for advance judicial approval of its advertising without providing the Court with any actual advertisements, or any context whatsoever, such as would enable the Court to evaluate Comcast's conduct in an appropriate manner.

In so doing, Comcast fails to state a claim that presents an actual case or controversy to this Court. Comcast has not presented any present or future advertisements containing the claims they wish to make, nor has AT&T Illinois challenged or threatened suit regarding the claims set forth in Comcast's Counterclaim V. Under these circumstances, any ruling rendered by the Court would not finally settle any actual, ripe dispute between the parties. Moreover,

even if a justiciable controversy did exist, the issuance of a declaratory judgment of the type Comcast seeks regarding unseen hypothetical future advertisements would be an improper use of the Court's discretionary equitable powers. Because Comcast's Declaratory Judgment Counterclaim V presents no question appropriate for decision by a federal court, it should be dismissed.

## II.   INTRODUCTION

### A.   Factual Background

Comcast is the dominant incumbent provider of subscription television services to residential consumers in Illinois, and has been for many years.[2] AT&T Illinois recently began competing with Comcast in the subscription television market.[3] Since 2004, AT&T Illinois has offered a satellite television service branded AT&T | DISH Network that is provided by EchoStar Satellite L.L.C. DISH Network ("DISH Network").[4] In January 2008, AT&T Illinois began offering an Internet Protocol ("IP")-based wireline video service named U-verse™ TV ("U-verse TV").[5]

In order to provide the U-Verse TV service, AT&T undertook significant and expensive upgrades to its network infrastructure.[6] Among these upgrades was the installation of video ready access devices, or "VRADs,"[7] in public rights of way or easements near existing utility structures.[8] VRADs are metal cabinets which, for technical reasons, must be installed within

---

[2]   AT&T Illinois' Amended Complaint for Injunctive and Other Relief at ¶ 10; Comcast's Counterclaims and Third-Party Complaint at ¶ 13
[3]   AT&T Illinois' Amended Complaint for Injunctive and Other Relief at ¶¶ 11-13.
[4]   *Id.* at ¶ 12.
[5]   *Id.* at ¶ 13.
[6]   *Id.* at ¶ 14.
[7]   DISH Network does not require a VRAD for the provision of service, and no VRADs are employed in the provision of DISH Network service. *See Id.* at ¶ 19.
[8]   AT&T Illinois' Amended Complaint for Injunctive and Other Relief at ¶ 17.

about 300 feet of an existing AT&T Illinois telephone service cross-connection cabinet.[9] Historically, equipment owned by other utilities and common carriers – including Comcast – has been located in these same rights of way and easements.[10]  Any single VRAD serves between 150-750 homes and can be located up to several thousand feet from the customers that it serves.[11]  VRADs are placed, tested, and brought into service well before any AT&T U-verse TV sales are made to residents in the neighborhood served by the VRAD.[12]

Comcast responded to AT&T Illinois' entry into the market with its U-verse TV service by launching a multi-pronged advertising campaign that falsely disparages services offered by AT&T Illinois.[13]  Specifically, Comcast began disseminating in print media, television advertisements, and over the internet, advertisements in which Comcast made literally false claims that, among other things, customers who purchase subscription television services from AT&T Illinois will likely have "giant" and "ugly" VRADs subsequently placed in their front yard, or on or near their property.  In some of the challenged executions, Comcast further claims that the subsequently installed VRADs will "block" the homes of AT&T subscribers.  The Comcast ads also falsely claim that AT&T Illinois does not offer any local programming.[14]  All of these claims are literally false.

