## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS,<br><br>  Plaintiff,<br><br>  v.<br><br>COMCAST OF ILLINOIS III, INC.,<br>COMCAST CORPORATION,<br>COMCAST CABLE HOLDINGS, LLC, and<br>COMCAST OF CHICAGO, INC.<br><br>  Defendants. | Case No.:  08-CV-1680<br><br>Honorable Elaine E. Bucklo<br><br>Magistrate Judge Martin C. Ashman<br><br>JURY TRIAL DEMANDED |

### APPENDIX OF UNREPORTED CASES

### PLAINTIFF'S MOTION TO DISMISS COUNT V OF COMCAST'S COUNTERCLAIMS

# TABLE OF AUTHORITIES

**Tab**

**A**   *GNB, Inc. v. Gould, Inc.,*
1990 WL 207429, at *5 (N.D. Ill. 1990)

**B**   *Ocean Atlantic Development Corp. v. Willow Tree Farm, L.L.C.*
2002 WL 485387, at *1-2 (N.D. Ill. Mar. 29, 2002)

**C**   *United Parcel Service v. Pennie*
2004 WL 2064547, at *3 (N.D. Ill. Sept. 8, 2004)

**D**   *Van Der Horst v. Van Der Horst*
2007 WL 1099478, at *3 (N.D. Ill. April 10, 2007)

# TAB A

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 207429 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1990 WL 207429)

**H**GNB Inc. v. Gould, Inc.
N.D.Ill.,1990.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
GNB INCORPORATED and GNB Industrial Battery Company, Plaintiffs,
v.
GOULD, INC., Defendant.
**No. 90 C 2413.**

Nov. 30, 1990.

*MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.
*1 This matter is before the court on the plaintiff's motion to dismiss the defendant's counterclaim. The plaintiff, GNB Incorporated and GNB Industrial Battery Company (collectively "GNB"), has asked this court for a declaratory judgment stating that GNB is not responsible for defendant's liabilities under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and did not indemnify the defendant for any liability regarding waste treated or disposed of at various facilities. The defendant, Gould, Inc. ("Gould"), has filed a counterclaim alleging that GNB, as successor-in-interest, is responsible for all of Gould's liabilities and requesting a declaration that GNB assumed these liabilities by contract. For the following reasons, we dismiss the counterclaim with prejudice.

*Background*

GNB Incorporated is a Delaware corporation with its principal place of business in Minnesota. GNB Industrial Battery Company is a Delaware corporation with its principal place of business in Illinois. GNB Industrial Battery Company is a wholly-owned subsidiary of GNB Incorporated and is engaged in the manufacture and sale of industrial batteries. Gould is a Delaware corporation with its principal place of business in Ohio. Gould is authorized to do business in Illinois and has an agent in Chicago. Jurisdiction over this matter is pursuant to CERCLA, 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331.

Prior to 1983, Gould was engaged in the manufacture of batteries and had arranged for both on- and off-site disposal of the wastes associated with that enterprise. Compl., ¶¶ 7-9. Gould used common disposal and waste treatment facilities in Granite City, Illinois; Monterey Park, California; and Minneapolis, Minnesota. Compl., ¶ 10. Gould decided to sell off its battery operations; to that end it sold two plants in Georgia and Michigan and in June 1982, formed GNB Batteries, Inc. as a wholly-owned subsidiary to hold all of Gould's battery manufacturing assets and conduct the business. Compl., ¶¶ 11-12.

On January 1, 1983, Gould sold and assigned all of its battery manufacturing assets to GNB Batteries in exchange for all of GNB Batteries' stock. Compl., ¶ 13. At this time GNB Batteries and Gould signed a Restated Assumption Agreement ("Agreement") in Illinois, with amendments added in April 1984. Compl., ¶ 14. Under this agreement GNB Batteries agreed to assume some liabilities and obligations relating to the battery assets. Compl., ¶ 15. In addition, Gould agreed to sell its stock in GNB Batteries to GNB Acquisition Corp. on April 6, 1984. Compl., ¶ 16. GNB Acquisition Corporation then merged with GNB Batteries, and GNB Batteries changed its name to GNB Incorporated.

I. *The Complaint*

GNB maintains that following the formation of the agreement Gould accepted responsibility for CERCLA and other environmental law liabilities relating to off- and on-site disposal, but since 1988 Gould has maintained that GNB is liable for such costs. In 1988 the owner of the Georgia site determined that the soil was contaminated with hazardous wastes as defined by CERCLA, 42 U.S.C. § 9601(14) and notified Gould. Compl., ¶ 22,23. The current owner of the site maintains that the hazardous substances were disposed of on the site prior to 1968 when Gould sold the site. Compl., ¶ 24. Gould then notified GNB saying that GNB must take responsibility for any cleanup costs. Compl., ¶ 26.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 207429 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1990 WL 207429)

**\*2** In 1989 the current owner of the Michigan site also found contamination on the site, and Gould has notified GNB that it is liable for any costs incurred in the cleanup. Compl., ¶¶ 27, 29. Costs already incurred on each site in connection with cleanup have been in excess of $100,000.00. Compl., ¶ ¶ 25, 28. The owner of the Michigan site has brought suit against Gould to recover cleanup costs, and Gould has tendered the defense of this lawsuit to GNB, but GNB has declined to accept the offer. Compl., ¶¶ 31, 32.

Since 1988 the United States Environmental Protection Agency (EPA) has identified Gould as a "potentially responsible" party (PRP) with regard to cleanups in common facilities in Illinois, California, and Minnesota. Compl., ¶ 34; CERCLA, 42 U.S.C. § 9607(a)(2). Gould also maintains that GNB is responsible for any costs involved in the cleanup efforts on these sites. Compl., ¶ 35. GNB asserts that Gould is a PRP under CERCLA, 42 U.S.C. § 9607(a)(2), because Gould had been an owner and operator of the facilities in Georgia and Michigan. Compl., ¶ 38. GNB also asserts that Gould is a PRP under CERCLA, 42 U.S.C. § 9607(a)(3), because Gould arranged for treatment or disposal of hazardous wastes at the California, Illinois, and Minnesota sites. Compl., ¶ 39.

Count I of the complaint requests a declaratory judgment under CERCLA stating that

1. GNB is not a PRP with regard to any waste disposal accomplished at a site not acquired by GNB or at a common facility;

2. Gould did not transfer to GNB any CERCLA liability for any of Gould's facilities or any common facilities;

3. GNB did not agree to indemnify Gould, in the Restated Assumption Agreement or any other agreement, or hold Gould harmless from any CERCLA liability on any Gould properties or facilities;

4. if GNB is responsible under the Agreement for any liability incurred by Gould under CERCLA with regard to any Gould properties or common facilities,

Gould has breached its warranties in the Agreement that no material liabilities existed at the time of the Agreement;

5. Gould is estopped from recovering on its CERCLA liabilities from GNB because Gould breached its warranties in the Agreement; and

6. that GNB is entitled to costs and disbursements in this action.

