IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMCAST OF ILLINOIS III, INC.; COMCAST CORP.; COMCAST CABLE HOLDINGS LLC; and COMCAST OF CHICAGO, INC.,<br><br>　　　　　Defendants.<br><br>COMCAST OF ILLINOIS III, INC.; COMCAST CORP.; COMCAST CABLE HOLDINGS LLC; and COMCAST OF CHICAGO, INC.,<br><br>　　　　　Counterclaimants,<br><br>　　v.<br><br>ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS,<br><br>　　　　　Counterdefendant,<br><br>and AT&T, INC.,<br><br>　　　　　Third-party Defendant. | Case No: 08 CV 1680<br><br>Honorable Elaine E. Bucklo<br><br>Magistrate Judge Martin C. Ashman |

**AT&T INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR
<u>LACK OF PERSONAL JURISDICTION</u>**

On April 20, 2008, Counterplaintiffs Comcast Illinois III, Inc., Comcast Corp., Comcast Holdings LLC, and Comcast of Chicago, Inc. (collectively, "Comcast") filed Counterclaims and Third-party Complaint ("Complaint") with this Court naming Illinois Bell Telephone Company d/b/a AT&T Illinois ("Illinois Bell") and AT&T Inc. as Counterdefendant and Third-party Defendant, respectively. The Complaint alleges claims for violation of the Cable

1

Communications Policy Act, trespass to chattel, negligence, and common law unfair competition. The Complaint also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that Comcast is without liability for the claim brought against it by Illinois Bell. While Comcast asserts that Illinois Bell is an Illinois corporation with its principal place of business in Chicago, Illinois, and thus presumably within this Court's jurisdiction, Comcast alleges no facts (and there are none) sufficient to bring AT&T Inc.—a Delaware holding company that has no local presence or status in Illinois and that conducts no activities in Illinois—into this Court to answer Comcast's Complaint.

## ARGUMENT

### I. Governing Legal Standard

Comcast, the party asserting that the Court has personal jurisdiction, bears the burden of proving it. *RAR. Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997). A *prima facie* case may be rebutted where the party opposing jurisdiction presents uncontradicted evidence that defeats jurisdiction. *Sabados v. Planned Parenthood of Greater Indiana*, 882 N.E. 2d 121, 124 (Ill. App. Ct. 2007)

> Traditionally, Illinois courts employed a two-step analysis to determine whether the plaintiff established a *prima facie* case for personal jurisdiction by evaluating: (1) personal jurisdiction under the long-arm statute; and (2) due process under both the United States and Illinois Constitutions.

*Id.* at 125 (noting that the due process analysis under the federal and state constitutions are coterminous).

Illinois law provides for general and specific personal jurisdiction over nonresident corporate defendants. General personal jurisdiction exists over defendants who "do[] business" in Illinois, regardless of whether the cause of action arises out of defendants' activities in Illinois.

735 ILCS 5/2-209(b)(4). Specific personal jurisdiction may be found only where plaintiff's suit arises out of the nonresident defendant's contacts with Illinois. *See* 735 ILCS 5/2-209(a).

> In the context of corporations, specific jurisdiction may be asserted when the suit directly arises out of or is connected to the defendant's purportedly wrongful acts within the forum state and general jurisdiction applies when the defendant has continuous and systematic business contacts within the forum state.

*Sabados*, 882 N.E.2d at 126.

In addition to meeting the statutory requirements for jurisdiction, the plaintiff must establish that personal jurisdiction is consistent with federal and state constitutional due process requirements. *RAR, Inc.*, 107 F.3d at 1276; *Rollins v. Ellwood*, 565 N.E.2d 1302 (Ill. 1990).[1] Thus, there must be minimum contacts between the defendant and the forum state such that exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A straightforward application of these familiar principles reveals that there is no personal jurisdiction over AT&T Inc. because it has no ties to Illinois.

## II. The Court Lacks Personal Jurisdiction Over AT&T Inc. under Illinois' Long Arm Statute

Comcast's sole basis for asserting that the Court has personal jurisdiction over AT&T Inc. in this case appears to be the fact that AT&T Inc. "directly or indirectly owns defendant Illinois Bell Telephone d/b/a AT&T Illinois." Complaint ¶ 10. On the basis of the parent-subsidiary relationship between AT&T Inc. and Illinois Bell, Comcast further alleges that AT&T Inc. "controls all or most of [Illinois Bell's] principle activities, including the roll-out and