### B. Procedural Background

In its Complaint and subsequent Motion for Preliminary Injunction, AT&T Illinois seeks an order enjoining Comcast from "disseminating or causing the dissemination of the advertisements identified in the Amended Complaint," and from "disseminating or causing the

---

[9]  *Id.* at ¶ 16.
[10] *Id.* at ¶¶ 16-17.
[11] *Id.* at ¶¶ 17, 19, 30.
[12] *Id.* at ¶ 19.
[13] *Id.* at ¶¶ 2, 21-35.
[14] *Id.* at ¶ 2.

dissemination of claims in any packaging, advertising, or other promotional materials that say, show or imply that: (1) the purchase of television services from AT&T Illinois results in the placement, or an increased chance of placement, of a utility box or VRAD, on or near to the customer's property; (2) the purchase of TV services from AT&T Illinois results in a customer having any adverse impact, or an increased chance of an adverse impact, because of the placement of a utility box or VRAD; (3) AT&T Illinois and/or its VRADs "block[s]" or "limit[s]" (or any other words of similar import) HD content or any false statements about the functioning of a VRAD; (4) AT&T Illinois offers fewer HD television channels than Comcast; (5) AT&T Illinois only allows its customers to view HD channels or content on television at a time; (6) AT&T Illinois provides television service only over "narrowband" facilities; and (7) and AT&T Illinois does not offer local programming."[15]

Comcast's Answer denied that it was making any of the above-challenged claims. Comcast also counterclaimed in part for a declaration as to the truthfulness of a laundry list of 13 potential future advertising claims, none of which are alleged to have been actually made in any specific advertisement. Comcast's counterclaim for declaratory judgment seeks an advisory opinion under putative authority of the Lanham Act that its proposed laundry list of future advertising claims regarding AT&T Illinois' service offerings is truthful and would not give rise to liability.[16] Because no case or controversy exist with respect to Comcast's request for

---

[15] *Id.* at p. 18 ¶ (C); *see also* Plaintiff's Motion for Preliminary Injunction (Proposed Order attached therero).

[16] *See* Counterclaims and Third Party Complaint at ¶¶ 67-69. Specifically, Comcast seeks a declaration that the following statements "are not false or misleading": "AT&T's ability to provide U-Verse TV to its customers is dependent upon the placement of VRAD boxes nearby in the customers' neighborhoods; b. VRAD boxes are large and unsightly; c. AT&T locates VRAD boxes in locations that can be viewed from the front and side windows of many houses and apartments without the consent of the affected residents; d. AT&T locates VRAD boxes without customers' consent and over their objection in the parkways in front, or to the side, of certain of their houses; e. AT&T locates VRAD boxes without customers' consent and over their objection in other public places that affect the aesthetic view that

declaratory judgment, this Court does not have jurisdiction over it, and Comcast's request for declaratory relief fails as a matter of law. Even if the Court could theoretically exercise jurisdiction, it should decline to do so in light of the ambiguous and hypothetical nature of the rulings sought.

## III. ARGUMENT

### A. Legal Standard

"[T]he purpose of declaratory relief is to allow a party to avoid damage prior to an impending injury-causing event, not to allow a court to advise a party as to the legality of a proposed course of action."[17] Under Article III, Section 2 of the Constitution, a court may not issue an advisory opinion or render an adjudication based on hypothetical facts. "A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot."[18] Put differently, "[i]t must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[19] This limitation is echoed by the Declaratory Judgment Act, which applies only to "a

---

nearby residents would otherwise enjoy; f. There is a maximum number of houses that a VRAD box can effectively service; g. If the number of customers in a particular neighborhood exceeds the maximum number of customers that can be serviced by a VRAD box, AT&T may replace or add another VRAD box in the neighborhood; h. Comcast provides more high definition programming options through its television service than AT&T does through its U-Verse TV service; i. A single household that with multiple television that subscribes to U-Verse TV cannot watch more than one live high definition television channel at the same time; j. AT&T configures its U-Verse TV service so that a single household with multiple television sets cannot watch more than one live high definition television at the same time; k. The on demand feature of AT&T's U-Verse TV has less programming available from which to choose than the on demand feature of Comcast's television service; l. The on demand feature of AT&T's U-Verse TV does not contain local programming; and m. The on demand feature of Comcast's television service does contain local programming." Counterclaims and Third Party Complaint at ¶ 69.