Compl. at 12-13.

Count II requests a declaratory judgment under the contract stating that

1. GNB did not assume responsibility under the Agreement for cleanups on any Gould properties, including the Georgia and Michigan sites;

2. GNB did not assume responsibility under the Agreement for cleanups on any common disposal and treatment facilities, including the Illinois, California, and Minnesota sites;

3. if GNB undertook responsibility for Gould's liability regarding waste disposed of at its own facilities or at common facilities, Gould breached its warranties in the Agreement that no obligations existed at the time of the Agreement;

4. Gould is estopped from recovering from GNB for any cleanups at common facilities or its former sites because Gould breached its warranties and representations in the Agreement; and

**\*3** 5. that GNB is entitled to costs and disbursements.

Compl. at 15, 16.

II. *The Counterclaim*

Gould filed a counterclaim, pursuant to CERCLA 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331. Gould tells a substantially similar story about the changeover in the battery operations, but maintains that GNB became "the successor-in-interest to the Divisions' [former battery divisions of Gould] operations, assets and liabilities." Cntrclm., ¶ 21.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3
Not Reported in F.Supp., 1990 WL 207429 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1990 WL 207429)

Gould asserts that GNB assumed responsibility for the potential cleanup requirements at the Georgia and Michigan sites, which had belonged to Gould, and for Gould's contribution to the hazardous waste disposed of at the common sites in California, Minnesota, and Illinois.

Gould also states that GNB has reneged on its obligations to answer the *Four D* suit filed in 1990 and a wrongful discharge suit brought in 1987 by Melvin Smith.

Count I of the counterclaim requests a judicial declaration of the parties' rights and obligations with respect to CERCLA cleanup costs at Gould's former facilities and at common facilities on a corporate successor-in-interest theory. Cntrclm. at 32. Count II requests a judgment declaring that

1. GNB is solely responsible for the past, present, and future response costs incurred with regard to cleanups at the facilities named above;

2. Gould is entitled to an amount equal to that which it has expended in response costs at the Georgia, Michigan, Illinois, California, and Minnesota facilities;

3. under the Agreement, GNB took responsibility for all obligations and liabilities arising out of environmental cleanups relating to any properties owned or leased by Gould;

4. under the Agreement, GNB took responsibility for all obligations and liabilities arising out of environmental cleanups relating to any common facilities used by Gould for treatment or disposal of wastes;

5. Gould is entitled to damages occasioned by GNB's breach of the Agreement;

6. GNB is liable under the Agreement for the damages, costs and expenses Gould has incurred or will incur in connection with the *Four D* and *Smith* cases; and

7. Gould is entitled attorneys' fees and costs incurred in connection with this matter.

Cntrclm. at 34-36.

GNB has now moved to dismiss Count I of Gould's counterclaim stating that it does not state a claim for which relief may be granted because GNB is not a successor-in-interest to Gould's battery division assets and liabilities. GNB also argues that Count II should be dismissed for lack of subject matter jurisdiction.

*Discussion*

Before us are parties with a problem that is becoming increasingly common among industrialists. Since the early 1970s, the federal government and the several states have come to recognize that the disposal of hazardous waste, the legacy of the products we have learned to require, needs strict regulation. Indeed, in 1980, Congress enacted CERCLA, better known as the "Superfund" Act, to supervise the cleanup of hazardous waste sites around the country. To this end, CERCLA casts a broad net to locate those parties who are "owners and operators" of hazardous waste sites and to assess them for their share of the mess, often many years after they created it. CERCLA, 42U.S.C. § 9607. We now see protracted battles among "potentially responsible parties" to reapportion blame, and as Judge Easterbrook noted from this Circuit in another Superfund case, "[l]arge potential obligations concentrate the mind wonderfully...." *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155, 159 (7th Cir.1988).

**4** On a motion to dismiss, the court views the allegations of a the complaint as true, along with reasonable inferences therefrom, and views these in the light most favorable to the plaintiff. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). Plaintiff's complaint should not be dismissed "unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief.... Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047 (1986) (citations omitted).

I. *Count I: GNB as Successor-in Interest to Gould*

Gould declines to stand on the provisions of the Agreement, but argues that GNB is "the successor-in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 4
Not Reported in F.Supp., 1990 WL 207429 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1990 WL 207429)**

interest to the Divisions' operations, assets and liabilities." Cntrclm., ¶ 21. GNB maintains, however, that Count I should be dismissed because GNB did not succeed to Gould's liabilities under CERCLA for properties sold prior to 1983 and for cleanups of common facilities where Divisions disposed of wastes prior to 1983. GNB says that corporate successor liability does not obtain because Gould's battery division was not a corporate entity and GNB Batteries did not acquire *all* of Gould's liabilities.

In order to qualify for possible corporate successor liability, Illinois law requires, as a threshold matter, that all of the assets of the original corporation be acquired by the successor corporation. *Domine v. Fulton Iron Works*, 32 Ill.Dec. 72, 395 N.E.2d 19, 23 (Ill.App. 1 Dist.1979). Here the Agreement was executed by two corporations, Gould and GNB Batteries; however, GNB Batteries did not receive *all* of Gould's corporate assets. GNB only acquired the portion of Gould's holdings that involved the manufacture of industrial batteries. Therefore, like the defendant corporation in *Domine*, which purchased only *some* of the other corporation's assets, leaving that other corporation still in existence, GNB may not be considered a corporate successor to Gould. Following the transfer of assets to GNB Batteries, Gould carried on its corporate existence. Consequently, we need not reach the parties' analysis of the factors that may create liability in a corporate successor-in-interest, and we dismiss Count I of the counterclaim with prejudice for failing to state a claim for which relief may be granted.

II. *Count II: Subject Matter Jurisdiction*

Count II of Gould's counterclaim requests a declaratory judgment regarding the obligations of the parties under the Agreement as a matter of pendent jurisdiction, an award of its expenditures in environmental response costs, and a declaration that GNB is obligated to answer both the *Four D* and *Smith* cases. While it is true that both Count II of the counterclaim and the remaining counts in the complaint rely on an interpretation of the assumption of liability outlined in the Agreement, we shall not extend our analysis beyond the question of liability for environmental cleanup obligations, which forms the basis for this complaint. Therefore, we shall not hear the portion of Count II of the counterclaim requesting a determination of the parties' liabilities

with regard to the *Smith* and *Four D* cases.

**\*5** What remains of Count II of the counterclaim is essentially a restatement of Count II of the complaint from Gould's perspective. As this court will engage in contract interpretation in addressing the complaint, Count II of the counterclaim is duplicative and we dismiss it with prejudice. *See Rayman v. Peoples Sav. Corp.*, 735 F.Supp. 842, 851-53 (N.D.Ill.1990); *Green Bay Packaging, Inc., v. Hoganson & Assoc., Inc.*, 362 F.Supp. 78, 82 (N.D.Ill.1973) (counterclaim was a mirror-image of the plaintiff's claim).