---

[1] Although the Illinois Supreme Court has held that the due process standards of the Illinois and Federal Constitutions sometimes might diverge and that courts must analyze the propriety of jurisdiction under both, *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990), federal and state courts agree that no operative difference exists between the two requirements. *See RAR, Inc.*, 107 F.3d at 1276; *Kostal v. Pinkus Dermatopathology Lab., P.C.*, 827 N.E.2d 1031, 1037 (Ill. App. Ct. 2005). In any case, because, as explained below, the Federal Due Process Clause precludes the exercise of personal jurisdiction, this Court need not consider the result under the Illinois Constitution.

marketing of new services such as U-Verse TV." *Id.* That lone allegation, however, is not sufficient to establish that the Court should—or can—exercise either specific or general jurisdiction over AT&T Inc. under the Illinois long arm statute. Indeed, nothing in the Complaint demonstrates any connection between AT&T Inc. and the events, transactions and matters that give rise to Comcast's Complaint, much less a connection between AT&T Inc. and the State of Illinois.

These omissions are not accidental. AT&T Inc. itself has no contacts with, and conducts not activities in, Illinois. As explained in the Affidavit of Tom Koch (attached herewith as Exhibit A), AT&T Inc is a holding company incorporated under Delaware law with its principal place of business in San Antonio, Texas.[2] Aff. ¶ 4. The purpose of AT&T Inc. is to hold the stock of various holding companies that themselves hold stock in various operating telecommunications companies, including Illinois Bell. *Id.* at ¶¶ 4-7. AT&T Inc. does no business with the public at all anywhere, let alone in Illinois. *Id.* at ¶ 5. This dispute arises out of an alleged interconnection between competing telecommunications networks, but AT&T Inc. does not own or maintain a telecommunications network in Illinois or elsewhere. *Id.* at ¶ 9. It does not provide telecommunications services here or elsewhere. *Id.* AT&T Inc. has no presence, either physically or through employees, in Illinois. *Id.* at ¶¶ 10-11. "A holding company that neither transacts business nor contracts to provide products or services in Illinois is not subject to personal jurisdiction in Illinois." *Sotello v . DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1226 (N.D. Ill. 2005).

As for Comcast's allegation that AT&T Inc. exerts total control over Illinois Bell, the undisputed evidence is that AT&T Inc. and Illinois Bell maintain corporate formalities and are

---

[2]   Comcast acknowledges the same in the Complaint (at ¶ 9).

independent companies. *Id.* at ¶ 8. Illinois Bell does not do business in Illinois or elsewhere as AT&T Inc. or vice versa. *Id.* at ¶ 15.

Accordingly, there is no basis on which the Court could permissively exercise either specific or general jurisdiction over AT&T Inc. consistent with the requirements of the Illinois long arm statute. Comcast's claims do not arise out of AT&T Inc.'s contacts with Illinois—indeed, AT&T Inc. has *no* such contacts. Nor does AT&T Inc. engage in any activities in the forum much less "continuous and systematic business" activities that are required for there to be a sufficient basis for general jurisdiction.

### III.     Asserting Personal Jurisdiction over AT&T Inc. Would Violate Due Process

Because AT&T Inc. has no presence in Illinois and conducts no activities in Illinois, it does not have "minimum contacts" with Illinois and does not "purposefully avail[] itself of the privilege of conducting activities within [Illinois], thus invoking the benefits and protections of the law." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation omitted).[3] Asserting personal jurisdiction over AT&T, Inc in this case therefore would violate Federal Due Process. Based on its allegation in paragraph 10 of the Complaint, Comcast appears to take the position that AT&T Inc.'s indirect ownership and control of Illinois Bell in and of itself establishes AT&T Inc.'s minimum contacts with the State, and that asserting personal jurisdiction over AT&T Inc. would therefore be consistent with Due Process. That position is wrong.

---

[3]   Minimum contacts under federal due process can also be expressed in terms of specific jurisdiction—where the suit is "related to the defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)—or general jurisdiction—where jurisdiction springs from a defendant's "continuous and systematic general business contacts" with the forum. *Id.* at 416. In either instance, however, minimum contacts with the forum state must exist, and in this case they do not.

The law in the Seventh Circuit and the Northern District of Illinois is well-settled that the parent-subsidiary relationship—by itself—is not sufficient to establish personal jurisdiction over a parent company in a lawsuit against the subsidiary. *See*, *e.g.*, *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003); *Central Sates, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir.1998). In particular, there is a presumption of corporate separateness between a defendant parent company and subsidiary, unless the plaintiff alleges a basis for piercing the corporate veil or facts demonstrating that the parent "exercise[s] an unusually high degree of control over the subsidiary." *Central States*, 230 F.3d at 943 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) and *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37 (1925)); *see also IDS*, 136 F.3d at 540; and WRIGHT & MILLER, 4A FED. PRAC. & PROC. CIV. 3d § 1069.4. In *IDS*, for example, the Seventh Circuit expressly rejected arguments that a parent company (SunAmerica) should be subjected to personal jurisdiction based solely on allegations by the plaintiffs that the parent company "controlled, directed, and supervised" certain wholly-owned subsidiaries. *IDS*, 136 F.3d at 540. Writing for the Court, then Chief Judge Posner stated:

> Although the complaint does not allege that SunAmerica itself committed any of the tortious acts that are charged, the plaintiffs argue that all they need allege is that SunAmerica controlled, directed, and supervised the three subsidiaries that actually did the acts. The complaint does not allege these things either, however, and even if it did this would not establish jurisdiction over SunAmerica. *Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts*.