[17]  *Basic v. Fitzroy Engineering, Ltd.*, 949 F.Supp. 1333, 1338 (N.D. Ill. 1996) (quotation omitted).
[18]  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 57 S.Ct. 461, 464, 300 U.S. 227, 240, 81 L.Ed. 617 (1937).
[19]  *Id.,* 57 S.Ct. at 464, 300 U.S. at 240-41.

case of actual controversy."[20]  "By its terms, [the Declaratory Judgment Act] applies to 'cases of actual controversy,' a phrase which must be taken to connote a controversy of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts."[21]  Among the hallmarks of a colorable declaratory judgment claim are immediacy of an injury causing event, absence of collateral and potentially conflicting litigation concerning the same subject matter, and the presence of equitable factors militating towards adjudication of the declaratory claim. *None* of these factors is present here.

Jurisdiction of the courts is limited to situations where a live, concrete dispute exists between the parties:

> Unlike the state courts, the federal courts are courts of limited jurisdiction. Federal courts are conferred jurisdiction to review a case if authorized by the Constitution or by statute. The presumption is that a cause of action lies outside this limited scope of jurisdiction. The burden of establishing a jurisdictional basis rests upon the party asserting jurisdiction. Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the court to dismiss a case for lack of subject matter jurisdiction.[22]

Jurisdiction is the quintessential threshold issue, and as set forth above, the party seeking the declaratory judgment (here, Comcast) shoulders the burden of establishing jurisdiction. Where the sufficiency of the plaintiff's jurisdictional allegations is challenged by a motion filed pursuant to Rule 12(b)(1)[23], the court accepts all well-pleaded facts as true and construes them in

---

[20] 28 U.S.C. § 2201.
[21] *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688 (1936).
[22] *Amoakowaa v. Reno*, 94 F. Supp. 2d. 903, 904 (N.D. Ill. 2000) (*citing Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994)).
[23] Federal Courts in Illinois have granted motions challenging the sufficiency of jurisdictional allegations in declaratory judgment actions pursuant to both Rule 12(b)(1) and 12(b)(6). *See, e.g., Van Der Horst v. Van Der Horst*, No 06-C-5614, 2007 WL 1099478 at *3 (N.D. Ill. April 10, 2007) (granting 12(b)(6) motion challenging ripeness of declaratory judgment claim).  Accordingly, while AT&T Illinois brings this challenge pursuant to Rule 12(b)(1), in the alternative and for all the reasons stated herein, AT&T Illinois also moves to dismiss the Counterclaim pursuant to Rule 12(b)(6).

the light most favorable to the plaintiff.[24] However, the Court is limited to allegations contained in the four corners of the complaint, and "[d]ismissal is proper is it appears beyond doubt that the plaintiff cannot prove any set of facts consistent with the pleadings that would entitle her to the relief requested."[25]

Even where a Court may properly consider a declaratory judgment claim, it may exercise its discretion and decline to consider the claim. "When determining whether a declaratory action will 'serve a useful purpose,' the court must weigh 'equitable considerations' and the decision should be 'informed by the teachings and experience concerning the functions and extent of judicial power.'"[26]

Dismissing Comcast's Counterclaim V is appropriate because Comcast has failed to establish that an actual, live case or controversy exists with respect to any of the 13 advertising claims set forth in Comcast's Counterclaim. Comcast's bare and conclusory allegation in paragraph 68 of its Counterclaim Complaint that an actual controversy "has arisen" does not suffice. Comcast has not alleged any specific facts regarding any complaint it has received, or is likely to receive, from AT&T Illinois regarding the 13 enumerated claims. Instead, Comcast improperly seeks to have this Court vet hypothetical claims which Comcast may or may not include in future advertisements (and, in any event has not alleged that it has used, or will use, any time soon).