*Conclusion*

For the foregoing reasons, we dismiss the counterclaim with prejudice.

N.D.Ill.,1990.
GNB Inc. v. Gould, Inc.
Not Reported in F.Supp., 1990 WL 207429 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB B

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 485387 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 485387)**

**H**Ocean Atlantic Development Corp. v. Willow Tree
Farm L.L.C.
N.D.Ill.,2002.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
OCEAN ATLANTIC DEVELOPMENT
CORPORATION, a Virginia Corporation, Plaintiff,
v.
WILLOW TREE FARM L.L.C., DRH Cambridge
Homes, Inc., a California Corporation, Elda Arnhold,
and Byzantio, L.L.C. Defendants.
No. 01 C 5014.

March 29, 2002.

MEMORANDUM OPINION AND ORDER

LEFKOW, District J.
*1 On June 29, 2001, plaintiff, Ocean Atlantic
Development Corporation ("Ocean Atlantic") filed a
two-count complaint against defendant, Willow Tree
Farm L.L.C. ("Willow Tree"), in which Ocean
Atlantic alleges that it contracted with Willow Tree
to obtain an easement to construct and maintain a
storm drain to service property that Ocean Atlantic
was purchasing for a development located adjacent to
Willow Tree's property. The construction was to be
completed by June 30, 2001. Ocean Atlantic alleges
that Willow Tree failed to provide written approval
of specifications as required by the contract, did
provide oral approval, but denied Ocean Atlantic
access to its property to begin construction. Ocean
Atlantic seeks specific performance (Count I) and
damages (as well as punitive damages) for breach of
contract (Count II).

On July 20, 2001, Willow Tree filed its answer and
affirmative defenses and a counterclaim asserting that
Ocean Atlantic failed to comply with the contract
terms, failed to construct the storm drain by the June
30 date, and seeks a declaratory judgment pursuant to
28 U.S.C. §§ 2201, 2202, that the contract terminated
on June 30, 2001. Willow Tree also asserts that the
premise of the contract was that Ocean Atlantic was
the "owner of record" of the properties it intended to
service with the easement, but subsequently a court
found that Ocean Atlantic had no rights to purchase,

develop or otherwise encumber the property. *See
Arnhold v. Ocean Atlantic Woodlands Corp.*, 132
F.Supp.2d 662 (N.D.Ill. Feb. 28, 2001) (Keys, J.),
*aff'd, ___ F.3d ___, 2002 WL 435513 (7th Cir.
Mar. 21, 2002)*. Thus, Willow Tree asserts Ocean
Atlantic's claim for specific performance is in bad
faith and is brought merely to prevent Willow Tree
from entering into an easement agreement with the
rightful owners of the property.

On August 2, 2001, Ocean Atlantic moved pursuant
to Federal Rule of Civil Procedure 12(b)(6) ("Rule")
to dismiss Willow Tree's counterclaim and moved,
pursuant to Rule 12(f), to strike Willow Tree's
affirmative defenses. Ocean Atlantic subsequently
filed an amended complaint on February 7, 2002,
alleging claims of tortious interference with contract
against three additional defendants, but not alleging
any new claims against Willow Tree. On March 14,
2002, Willow Tree filed an amended answer and
affirmative defenses and an amended counterclaim.
The affirmative defenses are identical to those
contained in the original answer, and the
counterclaim is nearly identical and seeks the same
remedy. The court construes Ocean Atlantic's motion
to dismiss and strike as to Willow Tree's March 14,
2002 amended answer and amended counterclaim.

*Motion to Dismiss Amended Counterclaim for
Declaratory Judgment*

The purpose of the Declaratory Judgment Act, 28
U.S.C. § 2201, is "to avoid accrual of avoidable
damages to one not certain of his rights and to afford
him an early adjudication, without waiting until his
adversary should see fit to begin suit, after damage
had accrued."*NUCOR Corp. v. Aceros Y Maquilas de
Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th
Cir.1994) (internal quotation omitted). The decision
whether to grant declaratory relief is discretionary.*Id.*
There must be an actual, "substantial controversy,
between parties having adverse legal interests, of
sufficient immediacy and reality to warrant the
issuance of a declaratory judgment."*Id.* (internal
quotation omitted). Moreover, a declaratory judgment
action is not a means to "try issues or determine the
validity of defenses in pending cases."*Cunningham
Bros., Inc. v. Bail*, 407 F.2d 1165, 1168 (7th

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 485387 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 485387)**

Cir.1969).

**\*2** Ocean Atlantic argues that Willow Tree's counterclaim should be dismissed since once the issues have been decided on Ocean Atlantic's claims, there will no longer be a continuing controversy. Willow Tree responds that it needs the court's protection from Ocean Atlantic's harassing and predatory behavior. Willow Tree points to a series of lawsuits involving Ocean Atlantic and other parties and argues that even if Willow Tree defeats Ocean Atlantic's claims, there are "potentialities" that Ocean Atlantic might try to construe certain language in the contract as supporting a right to "maintain" a storm drain (that another entity is building) and "Ocean Atlantic might still try to intrude on the Willow Tree property and/or file additional lawsuits."(Resp. at 3.) However, Willow Tree points to no specific threat and its speculation about what Ocean Atlantic "might" do does not give rise to a substantial controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Thus, the court dismisses Willow Tree's counterclaim. *See Natkin v. Winfrey, 111 F.Supp.2d 1003, 1015 (N.D.Ill.2000)* (dismissing declaratory judgment claims stating "plaintiffs have not identified a live controversy that will not be resolved by the close of this lawsuit").

*Motion to Strike Affirmative Defenses*

Affirmative defenses are pleadings and thus subject to the pleading requirements of the Federal Rules of Civil Procedure. *Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir.1989).* While the general rule is that motions to strike affirmative defenses are disfavored, where they serve to "remove unnecessary clutter from the case, they serve to expedite, not delay."*Id.* A helpful three-pronged approach was articulated by Judge Milton I. Shadur in *Bobbitt v. Victorian House, Inc.,* for determining whether to strike an affirmative defense: (1) determine whether the defense is a proper affirmative defense-if it clearly is not, then strike it to make the pleadings more concise; (2) if is proper, then determine whether it is appropriately pled under Rule 8(a) (short plain statement) or Rule 9 (fraud with particularity)-if not, then strike it without prejudice to repleading; and (3) if it is a proper affirmative defense and meets the Rule 8/9 pleading standards, determine whether the defense fails to state a claim

upon which relief can be granted, i.e. whether it is impossible for defendant to prove any set of facts which would entitle it to relief. *532 F.Supp. 734, 737 (N.D.Ill.1982).*