*Id.* (citing *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-92 (7th Cir.1994) (Illinois law)) (emphasis added). AT&T Inc. maintains corporate formalities with its indirect subsidiary

6

9173779

and there is no basis in evidence for piercing the several corporate veils between these independent companies. Aff. ¶ 8.

Comcast's allegations, together with AT&T Inc.'s evidence regarding its relationship with the State of Illinois and Illinois Bell, demonstrate that AT&T Inc. is a holding company that has no presence in Illinois and does nothing in Illinois beyond indirectly owning an Illinois company with which it maintains corporate formalities and does not exert an unusual degree of control. Under the law of the Seventh Circuit and the Northern District of Illinois, that falls far short of what is required to satisfy Federal Due Process. (Nor, as shown above, is it sufficient to satisfy the requirements of the Illinois long arm statute.) This Court therefore should decline to assert personal jurisdiction over AT&T Inc. in this case.

* * *

For the reasons explained above, this Court lacks personal jurisdiction over AT&T Inc. The Court should therefore grant AT&T Inc.'s motion to dismiss Comcast's Complaint.

Dated: May 12, 2008

Respectfully Submitted

AT&T INC.

 /s/ Ranjit J. Hakim

Michael J. Gill
Ranjit Hakim
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
(312) 701-7711 – Facsimile
mgill@mayerbrown.com
rhakim@mayerbrown.com

9173779

## CERTIFICATE OF SERVICE

  I, Ranjit Hakim, an attorney, hereby certify that on May 12, 2008, a copy of the foregoing AT&T INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION was served via email and the Court's CM/ECF system upon all counsel listed below.

                /s/ Ranjit J. Hakim
                Ranjit Hakim

Thomas P. Jirgal
Douglas N. Masters
Julie P. Samuels
Loeb & Loeb LLP
321 N. Clark Street
Suite 2300
Chicago, IL 60610

9173779

# EXHIBIT A

9173779

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ILLINOIS BELL TELEPHONE, d/b/a AT&T ILLINOIS, <br><br> Plaintiff, <br><br> v. <br><br> COMCAST OF ILLINOIS III, INC., COMCAST CORPORATION, COMCAST CABLE HOLDINGS LLC, and COMCAST OF CHICAGO, INC. <br><br> Defendants. <br><br> COMCAST OF ILLINOIS III, INC., COMCAST CORPORATION, COMCAST CABLE HOLDINGS LLC, and COMCAST OF CHICAGO, INC. <br><br> Counterclaimants, <br><br> v. <br><br> ILLINOIS BELL TELEPHONE COMPANY, d/b/a AT&T ILLNOIS, <br><br> Counterdefendant, <br><br> and AT&T, Inc. <br><br> Third-party defendant. | Case No.: 08 C 1680 <br><br> Honorable Elaine E. Bucklo <br><br> Magistrate Judge Martin C. Ashman |

## DECLARATION OF TOM KOCH

I, Thomas Koch, being first duly sworn on oath, depose and state the following:

1. My name is Thomas Koch. I am over twenty-one (21) years of age and have never been convicted of a felony or a crime of moral turpitude, nor have I ever been adjudged incompetent. I am legally competent to make this Declaration.

Page 1

2.  I am an Executive Director of Accounting in the Finance Department of AT&T Services, Inc. My job duties include serving as the Finance Controller for AT&T Inc., Pacific Bell Telephone Company, and Nevada Bell Telephone Company. I have been in this position since July 2005 and with the AT&T family of companies since 1996. As such, I am personally familiar with the corporate structure of AT&T Inc. and its "Regional Bell" and subsidiary corporations. All of the statements in this Declaration are based upon my personal knowledge or review of corporate and business records. If sworn as a witness, I could testify to the facts herein. The statements contained herein are true and correct.

3.  Comcast of Illinois III, Inc., Comcast Corporation, Comcast Cable Holdings LL, and Comcast of Chicago, Inc. (collectively "Comcast") names AT&T, Inc. as a third-party defendant in Comcast's Counterclaims and Third-Party Complaint filed on April 20, 2008. The purpose of my affidavit is to provide evidence the Court with evidence in support of AT&T Inc.'s Motion to Dismiss the Counterclaims and Third-Party Complaint for lack of personal jurisdiction.