     **B.    Comcast's Counterclaim Improperly Seeks An Advisory Opinion As To The Legality Of Unspecified And Hypothetical Advertisements**

The case or controversy requirement of Article III requires that, "to be heard in federal court, a suit seeking declaratory judgment cannot present a controversy that is uncertain or

---

[24] *Amoakowaa*, 94 F. Supp. 2d. at 904.
[25] *Id.* at 905.
[26] *Basic*, 949 F. Supp. at 1339 (*quoting Green v. Mansour,* 474 U.S. 64, 72, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985)).

speculative."[27]  This requirement, "keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a proposed course of action."[28]  Similarly, "the ripeness doctrine prevents courts from becoming involved in premature adjudication of disputes that are uncertain to occur or contingent in nature."[29]:

Here, Comcast presents the Court with a list of 13 proposed statements that mix opinion[30] and fact,[31] and seeks to have the Court opine as to whether they properly "may form the basis of" hypothetical, unspecified future advertising by Comcast.[32]  For example, Comcast asks the court to rule on the truthfulness of the statement that "VRAD boxes are large and unsightly," Counterclaim Complaint ¶69(b), that "AT&T locates VRAD boxes in locations that can be viewed from the front and side windows of many houses and apartments without the consent of the affected residents . . . ," *id.* ¶69(d), and that "AT&T located VRAD boxes . . . in other public places that affect the aesthetic view that nearby residents would otherwise enjoy."  *Id.* ¶69(e).

It is readily apparent how nebulous most of these counterclaim allegations are.  Moreover, rendering findings on these claims will not resolve any actual dispute between the parties.  Although Comcast's Counterclaim Complaint conjectures that Comcast may in the future face liability under the Lanham Act or "similar state or federal law" (presumably for false advertising)[33], it has not alleged any facts that this is likely, or even a reasonable possibility.  Rather, Comcast simply invites the Court to embark upon a wide-ranging set of speculation about a multitude of unpled allegations, such as the possible context of any ads containing the

---

[27] Moore's Federal Practice 3d § 101.80[1].
[28] *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994).
[29] Moore's Federal Practice 3d § 101.80[1].
[30] *See, e.g.,* Counterclaims and Third Party Complaint at ¶ 69(b) ("VRAD boxes are large and unsightly").
[31] *See, e.g., Id.* at ¶ 69(f) ("There is a maximum number of houses that a VRAD box can effectively service")
[32] *Id.* at ¶ 69.
[33] Counterclaims and Third Party Complaint at ¶ 69.

proposed claims, and the factual truth or falsity of the claims themselves (*e.g.*, whether future, hypothetical consumers would find the boxes "large and unsightly"). Comcast has not alleged that AT&T Illinois has threatened to sue Comcast on these claims, and even if it had, "the threat of suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment... the Declaratory Judgment Act is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse."[34] Simply put, determination of the issues raised in Counterclaim V would not change anything between the parties. No case-or-controversy exists as to these claims, and the issue is not ripe for adjudication.

### 1. Comcast's Fails To Demonstrate The Existence Of A Case Or Controversy

The touchstone of a truthful, non-misleading advertising claim is its context. As one federal court explained, "[i]n considering the issue of falsity, the court should consider the advertisement in its entirety and not... engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately."[35] That is, it is possible to make a literally truthful statement in an advertisement that otherwise conveys false implied meaning – if, for example, the advertisement contains other false or misleading claims, or omits material information germane to one or more of its claims.

Comcast has posited 13 hypothetical claims related to AT&T Illinois's subscription television service – without alleging they have been made or even alleging the context in which they might be communicated to consumers in the future. Because Comcast has failed to allege the broader context of any advertisement containing the proposed claims, it is impossible for the

---

[34] *Hyatt International Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (quotation omitted); *see also United Parcel Service v. Pennie*, No 03-C-8019, 2004 WL 2064547 at *3 (N.D. Ill. Sept. 8, 2004) (*citing Hyatt International*; threat of litigation insufficient).
[35] *McNeil-PPC, Inc. v. Pfizer,* 351 F. Supp. 2d 226, 248 (S.D.N.Y. 2005).