Under the first prong, the question arises, what is a proper affirmative defense? Rule 8(c) requires that, in addition to any of the 19 named affirmative defenses, a party set forth "any other matter constituting an ... affirmative defense" in a responsive pleading. Failure to do so generally results in waiver. *Roe v. Sears, Roebuck & Co., 132 F.2d 829 (7th Cir.1943).* However, the failure to raise an affirmative defense in an answer does not forever bar a party from raising it, but the proper remedy is a motion for leave to amend. *Bobbitt, 532 F.Supp. at 736.* Commentators have suggested that a proper affirmative defense is one which "raises a matter outside the scope of plaintiff's *prima facie* case and is thus a matter not raised by a simple denial,"*see id.* at 736 (citing 2A Moore's Federal Practice ¶ 8.27(3) at 8-250, 8-254), or "generally admits the matters in a complaint but suggests some other reason why there is no right of recovery."*Id.* (citing 5 Wright and Miller, Federal Practice and Procedure § 1270 at 292). However, because such definitions are imprecise, a pleader, to avoid waiver, is "justified in setting up as affirmative defenses anything that might possibly fall into that category, even though that approach may lead to pleading matters as affirmative defenses that could have been set forth in simple denials."*Id.; see also*CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, 5FEDERAL PRACTICE & PROCEDURE 2d § 1271 (Updated by 2002 Pocket Part) ("[I]t is advisable for defendant to allege affirmatively any new matter he believes may not be embraced by the pleadings."). A general principle to follow, therefore, is to strike a "so-called" affirmative defense "if there is [no] real doubt about the defendant's right, under his denial, to offer proof of the matters."*Bobbitt, 532 F.Supp. at 736* (citing 2A Moore's Federal Practice ¶ 8.27(3) at 8-251). Thus, the benefit of the doubt is given to the pleader, and an affirmative defense should be stricken only "where it is completely certain [it has] been mistitled."*Id.*

**\*3** Willow Tree's affirmative defense 1, "failure to state a claim," is no more than a recitation of the standard for a motion to dismiss under Rule 12(b)(6), which some courts have stricken as not a proper affirmative defense under Rule 8(c) because it is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 3
Not Reported in F.Supp.2d, 2002 WL 485387 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 485387)**

properly assertable under Rule 12(b)(6) and does not raise matters outside of the scope of plaintiff's *prima facie* case. *See Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont'l Ill. Nat'l Bank and Trust Co.,* 576 F.Supp. 985, 991 (N.D.Ill.1983) (Shadur, J.); *Northwestern Corp. v. Gabriel Mfg. Co., Inc.,* No. 95 C 2004, 1996 WL 732519, *14 (N.D.Ill.Dec. 18, 1996)* (Anderson, J.). A contrary line of authority, however, has permitted a "failure to state a claim" affirmative defense on the basis that this defense is specifically set forth as a possible defense in Form 20 of the Appendix of Forms of the Federal Rules of Civil Procedure and the use of such forms is explicitly authorized by Rule 84. *See General Elec. Capital Corp. v. Munson Marine, Inc.,* 91 C 5090, 1992 WL 24067, at *2 (N.D.Ill. Jan. 29, 1992)* (Conlon, J.); *Mendrala v. Crown Mortg. Co.,* No. 88 C 7386, 1990 WL 60705, at *3 (N.D.Ill. Apr. 23, 1990)* (Kocoras, J.). Other courts also note that pleading "failure to state a claim" as an affirmative defense is not necessarily improper because Rules 12(b)(6) and 12(h)(2) give the defendant an option of presenting its "failure to state a claim" defense in a responsive pleading or in a separate motion. *See, e.g., Fleet Bus. Credit Corp. v. Nat'l City Leasing Corp.,* 191 F.R.D. 568, 569 (N.D.Ill.1999) (Aspen, C.J.) (citing *Codest Eng'g v. Hyatt Int'l Corp.,* 954 F.Supp. 1224, 1231 (N.D.Ill.1996) (Coar, J.)). All courts appear to agree, however, that the mere conclusional assertion of a "failure to state a claim" defense is insufficient under Rule 8. Although this court cannot say "failure to state a claim" cannot be pled as an affirmative defense, it agrees that its mere conclusional assertion is insufficient under Rule 8 and, therefore, is properly stricken. Moreover, because Willow Tree is not foreclosed from bringing this defense by way of a proper motion under Rule 12(c), the court will not will not give leave to replead this defense.

Affirmative defense 2 is "good faith." Ocean Atlantic argues that because intent is not an element in a contract case, "good faith" is irrelevant (in other words, Ocean Atlantic is arguing that Willow Tree could prove no set of facts under this defense which would entitle it to relief). Willow Tree responds that the defense is proper given that Ocean Atlantic has put Willow Tree's intent at issue in its complaint by pleading punitive damages in its breach of contract claim (Count II). Willow Tree points out, in Illinois, [FN1]"[a]s a general rule punitive damages are not recoverable for breach of contract,"*Morrow v. L.A.*

*Goldschmidt Assoc.,* 112 Ill.2d 87, 94, 492 N.E.2d 181,183 (Ill.1986) (citation omitted), even for a "willful" breach since the sole purpose of contract damages is to compensate the nonbreaching party.*Id.* The exception to this rule is if the conduct causing the breach "is also a tort for which punitive damages are recoverable."*Id.* at 95, 492 N.E.2d at 184. (citation omitted). In such a case, there must be proper allegations of malice, wantonness or oppression. *Id.* Generally, this is where the harm alleged goes beyond defeated expectations of the contract. *See id.*In its reply, Ocean Atlantic ignores these principles and merely repeats its contention that Willow Tree cannot avoid liability by claiming its own conduct was in good faith, adding that the defense is not pled to Rule 8's standard. While the court agrees with Ocean Atlantic that the defense is not pled in accordance with Rule 8, more importantly, it agrees with the authority cited by Willow Tree that the complaint does not set forth facts that would support tort damages. Thus, it would be futile for this court to allow Willow Tree to replead a defense of good faith, as it has no bearing on matters raised in the complaint. Further, the court will strike, on its own motion (*see*Rule 12(f)), Ocean Atlantic's request for punitive damages in Count II as well as grant Ocean Atlantic's motion to strike Willow Tree's affirmative defense 2.

> FN1. The parties have not raised or addressed the choice of law issue and both rely on Illinois law in their briefs. Therefore, the court presumes that the substantive law of Illinois governs. *Kritikos v. Palmer Johnson, Inc.,* 821 F.2d 418, 421 (7th Cir.1987) ("When the parties fail to consider the choice of law in a diversity case, the substantive law of the forum is presumed to control.") (quotation omitted).