4.  AT&T Inc. was incorporated in Delaware in October 1983 under the name Southwestern Bell Corporation. Since then it has changed its name twice. In 1995, it changed its name to SBC Communications Inc. After the 2005 acquisition of AT&T Corp., a New York corporation, SBC Communications Inc. changed its name to AT&T Inc. The acquired company, AT&T Corp., became a subsidiary of AT&T Inc. Throughout, AT&T Inc. has remained a Delaware corporation, currently headquartered in San Antonio, Texas.

5.  AT&T Inc. is and always has been a holding company. It was created as one of seven regional holding companies that were divested on January 1, 1984 by the American Telephone and Telegraph Company as part of the settlement of *United States v. Western Electric Company, Inc.*, Civil Action No. 82-0192 (D.D.C.). As part of that divestiture, it received equity

interests in the Southwestern Bell Telephone Company. As a holding company, AT&T Inc. conducts no business directly with the public.

6. At the time of the January 1984 divestiture, Ameritech Corporation was the holding company owning the stock of the following corporations: Illinois Bell Telephone Company, Wisconsin Bell, Inc., Indiana Bell Telephone Company, Inc., Michigan Bell Telephone Company, and The Ohio Bell Telephone Company. In 1999, AT&T Inc. (then known as SBC Communications Inc.) acquired the Ameritech Corporation as a wholly-owned subsidiary. Ameritech Corporation remained a holding company over all of the "Regional Bell" corporations above, making Illinois Bell and the other Regional Bells indirect subsidiaries of SBC Communications Inc.

7. Today, Ameritech Corporation has been renamed AT&T Teleholdings, Inc., but it remains the holding company over the "Regional Bell" companies named above, continuing to make Illinois Bell and the other Regional Bells indirect subsidiaries of AT&T Inc.

8. AT&T Inc. is a legally and factually separate corporate entity, distinct from its subsidiaries, including its direct subsidiary, AT&T Teleholdings, Inc., and its indirect subsidiary, Illinois Bell. Each of AT&T Inc.'s direct and indirect subsidiaries maintains its own independent corporate, partnership, or limited liability company status, identity, and structure.

9. AT&T Inc. does not own or maintain a telecommunications network and it does not provide telecommunications services, wholesale or retail, to the public. AT&T Inc. does not have any employees, sales representatives or distributors, and produces nothing to sell or distribute.

10. AT&T Inc. has no presence in Illinois. It has no office or mailing address in Illinois, and does not own, lease, manage, or maintain any real property, office, residence or place of business in Illinois.

Page 3

11. AT&T Inc. has officers and a board of directors, but AT&T Inc. has no employees in Illinois or elsewhere.

12. AT&T Inc. does not pay income, property or franchise taxes to the State of Illinois.

13. AT&T Inc. is not registered, licensed or otherwise qualified to do business in Illinois and, therefore, has not appointed a registered agent for service of process in Illinois.

14. AT&T Inc. does not manufacture any product of any kind or provide any service of any nature that could find its way through the stream of commerce into Illinois. AT&T Inc. does not do business in Illinois.

15. Illinois Bell does not do business as "AT&T Inc." The acronym "AT&T" is a brand often appearing next to a round blue-and-white logo. The name "AT&T" is sometimes followed by a state name as a "doing-business-as" name for certain companies in AT&T Inc.'s family of companies. The use of the corporate brand and logo is shared by multiple subsidiary companies offering different products and services and serving different geographic territories. For example, today Southwestern Bell Telephone Company in Texas does business as (d/b/a) "AT&T Texas." Similarly, Pacific Bell Telephone Company's d/b/a is "AT&T California," Illinois Bell Telephone Company's d/b/a is "AT&T Illinois," and so on.

16. The AT&T brand and logo are owned and licensed by AT&T Intellectual Property, Inc. (f/k/a AT&T Knowledge Ventures, L.P.), a subsidiary of AT&T Inc. AT&T Intellectual Property, Inc. charges the applicable operating company a licensing fee for the "doing business as" use of the AT&T name and logo. Use of the AT&T brand, logo, trademarks, and service marks by a particular operating company does not signify that products or services are being offered or provided by AT&T Inc., a holding company, or the licensor, AT&T Intellectual Property, Inc.

17. The internet website www.att.com is also maintained and administered by AT&T Intellectual Property, Inc. The goods and services that are marketed on the www.att.com website are the goods and services of AT&T Inc.'s subsidiaries and business partners. AT&T Inc. does not offer goods and services to the public and, therefore, none of the goods or services offered on the www.att.com website is provided by AT&T Inc.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on the 9th day of May 2008.

_____
Thomas Koch