Court at this juncture to determine whether any future advertisement incorporating the claim, *as a whole*, would give rise to Lanham Act liability. Comcast nevertheless seeks an order declaring that they "may form the basis of *advertising* by Comcast *without liability*. . . ."[36] The 13 enumerated statements in paragraph 69 of Comcast's counterclaims, however, tell us nothing about the overall context or potential veracity of the future Comcast advertisements (if any) that will contain them – and thus nothing as to whether these unspecified claims may be disseminated "without liability." Because consideration of Comcast's Counterclaim therefore would not "touch[] the legal relations of the parties," no case-or-controversy exists.[37]

### 2. Comcast's Counterclaim Is Not Ripe

"Before granting declaratory relief, the court should be particularly vigilant to make certain the case is ripe."[38] The doctrine of ripeness is closely associated with Article III's requirement of a case or controversy, and like the case or controversy requirement seeks to prevent the courts from being bogged down adjudicating disputes predicated on contingencies and hypotheticals that may never come to pass. "If the potential harm is uncertain or is contingent on another event that may or may not occur, then the parties' interests are not yet sufficiently adverse to constitute an actual controversy."[39] The contingencies here are glaring: among other things, Comcast fails to allege that intends to disseminate advertisements featuring any of the claims; it fails to allege the substance of any advertisement featuring the 13 disputed claims; and it fails to allege that it has created any advertisements (whether in draft or final form) containing any of the disputed claims. All Comcast alleges is that the parties have a

---

[36] Counterclaims and Third Party Complaint at ¶ 69 (emphasis added).
[37] *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, ___, 127 S.Ct. 764, 771, 166 L.Ed.2d 604 (2007) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 57 S.Ct. at 464, 300 U.S. at 240, 81 L.Ed. 617).
[38] *Basic*, 949 F.Supp. at 1337.
[39] Moore's Federal Practice 3d at § 101.80[3].

disagreement regarding how Comcast compares its service to that of AT&T's U-verse, and Comcast's ability to associate VRADs with the U-verse service. This is insufficient: to be ripe, "the disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."[40]

### C. Because Comcast Has Failed To Establish Immediate Harm, Declaratory Relief Is Inappropriate

The "actual controversy" requirement of the Declaratory Judgment Act is satisfied only when "the present controversy is 'real and immediate'."[41] That is, declaratory relief is appropriate only where the party seeking such relief can demonstrate the immediacy of an injury causing event. "[T]he purpose of declaratory relief is to allow a party to avoid damage prior to an impending injury-causing event, not to allow a court to advise a party as to the legality of a proposed course of action."[42]

As set forth above, Comcast has failed to establish any imminent invasion of a legal right, or immediate harm, justifying declaratory relief. Comcast has not alleged that it has actually prepared any advertisements (or even any draft advertisements) featuring any of the 13 claims at issue, let alone prepared to distribute them. This is insufficient: the "focus[] [is] on whether the potential infringer's proposed future activities were definite enough, or had progressed sufficiently, to create a 'real and immediate' threat of infringement."[43] Thus, in *Geisha, LLC,* this Court concluded that the threat of infringement of the plaintiff restaurant's trademark was

---

[40] *Basic*, 949 F.Supp. at 1337 (*quoting Public Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952)).
[41] *Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1010 (N.D. Ill. 2007).
[42] *Basic*, 949 F.Supp at 1338 (quotation omitted).
[43] *Geisha, LLC*, 525 F. Supp. 2d at 1014 (analyzing *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) and *Land v. Pacific Marine and Supply Co., Ltd.,* 895 F.2d 761 (Fed. Cir. 1990)).

not sufficiently "real and immediate" when the allegedly infringing restaurateur had inspected several properties, but not yet leased a facility for his restaurant.[44] Here, too, there is no threat of "real and immediate" harm unless and until Comcast actually prepares, and evinces an intention to distribute, an actual advertisement containing one of the 13 claims. Because "a declaratory judgment action is not a means to try issues or determine the validity of defenses in pending cases," Comcast's request for declaratory relief should be denied.[45]

### D. To the Extent Comcast's Request Is Duplicative Of AT&T Illinois's Claims In The Underlying Litigation, Declaratory Relief Is Inappropriate

To the extent Comcast's Counterclaim V is redundant of AT&T Illinois complaint, it should also be dismissed. A decision on the merits of AT&T Illinois' claims will render such portions of Comcast's Counterclaim moot – particularly with respect to the propriety of references to the VRADs in existing advertising or advertising that is proven to be reasonably likely to recur. This Court should, therefore, dismiss Comcast's claim for declaratory relief because it is duplicative and unnecessary.