*4 In affirmative defense 3, Willow Tree asserts "lack of standing." The issue of standing involves whether the court is entitled to decide the merits of the dispute and involves both jurisdictional and prudential limits on the court's power. *Indemnified Capital Inv. v. R.J. O'Brien & Assoc.,* 12 F.3d 1406, 1408 (7th Cir.1993) (citing *Warth v. Seldin,* 422 U.S. 490, 498 (1975)). Plaintiff bears the burden of proving it has standing. *Id .* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)). Ocean Atlantic notes that Willow Tree's conclusional

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 4
Not Reported in F.Supp.2d, 2002 WL 485387 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 485387)**

standing defense is "nonsensical" given that Willow Tree admitted that Ocean Atlantic is a party to the contract with Willow Tree. (*See* Am. Answer ¶ 11.) In any event, Ocean Atlantic argues a "lack of standing" defense is no more than a denial of its claim and is thus improper. Willow Tree responds by pointing to certain language in the contract which it contends shows that the rights to the easement are vested in the person who owns the property to be serviced and Ocean Atlantic does not own the property, *see Arnhold, 132 F.Supp.2d 662.* Willow Tree asserts that only the person who now owns the property (Cambridge Homes) would have standing with respect to the easement. Thus, Willow Tree appears to be asserting that Ocean Atlantic is not entitled to enforce the easement. Ocean Atlantic replies that Willow Tree's theory that Cambridge Homes would have rights under the contract, to which it never was a party, is unsupported by the language of the contract and any legal authority. The court is not convinced that Willow Tree's defense is properly pled of lack of standing particularly where, as here, Willow Tree admits entering into the easement contract with Ocean Atlantic. Moreover, the court agrees that the defense is not pled to Rule 8's requirements and, for that reason, should be stricken. Since a motion challenging subject matter jurisdiction may be made at any time and even on the court's own motion, *see* Rule 12(h)(3), the court does not grant leave to merely replead a standing defense. Cf. *Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1995 WL 247996, *5 (N.D.Ill.1995)* (N.D.Ill. Apr. 24, 1995) (Nordberg, J.). However, if there is a proper ground for an affirmative defense based on the facts argued by Willow Tree, which would not be merely duplicative of its denials of plaintiff's claims, Willow Tree may amend to allege such an affirmative defense in accordance with Rule 8.

Ocean Atlantic concedes that defenses 4 and 5, the estoppel and waiver defenses, are proper affirmative defenses but argues they are conclusional and fail to meet Rule 8(a)'s pleading requirement. The court agrees and strikes affirmative defenses 4 and 5 without prejudice. See *Heller, 883 F.2d at 1295.*[FN2]

> FN2. Because this court has dismissed the counterclaim, Willow Tree's attempt to salvage the bare-bones pleading deficiency by referring to facts therein fails. Willow Tree may replead these defenses in

conformity with Rule 8 in an amended answer.

Affirmative defenses 6 and 7, "lack of causation," merely deny an element of Ocean Atlantic's claims and, therefore, are stricken. *Resolution Trust Corp. v. KPMG Peat Marwick, 845 F.Supp. 621, 625 (N.D.Ill.1994)* (striking affirmative defense that claims were barred by, *inter alia,* "causation in fact, proximate cause, intervening cause" on the ground that it was not an affirmative defense but merely an assertion that plaintiff could not prove a necessary element of its claim). Willow Tree, of course, is not precluded from offering evidence of lack of causation at trial. *Id .*

### CONCLUSION

**\*5** For the reasons set forth above, the court grants Ocean Atlantic's motion to dismiss Willow Tree's amended counterclaim [# 5] and grants Ocean Atlantic's motion to strike Willow Tree's affirmative defenses [# 6] without prejudice to repleading affirmative defenses 3, 4, and 5. The court strikes, on its own motion, Ocean Atlantic's request for punitive damages in Count II. The parties are given until May 23, 2002 to file a second amended complaint and answer.

N.D.Ill.,2002.
Ocean Atlantic Development Corp. v. Willow Tree Farm L.L.C.
Not Reported in F.Supp.2d, 2002 WL 485387 (N.D.Ill.)

**END OF DOCUMENT**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB C

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2064547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2064547)**

○ United Parcel Service, Inc. v. Pennie
N.D.Ill.,2004.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
UNITED PARCEL SERVICE, INC., Plaintiff,
v.
Thomas G. PENNIE, Defendant.
**No. 03 C 8019.**

Sept. 8, 2004.

Ellen L. Spahr, Joseph Patrick Postel, Meachum,
Spahr, Cozzi, Postel, Zenz & Matyas, Chicago, IL,
for Plaintiff.
Thomas G. Pennie, Glenview, IL, pro se.

*MEMORANDUM OPINION AND ORDER*

COAR, J.
**\*1** Plaintiff United Parcel Service, Inc. ("UPS") has
filed a complaint against defendant Thomas G.
Pennie ("Pennie") pursuant to the Declaratory
Judgment Act, 28 U.S.C. §§ 2201, *et seq.* ("the
DJA"). In it, UPS requests a determination that
Pennie is estopped by his wage differential settlement
with UPS under § 8(d)(1) of the Illinois Workers
Compensation Act, 820 ILCS 305/1, *et seq.* ("the
IWCA"), from asserting any right to resume
employment with UPS.

Pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure, Pennie has moved to dismiss the
complaint on several grounds. For the reasons set
forth below, this court grants Pennie's motion to
dismiss and dismisses UPS's complaint.

I. Standards on a Rule 12(b)(6) Motion to Dismiss

"The purpose of a motion to dismiss is to test the
sufficiency of the complaint, not to decide the
merits."*Triad Assocs., Inc. v. Chicago Hous. Auth.,*
892 F.2d 583, 586 (7th Cir.1989). In reviewing a
motion to dismiss for failure to state a claim, the
court accepts as true all well-pleaded facts in the
complaint and draws all reasonable inferences
therefrom in favor of the plaintiff. *See Ameritech*

*Corp. v. McCann,* 297 F.3d 582, 585 (7th Cir.2002).
A complaint should be dismissed only if there is no
set of facts in support of the claim that would entitle
the plaintiff to relief. *See Ledford v. Sullivan,* 105
F.3d 354, 356 (7th Cir.1997).

II. Background [FN1]

FN1. These alleged facts are taken from the
complaint and assumed to be true only for
purposes of defendant's motion to dismiss.

UPS is an Ohio corporation with its principal place of
business in Atlanta, Georgia. Pennie is an individual
and a citizen of Illinois. In the complaint, UPS
alleges that this court has subject matter jurisdiction
on the basis of the parties' diverse citizenship and its
contention that the amount in controversy exceeds
$75,000.

In 2001 and 2002, Pennie asserted various claims
against UPS at the Illinois Industrial Commission
("ICC"), pursuant to the IWCA. The claims were
based upon alleged injuries that occurred in the
course and scope of Pennie's employment with UPS.
On January 30, 2002, a functional capacity evaluation
("FCE") was conducted, and a written report was
generated ("FCE report"). The FCE report identified
certain physical limitations and work restrictions
resulting from Pennie's on-the-job injuries.

On May 3, 2003, Pennie's attorney sent a letter to
UPS's insurance carrier requesting $214,375.60 based
upon Pennie's wage differential claim. This request
was premised upon Pennie's alleged work restrictions
and his allegation that UPS did not wish to
accommodate those restrictions. Subsequently, UPS
assented to a wage differential settlement with Pennie
pursuant to section 8(d)(1) of the IWCA. The
settlement agreement provided for Pennie to receive
an immediate cash payment of $85,000 and periodic
payments of $3,300 per year for ten years (totaling
$112,314 in payments to Pennie). The agreement also
stated that the settlement "includes all claims for
benefits past, present, and future under Section
8(d)(1)" of the IWCA. (Cmplt., Exh. D). On or about
May 15, 2003, the ICC approved the settlement

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                  Page 2
Not Reported in F.Supp.2d, 2004 WL 2064547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2064547)**

agreement, and UPS subsequently paid the full settlement amount to Pennie.