Federal Courts in Illinois routinely dismiss "mirror image" counterclaims where they merely restate issues presented in the plaintiff's case in chief: "What remains of Count II of the counterclaim is essentially a restatement of Count II of the complaint from [Defendant's] perspective. . . .Count II of the counterclaim is duplicative and we dismiss it with prejudice."[46]

---

[44] *Id.* at 1018; *see also Ocean Atlantic Development Corp. v. Willow Tree Farm, L.L.C.*, No 01-C-5014, 2002 WL 485387 at *2 (N.D. Ill. Mar. 29, 2002) ("Willow Tree points to no specific threat and its speculation about what Ocean Atlantic 'might' do does not give rise to a substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"; declaratory judgment counterclaim dismissed).

[45] *Ocean Atlantic Development Corp.,* 2002 WL 485387 at 1.

[46] *See GNB, Inc. v. Gould, Inc.*, No. 90-C-2413, 1990 WL 207429 at *5 (N.D. Ill. 1990).

### E. Equitable Factors Warrant That The Court Should Decline To Exercise Jurisdiction Over The Counterclaim

Even if the Court concluded that it had the power to consider Comcast's declaratory judgment claim, it should decline to exercise discretion to do so, as it would "serve no "useful purpose." [47] In evaluating these considerations, the Seventh Circuit employs a five-pronged test:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.[48]

These equitable considerations strongly weigh in AT&T Illinois's favor. As to the first factor, the judgment would not settle any actual controversy. On the second factor, litigation of the issues presented in the declaratory judgment would ***complicate***, ***rather than clarify***, matters and greatly impede settlement as the companies jockeyed over what would be permissible in hypothetical future ads. Third, it certainly does appear that the counterclaim has been interposed in an effort to muddy or delay resolution of the case, and could only lengthen the proceedings. The fourth factor is not applicable here. And the fifth factor is answered by suggesting that the alternative remedy, which is far more efficient than the one sought by Comcast, is to refrain from any ruling on the 13 suggested claims and to await future legal action, if any, that may arise as a result of any future Comcast ad.

Because the pertinent equitable considerations[49] weigh in AT&T Illinois' favor and none weigh in Comcast's favor, the Court should decline to consider Comcast's Counterclaim for

---

[47] *Basic*, 949 F. Supp. at 1339 (*quoting Green v. Mansour,* 474 U.S. 64, 72, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985)).
[48] *Id.* (citation omitted).
[49] Because both AT&T Illinois' claims in the underlying litigation and Comcast's Counterclaim were filed in federal court, the fourth factor is not relevant to this analysis.

Case 1:08-cv-01680   Document 61   Filed 05/12/2008   Page 15 of 15

Declaratory Judgment. As another court stated when considering a request for declaratory relief regarding advertising claims, "[t]his court, however, does not believe that federal courts should be placed in the position of serving as part of a marketing strategy for beer or any other product."[50]

## IV. CONCLUSION

For the foregoing reasons, AT&T Illinois respectfully requests that the Court dismiss Comcast's Counterclaim V for Declaratory Relief.

DATED: May 12, 2008

Respectfully submitted,

ILLINOIS BELL TELEPHONE, D/B/A
AT&T ILLINOIS


By: /s/ Brian L. Crowe
     One of Its Attorneys

Brian L. Crowe (ARDC #0549584)
bcrowe@shefskylaw.com
John F. Kennedy (ARDC #6196185)
jkennedy@shefskylaw.com
Lynn A. Ellenberger (ARDC #6244188)
lellenberger@shefskylaw.com
SHEFSKY & FROELICH LTD.
111 E. Wacker Drive, Suite 2800
Chicago, IL  60601
Telephone:  (312) 527-4000
Facsimile:   (312) 527-4011

and

Christopher A. Cole
ccole@manatt.com
Manatt Phelps Phillips, LLP
700 12th Street, N.W., Suite 1100
Washington, D.C.  20005
Telephone: (202) 585-6524
Facsimile:   (202) 637-1535
1083744_1

---

[50] *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 676 F.Supp 1436, 1482 (E.D. Wis. 1987).

-15-