**\*2** The same month, Pennie "demanded" reinstatement to his prior position with UPS, asserting that he was under no disability or restriction and was capable of holding the position. (Cmplt., ¶ 11). Approximately six months later, in November 2003, UPS filed the instant action, seeking a declaratory judgment under the DJA. Specifically, UPS contends that Pennie's alleged acquiescence in UPS's wish not to accommodate his work restrictions (through his request for a settlement), his assertion of a wage differential claim under section 8(d)(1) of the IWCA, and his acceptance of $112,000 in satisfaction and settlement of his claim estop him from asserting any right to resume employment with UPS, and, particularly, in either his former position or any job whose demands exceed the restrictions identified in the FCE report. Along these lines, UPS seeks a determination and adjudication of the rights and obligations of the parties *vis a vis* the section 8(d)(1) settlement agreement.

Pennie bases his Rule 12(b)(6) motion to dismiss upon several arguments. He contends that dismissal is appropriate because: (1) UPS has failed to adequately allege an actual case in controversy, injury in fact, or legally recognized interest; (2) UPS has failed to adequately allege the necessary elements of judicial estoppel; and (3) UPS's claim is not ripe.

**III. Analysis**

The DJA provides that, in "a case of actual controversy," federal courts "may declare rights and other legal relationships of any interested parties ... whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The purpose of the DJA is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued." *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir.1994) (internal quotations and citations omitted).

"Declaratory judgment actions serve an important role in our legal system insofar as they permit prompt settlement of actual controversies and establish the legal rights and obligations that will govern the parties' relationship in the future." *Hyatt Intl. Corp. v. Coco*, 302 F.3d 707, 711 (7th Cir.2002). Critically, the requirement of an "actual controversy" is contained within the text of the DJA, itself, and it is jurisdictional. *See* 28 U.S.C. § 2201(a); *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir.1995).[FN2]

> [FN2]. This statutory requirement is related to the constitutional limitation on the exercise of judicial power to "cases" and "controversies." *See* U.S. Const. art. III, § 2. In essence, the DJA expressly incorporates this constitutional requirement. Or, stated another way, the statutory requirement has "constitutional dimensions." *Trippe*, 46 F.3d at 627 (internal quotations and citation omitted).

Defendant's motion to dismiss and supporting memoranda are jumbled, confusing, and largely devoid of meritorious argument. However, defendant correctly contends (albeit rather circuitously) that plaintiff has failed to allege the existence of an "actual controversy," as required by the DJA. *See* 28 U.S.C. § 2201(a). For this reason, UPS's complaint shall be dismissed.

An actual controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotations and citations omitted). Here, UPS premises its entitlement to injunctive relief upon Pennie's May 2003 "demand" for reinstatement to his former position at the company (and seeks a determination that he is estopped from doing so). *See* Cmplt., ¶ 11; Resp. Br., p. 2. UPS contends that it meets the "actual controversy" requirement by virtue of the fact that, with this suit, it "seeks to preempt a second legal proceeding where Pennie asserts that he no longer has the very disability for which UPS paid him $112,000." (Resp.Br., p. 2).

**\*3** As the Seventh Circuit has observed, "[e]arly resolution of a threat of litigation, in a friendly forum, is no doubt of value to a potential defendant, but the statute requires an 'actual' controversy." *Coco*, 302 F.3d at 711-12. In that vein, the Seventh Circuit has

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2064547 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2004 WL 2064547)

Page 3

made clear that, *"the threat of suit, however immediate, is not itself sufficient for the invocation of the federal power to issue a declaratory judgment:* as other courts have noted, the Declaratory Judgment Act 'is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." ' *Coco,* 302 F.3d at 712 (citation omitted) (emphasis added).

Here, plaintiff has not even alleged an actual threat of a lawsuit, but rather merely suggested the possibility thereof, based upon defendant's May 2003 "demand" to be reinstated. It is clear from plaintiff's allegations in the complaint and its argument in its response brief that, as of the time it filed the complaint, the threat of litigation was not so "concrete" that plaintiff "legitimately needed a declaration of its rights and other legal relations in order" to govern its future conduct. *Cf. Coco,* 302 F.3d at 712. *See also Trippe, 46 F.3d at 627* (establishing that only the actions of the declaratory defendant known to the declaratory plaintiff as of the commencement of the action are relevant to determination of whether threat exists); *accord Coco,* 302 F.3d at 712. UPS's bare speculation concerning the possibility that Pennie may, sometime in the future, bring a lawsuit against it (which is all that UPS offers in this regard) is not sufficient to invoke this court's power to grant a declaratory judgment. Likewise, the wholly abstract and inconsequential matter of whether Pennie's May 2003 "demand" for reinstatement was proper in light of the settlement agreement does not rise to the level of an "actual controversy." In sum, there is no substantial controversy of sufficient immediacy and reality to warrant the granting of a declaratory judgment. Because no "actual controversy" exists, UPS's complaint must be dismissed.

Even if there were an "actual controversy," dismissal would be appropriate because the DJA does not authorize a party to seek a determination of its adversary's rights and obligations and potential damages, as UPS essentially attempts to do here. As noted above, the purpose of the DJA is *"to avoid accrual of avoidable damages to one not certain of his rights* and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued."*Nucor, 28 F.3d at 577* (internal quotations and citations omitted) (emphasis added). As UPS has presented the

underlying facts in this case, it is Pennie who is violating the terms of the settlement agreement, and UPS seeks a determination to that effect. Based on its own representations in its complaint and in its response to Pennie's motion to dismiss, it is clear that UPS is not seeking to avoid the accrual of its own damages. Rather, by UPS's allegations, it is Pennie who is accruing damages by seeking reinstatement, which UPS contends is precluded by the settlement agreement. Thus, UPS's action is not consistent with the purposes of the DJA, and dismissal on this basis would be appropriate. *See, e.g., Asch v. Teller, Levit & Silvertrust, P.C.,* No. 00 C 3290, 2003 U.S. Dist. LEXIS 16747, at *20-21 (N.D.Ill. Sept. 26, 2003) (granting summary judgment on claim under DJA on the grounds that the plaintiffs did not seek a declaratory judgment that would "clarify their rights and obligations in order to avoid accruing avoidable damages" but instead sought one "that would clarify defendant's duties"); *Int'l Paper Co. v. Andoscoggin Energy LLC,* No. 0 C 6215, 2003 U.S. Dist. LEXIS 10563, at *8-9 (N.D. Ill. June 20, 2003) (concluding that party could not maintain action under DJA to define the rights and obligations of its adversary so as to limit the adversary's accrual of damages; "a declaratory judgment suit allows a party to ask the court if it can do something without incurring liability [; not] to ask if an adversary can do something without incurring liability").

**\*4** Finally, even if this court did not dismiss the case on either or both the above grounds, it would nonetheless exercise its discretion to decline to entertain this case. *See* 28 U.S.C. § 2201 (providing in pertinent part that federal courts *"may* declare rights and other legal relationships of any interested parties") (emphasis added); *North Shore Gas Co. v. Salomon Inc.,* 152 F.3d 642, 647 (7th Cir.1998) ("district courts have wide discretion to decline to hear [DJA] actions"); *Trippe, 46 F.3d at 627* ("even where a case presents an actual controversy, a court may properly refuse to grant declaratory relief for prudential reasons"); *Nucor, 28 F.3d at 577* ("[t]he decision of the district court to grant declaratory relief is discretionary") (citations omitted)."A suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed...."*Nucor, 28 F.3d at 577-78* (internal quotations and citations omitted).*See also Salomon, 152 F.3d at 647* ("district courts should decline to hear declaratory judgment actions that have been filed in an attempt to manipulate the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2064547 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2004 WL 2064547)**

judicial process"). It appears to this court that wresting the choice of forum from the natural plaintiff was UPS's sole aim here.[FN3] For this additional and independent reason, even if there existed an actual controversy over which this court could properly choose to exercise its jurisdiction, it would decline to do so.

> FN3. Moreover, prudential considerations dictate that a dispute concerning the meaning and implications of the underlying settlement agreement, particularly insofar as it depends upon the proper reading of section 8(d)(1) of the IWCA, would more appropriately be handled at the state level.

IV. Conclusion

Based on the foregoing, defendant's Rule 12(b)(6) motion to dismiss is granted, and plaintiff's complaint shall be dismissed.

N.D.Ill.,2004.
United Parcel Service, Inc. v. Pennie
Not Reported in F.Supp.2d, 2004 WL 2064547 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB D

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2007 WL 1099478 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 1099478)**

C Van Der Horst v. Van Der Horst
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
Ronald VAN DER HORST, Plaintiff,
v.
Laurence A. VAN DER HORST, et al., Defendants.
No. 06 C 5614.

April 10, 2007.

Riccardo Anthony Dimonte, Julia Ellen Jensen,
Robert Stephen Minetz, Dimonte & Lizak, Park
Ridge, IL, for Plaintiff.
Martin B. Carroll, Fox, Hefter, Swibel, Levin &
Carroll, LLP, Chicago, IL, for Defendant.

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge.
*1 This matter is before the court on Defendant
Janine Van der Horst's ("J. Van der Horst") motion to
dismiss. This matter is also before the court on
Plaintiff Ronald Van der Horst's ("R. Van der Horst")
motion for judgment on the pleadings against
Defendant Laurence A. Van der Horst ("L. Van der
Horst"). For the reasons stated below, we grant J.
Van der Horst's motion to dismiss, deny R. Van der
Horst's motion for judgment on the pleadings, and
dismiss the instant action for lack of subject matter
jurisdiction.

### BACKGROUND

R. Van der Horst alleges that on June 16, 1999, he
loaned $100,000 to L. Van der Horst, his son, for L.
Van der Horst to use as a down-payment for the
purchase of a house at 1447 West Wolfram Street, in
Chicago, Illinois ("House"). R. Van der Horst further
alleges that on June 16, 1999, he and his son, L. Van
der Horst, signed a loan agreement entitled "Loan
and Security Agreement with Balloon Payment"
("First Loan Agreement"). (A.Compl.Par. 8). R. Van
der Horst further contends that on July 10, 1999, he
loaned his son, L. Van der Horst, and his son's fiance,
J. Van der Horst, $400,000 for the closing on the

contract to purchase the House and that L. Van der
Horst and J. Van der Horst signed another loan
agreement with him ("Second Loan Agreement"), in
addition to the First Loan. (collectively referred to as
"Loan Agreements"). The Loan Agreements
allegedly gave R. Van der Horst a security interest in
the House, which was meant to secure repayment of
the debt. On July 18, 1999, L. Van der Horst and J.
Van der Horst allegedly became married and on
August 26, 1999, L. Van der Horst and J. Van der
Horst allegedly closed on the contract to buy the
House using a combination of R. Van der Horst's
loan proceeds and other bank loans.

On September 15, 2005, J. Van der Horst allegedly
filed a petition for dissolution of marriage against L.
Van der Horst. On July 18, 2006, R. Van der Horst
allegedly recorded a notice of claim for lien against
the House and on August 11, 2006, L. Van der Horst
and J. Van der Horst allegedly listed the House for
sale with a real estate broker. On December 26, 2007,
R. Van der Horst filed an amended complaint seeking
a declaratory judgment in his favor against J. Van der
Horst and L. Van der Horst to enforce his lien and
security interest in the House for the sum of
$500,000.00, principal plus interest accrued through
the date of judgment. In the alternative, R. Van der
Horst requests that an equitable lien be imposed on
the House for the purpose of ensuring payment upon
sale of the House. J. Van der Horst moves to dismiss
the instant action and R. Van der Horst has filed a
motion for judgment on the pleadings against L. Van
der Horst.

### LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to
Federal Rule of Civil Procedure 12(b)(6), the court
must draw all reasonable inferences that favor the
plaintiff, construe the allegations of the complaint in
the light most favorable to the plaintiff, and accept as
true all well-pleaded facts and allegations in the
complaint. *Thompson v. Ill. Dep't of Prof'l
Regulation,* 300 F.3d 750, 753 (7th Cir.2002);
*Perkins v. Silverstein,* 939 F.2d 463, 466 (7th
Cir.1991). The allegations of a complaint should not
be dismissed for a failure to state a claim "unless it
appears beyond doubt that the plaintiff can prove no

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 2
Slip Copy, 2007 WL 1099478 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 1099478)**

set of facts in support of his claim which would entitle him to relief." _Conley v. Gibson_, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); _see also Baker v. Kingsley_, 387 F.3d 649, 664 (7th Cir.2004) (stating that although the "plaintiffs' allegations provide[d] little detail ... [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. _Kyle v. Morton High School_, 144 F.3d 448, 454-55 (7th Cir.1998); _Lucien v. Preiner_, 967 F.2d 1166, 1168 (7th Cir.1992). Under current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action....' " _See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc._, 40 F.3d 247, 251 (7th Cir.1994) (stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. _Higgs v. Carver_, 286 F.3d 437, 439 (7th Cir.2002); _Kyle_, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," _id.,_ and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." _Perkins_, 939 F.2d at 466-67; _Nance v. Vieregge_, 147 F.3d 589, 590 (7th Cir.1998) (stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

### DISCUSSION

_I. Motion to Dismiss_

**\*2** J. Van der Horst argues that the instant action is not ripe for adjudication. The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" and that declaration has the full force of a final judgment. 28 U.S.C. § 2201. However, the Declaratory Judgment Act "does not dispense with the Article III case or controversy requirement ..., nor does it supply the court with subject matter jurisdiction." _Nationwide Ins. v. Zavalis_, 52 F.3d 689, 692 (7th Cir.1995). As such,

before a district court can decide whether a declaratory judgment is appropriate, the court "must first determine whether the court has subject matter jurisdiction, i.e., whether the case presents an 'actual controversy' between the parties." _Basic v. Fitzroy Eng'g, Ltd._, 949 F.Supp. 1333, 1337 (N.D.Ill.1996); _see Tobin v. City of Peoria, Ill._, 939 F.Supp. 628, 634 (C.D.Ill.1996) (stating that in a declaratory judgment action, the Court "should be 'particularly vigilant' to make certain the case is ripe"). Whether an actual controversy exists under the Declaratory Judgment Act turns on whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." _Maryland Cas. Co. v. Pacific Coal & Oil Co._, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). J. Van der Horst contends that the instant action is not ripe for a decision since there is not "'sufficient immediacy' to warrant this court declaring whether or not the Loan Agreements are enforceable and give rise to the plaintiff having lien rights given that the Loan Agreements do not mature until 2009 and there is no 'due on sale' clause or any right to accelerate the repayment dates contained in the agreements."(Mot.6).

R. Van der Horst contends that the instant action is ripe because if J. Van der Horst and L. Van der Horst sold the Home "without paying off" the loans to R. Van der Horst, he would "lose his security interest" in the Home. (Ans.5). The First Loan Agreement provides that:

To secure payment of this note to Lender, Borrower grants to Lender a security interest in all property of the undersigned of any kind in the possession of Borrower, including, but not limited to the property located at 1447 West Wolfram, City of Chicago, County of Cook, State of Illinois (hereinafter "Collateral"), whether now existing or arising in the future, whether direct or indirect, whether absolute or contingent or whether due or to become due. However, it shall be understood and is agreed by the undersigned _that the mortgagor/bank of the Collateral shall be the only entity which shall take precedence over the Lender's security interest._

_Except for the mortgagor/bank of the Collateral,_ the undersigned agree that this loan and the repayment of this loan shall and will take precedence over and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*3** (A.Compl.Ex. A) (emphasis in original). The Second Loan Agreement further provides that:

To secure payment of this note to Lender, Borrowers grant to Lender a security interest in all real and personal property of the undersigned of any kind in the possession of Borrowers, including, but not limited to, the residence and property located at 1447 West Wolfram, City of Chicago, County of Cook, State of Illinois (hereinafter "Collateral"), whether now existing or arising in the future, whether direct or indirect, whether absolute or contingent or whether due or to become due. However, it shall be understood and is agreed by the undersigned *that the mortgagor/bank of the Collateral shall be the only entity or individual which shall take precedence over the Lender's security interest.*

*Except for the mortgagor/bank of the Collateral,* the undersigned agree that this loan and the repayment of this loan shall and will take precedence over and above all debts and liabilities and lien holder's [sic] of or against the Borrowers (singular or plural, singularly or combined), whether presently incurred or incurred in the future, including, but not limited to, legal judgements which may be incurred against the borrowers (singular or plural, jointly or severally).

(A.Compl.Ex. B) (emphasis in original). In addition, the Loan Agreements state that the "Borrower shall not be required to pay any principal or interest whatsoever on the loan herein for a period of ten years" and that the "loan shall ... be considered a ten year loan and the Principal and interest herein shall be due and payable to Lender in a single lump sum payment" on June 16, 2006, pursuant to the First Loan Agreement, and August 31, 2009, pursuant to the Second Loan Agreement. (A.Compl.Ex. A, Ex. B). Thus, under the Loan Agreements, the principal and interest loaned to J. Van der Horst and L. Van der Horst must either be paid by the dates specified in the Loan Agreements or, if the House is sold, the proceeds shall flow to R. Van der Horst after all proceeds owed are paid to the mortgagor/bank.

R. Van der Horst admits that J. Van der Horst and L. Van der Horst have two options regarding the Home: "[t]hey can keep the property and not pay [R. Van der Horst] until 2009 or they can sell the property and pay off the loans."(Ans.5). However, such options do not create a current case or controversy before this court. The Loan Agreements do not call for an accelerated payment if J. Van der Horst and L. Van der Horst are no longer married. Further, any proceeds generated if the House is sold do not belong to R. Van der Horst, but rather are first payable under the Loan Agreements to the mortgagor/banker and then to R. Van der Horst. In addition, R. Van der Horst's claims that J. Van der Horst and L. Van der Horst may commit fraud if the house is sold are merely speculative. *See, e.g., Whitemore v. Arkansas, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)* (stating that "allegations of possible injury do not satisfy the requirements of Article III"). R. Van der Horst's fear that his son and former daughter-in-law may fail to follow the terms of the Loan Agreements at some future point in time does not create sufficient immediacy for this court to issue a declaratory judgment. Based on the foregoing, this court lacks subject matter jurisdiction to adjudicate the instant action due to lack of ripeness and we grant J. Van der Horst's motion to dismiss.

*II. Claims against L Van der Horst*

**\*4** The "first duty in every case" in federal district court for a judge is to "independently" determine whether or not the court has subject matter jurisdiction. *See Belleville Catering Co. v. Champaign Market Place, L.L.C., 350 F.3d 691, 692-94 (7th Cir.2003).* We have already stated that the Declaratory Judgment Act "does not dispense with the Article III case or controversy requirement ..., nor does it supply the court with subject matter jurisdiction."*Nationwide Ins., 52 F.3d at 692* (citing *Lawline v. American Bar Ass'n, 956 F.2d 1378, 1387 (7th Cir.1992)*).

As state above, the instant action against J. Van der Horst is not ripe for adjudication since there is not "sufficient immediacy" that warrants this court to address the declaratory action sought by R. Van der Horst against J. Van der Horst regarding the Loan Agreements. The claims in the amended complaint against L. Van der Horst are identical to those claims against J. Van der Horst. As we stated above, such

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 4
Slip Copy, 2007 WL 1099478 (N.D.Ill.)
**(Cite as: Slip Copy, 2007 WL 1099478)**

claims based on R. Van der Horst's fears that J. Van
der Horst and L. Van der Horst may someday breach
the Loan Agreements does not create sufficient
immediacy for this court to issue a declaratory
judgment. Therefore, the instant action is not ripe for
adjudication and we deny R. Van der Horst's motion
for judgment on the pleadings, and dismiss the instant
action for lack of subject matter jurisdiction.

## CONCLUSION

Based on the foregoing analysis, we grant J. Van der
Horst's motion to dismiss, deny R. Van der Horst's
motion for judgment on the pleadings, and dismiss
the instant action for lack of subject matter
jurisdiction.

N.D.Ill.,2007.
Van Der Horst v. Van Der Horst
Slip Copy, 2007 WL 1099478 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.